UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN SINGLETON, CDCR#: H-86959, Plaintiff, v. SCOTT KERNAN, et al., Defendants. | Case No.: 3:16-cv-2462-BAS-NLS **REPORT AND RECOMMENDATION FOR ORDER DENYING LEAVE TO SUPPLEMENT THE FIRST AMENDED COMPLAINT** **ECF No. 38** |

Kelvin X. Singleton ("Plaintiff") is incarcerated at the California State Prison, Sacramento, located in Represa, California. He is proceeding *pro se*, and has filed a civil Complaint pursuant to 42 U.S.C. § 1983 relating to incidents occurring while incarcerated at R.J. Donovan Correctional Facility ("RJD") in San Diego. ECF No. 32 (First Amended Complaint). Before the Court is Plaintiff's "Ex Parte Request to Supplement the First Amended Complaint to Add Defendants." ECF No. 38. Defendants oppose Plaintiff's request. ECF No. 43. Plaintiff submitted a reply in support of the motion. ECF No. 49.

As discussed, it is **RECOMMENDED** that Plaintiff's motion for leave to supplement the First Amended Complaint be **DENIED**.

///

## I. PROCEDURAL BACKGROUND

This case has been active for ten months without progressing past the pleading stage. Accordingly, a brief recitation of the procedural history is appropriate.

Plaintiff filed his initial complaint on September 29, 2016, and subsequently on November 30, 2016, filed an ex parte request for preliminary injunction. ECF Nos. 1, 4. In due course, the District Judge denied Plaintiff's request for a preliminary injunction, and ordered the named defendants to respond to the complaint. ECF No. 5.

Before Defendants had an opportunity to respond to the complaint, Plaintiff sought leave to amend his complaint to add San Diego Reference Lab as a defendant. ECF No. 8. While that motion for leave remained pending, Plaintiff filed a second request for leave to file a supplemental complaint. ECF No. 27. Both of these motions were resolved by the District Court's grant of leave to file a First Amended Complaint. ECF Nos. 29, 31.

Plaintiff filed his First Amended Complaint ("FAC") on May 19, 2017. ECF No. 32. In response, Defendants filed a motion to dismiss and motion for summary judgment. ECF Nos. 34, 36.

The following week, on June 23, 2017, Plaintiff filed the present motion for leave to supplement the first amended complaint to add Defendants. ECF No. 38.[1] Since that time, defendant San Diego Reference Laboratory filed its response to the FAC, a motion to dismiss and motion for summary judgment. ECF Nos. 50, 51.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff's FAC alleges, in sum, that false rule violation reports were issued against him relating to a violent altercation, and that after he raised the issue of the falsity of the reports, he was the subject of retaliation by both individuals and a larger conspiracy of retaliation by officials of RJD and the San Diego Reference Laboratory. ECF No. 32.

---

[1] It appears from the date of the Third Level Review that Plaintiff had not exhausted his administrative remedies regarding his sexual harassment grievance/Eighth Amendment violation until May 24, 2016.

Part of the retaliation alleged includes being placed on a weekly urinalysis testing schedule, as well as additional rule violation reports that ultimately resulted in Plaintiff's transfer to a higher security institution, namely, the California State Prison, Sacramento ("CAL-SAC") where he is currently incarcerated. *Id.* at 18.

Plaintiff's FAC also includes allegations that he continues to be subjected to weekly testing at CAL-SAC. ECF No. 32 at 18 ("As a result of defendant Hernandez placing Plaintiff on the mandatory weekly u/a list, Plaintiff has to continue being subjected to the weekly u/a testing.") He alleges that the continued form of urinalysis testing he is subjected to is part of "defendant Kernan's policy and practices [which] does not consider any mental health challenges…." *Id.*

## III. MOTION FOR LEAVE TO SUPPLEMENT THE COMPLAINT

Plaintiff seeks to leave to supplement his complaint and to add an indeterminate number of officials at CAL-SAC as defendants in the present action.[2] ECF Nos. 38, 49. It is unclear exactly what causes of action Plaintiff seeks to assert against these defendants if permitted leave.[3] It is also unclear if Plaintiff seeks leave to draft an additional supplement or intends only to attach the administrative grievances as the supplement.[4]

The administrative grievance filed while at CAL-SAC and responses from each level of review are attached as exhibits to Plaintiff's motion for leave. *Id.* at Exs. 1-2. The administrative grievance is titled a claim for "sexual harassment." ECF No. 38, Ex.

---

[2] *Compare,* ECF No. 38, Ex Parte Request to Supplement the FAC, at 1:21 (seeking leave to add "Warden (D. Baughman), Drug Testing Coordinator (K. Steele)"); *with* ECF No. 49, Plaintiff's Reply, at 5:6-7 ("D. Baughman, K. Steele, and K. Dickens")

[3] *Compare,* ECF No. 38, [pg. 1, "continued retaliation/harassment;" pg 2, "in violation of the ..8th Amendment;"pg. 3 "weekly u/a's have mounted to sexual harassment"] *with* ECF No. 49 (pg 3, "'retaliation' is the correct proper complaint").

[4] *Compare,* ECF No. 38, [pg. 5, fn 2 "Plaintiff will be able to describe"] *with* ECF No. 49 [pg 4, "See Suppl. Comp. Dated Dec. 10, 2016 letter;" pg 5, "this Supplemental Complaint" … "Supplemental Complaint att[a]ched grievance"]).

1.  Plaintiff's administrative grievance has to do with the procedure by which CAL-SAC conducts its urinalysis testing.  *Id.*  In sum, Plaintiff is aggrieved that he must be observed during the collection process.  *Id.*  Plaintiff concedes that CAL-SAC's policies and procedures require observation to ensure accurate sampling, but simultaneously argues that his personal history justifies exception or accommodation.[5]  *Id.*

Defendant counters that Plaintiff's supplemental complaint amounts to improper joinder, seeking to add new defendants on unrelated claims.  ECF No. 43.  Defendant argues that Plaintiff's allegations involve different defendants, in a different prison, in a different judicial district.  *Id.* at 4.  Defendant argues the allegations and conduct alleged in the FAC addresses conspiracy and retaliation of officers at RJD to put Plaintiff on the weekly testing list and manipulate the testing such that Plaintiff's tests are positive for drugs.  *Id.* at 5.  Defendant argues the claims that Plaintiff seeks to supplement are not related to conspiracy or failed drug tests, but simply observation of Plaintiff for the purposes of drug testing.  *Id.*  Defendant argues that neither facts, nor law, nor witnesses will be common to Plaintiff's claims.  *Id.*

In his reply, Plaintiff clarifies that he is not seeking to add a claim of sexual harassment, but rather to supplement his pending retaliation claim with the alleged ongoing conduct.  ECF No. 49 at 3:16-18.  Plaintiff states in footnote that he "will be able to describe how the requested named officials are linked to the pending litigation should the Court grant the request to add the officials by way of supplemental complaint."  ECF No. 38 at 5, fn 2.  Neither Plaintiff's motion for leave to amend nor the reply indicates that the CAL-SAC officials were engaged in the retaliatory conspiracy he alleges occurred at RJD.

---

[5] Plaintiff states that he suffered sexual abuse as a child and that he has only recently recalled, realized, and begun to address this condition.  *See,* ECF No. 4, page 6 at ¶ 2. Plaintiff argues in his grievance that this is a mental health condition, and that mental health is a disability requiring accommodation.  ECF No. 38, Ex. 1 at pg. 8.

## IV.   LEGAL STANDARDS

Plaintiff's request finds the intersection of Federal Rules of Civil Procedure 15 and 20.  Rule 15(d) addresses supplemental pleadings and Rule 20 addresses permissive joinder of parties.

Supplemental pleadings are intended to bring the pleadings up to date with events occurring since the time the complaint was filed, and may include new parties.  Fed. R. Civ. P 15(d); *Brown v. Dep. No. 1*, 12-CV-1938-GPC-BGS, 2013 WL 5536371, at *6 (S.D. Cal. Oct. 8, 2013) ("A supplemental pleading may properly allege events occurring after the original complaint was filed and identify any new parties involved therein.").

As with leave to amend the pleadings, leave to supplement "should be 'freely given,' '[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *San Luis & Delta–Mendota Water Auth. v. U.S. Dept. of Interior,* 236 F.R.D. 491, 496 (E.D. Cal. 2006) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962).)  On a motion to supplement, the court should consider additional facts including: the relatedness of the original and supplemental complaints; whether supplementation would promote judicial economy; whether final judgment has been entered and, if so, whether the court retains jurisdiction; and whether any proposed supplemental allegations concern defiance of a prior court order.  *Id.* at 497.

"Leave to file a supplemental pleading will be denied, however, where the supplemental pleading asserts new and distinct claims unrelated to the original complaint and that should be the subject of a separate lawsuit." *Brown v. Dep. No. 1*, 2013 WL 5536371, at *6.  Under such circumstances, "a supplemental complaint would not promote judicial efficiency … because the entire controversy between the parties may not be settled in a single action." *Id* (citing *Planned Parenthood of So. Arizona v. Neely,* 130 F.3d 400, 402 (9th Cir.1997).  Supplemental pleadings are of particular concern in

prisoner cases, where joining unrelated claims could result in avoidance of a filing fee or circumvent the PLRA's three strikes rule. *See, Gonzalez v. Mason,* No. C 07-180-SI (PR), 2008 WL 2079195, *1 (N.D. Cal. 2008); *Gonzalez v. Maldonado,* 1:11-cv-01774 SAB-PC, 2013 WL 4816038, *2 (E.D. Cal. 2013).

Rule 20, addressing the joinder of parties, follows similar logic. "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (*citing Guedry v. Marino,* 164 F.R.D. 181, 185 (E.D. La. 1995)). Joinder is inappropriate where "[e]ach claim raises potentially different issues, and must be viewed in a separate and individual light by the Court." *Id.*

Rules 15 and 20 diverge at the requirement of a transactional test. Supplements to a complaint under Rule 15 do not require a transactional test. *Keith v. Volpe,* 858 F.2d 467, 474 (9th Cir. 1988) ("While some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction.") However, Rule 20 joinder requires (1) the events arise from the same transaction, occurrence, or series of transactions or occurrences, and (2) that common questions of law or fact will arise. Fed. R. Civ. P. 20. Thus, in addition to the requirements of Rule 15, here the Plaintiff must satisfy the transactional test of Rule 20. *Gonzalez v. Mason,* No. C-07-180 SI (pr), 2008 WL 20179195, * 2 (N.D. Cal. 2008) ("a proposed supplemental pleading is still subject to … Rule 20"); *Johnston v. Irontown Housing Co. Inc.,* No. 13-cv-0523-W-BLM, 2014 WL 1600381, *3 (S.D. Cal. 2013) ("Plaintiffs have not identified a question of law or fact common to all Defendants in the existing lawsuit and the parties sought to be joined through the supplemental complaint."). Further, "even once [Rule 20(a)'s] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company,* 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank,* 623

F.2d at 1375); *see also Boulton v. Am. Transfer Servs., Inc.*, No. 14CV00175-GPC-RBB, 2014 WL 3849915, at *4 (S.D. Cal. Aug. 5, 2014).

## V. DISCUSSION

Plaintiff's FAC includes allegations that he was added to the weekly urinalysis testing list as part of the alleged retaliatory conspiracy at RJD, and that the testing is ongoing at CAL-SAC. ECF No. 32 at 18. As these allegations are already present in the FAC, Plaintiff's motion for leave to supplement appears to primarily seek leave to join defendants, and would be guided by Rule 20's requirement that the claims arise from the same transaction or occurrence. Fed. R. Civ. P. 20 (a)(2).

In support of joinder, Plaintiff argues that being put on the weekly urinalysis testing list is the transaction or occurrence from which both his previously pled and proposed supplemental claims arise and so his present treatment is a form of ongoing retaliation actionable in this suit. ECF No. 49 at 3. Defendants counter that the FAC alleges a conspiracy as opposed to the supplemental complaint which alleges sexual harassment. Defendants argue because these events are separate and unrelated, the CAL-SAC defendants cannot be properly joined and Plaintiff should pursue his sexual harassment claim in a separate action in the jurisdiction in which it occurred. ECF No. 43 at 4-5.

The Court notes that Plaintiff's motion to supplement initially seeks to add a claim under the Eighth Amendment for sexual harassment by the CAL-SAC defendants.[6] ECF No. 38 at 2. The motion to supplement asks this Court to "conclude that [Plaintiff's] rights were violated" and that the urinalysis testing procedures "conflict with the normal human behavior of decency." ECF No. 38 at 4. It is not until Plaintiff's reply in responding to the arguments raised by the Defendants regarding joinder that Plaintiff appears to back away from harassment as a free standing claim and argues that the

---

[6] Specifically, only defendants D. Baughman and K. Steele are identified in the Plaintiff's moving papers. ECF No. 38.

supplemental complaint addresses only retaliation. ECF No. 49 at 3. Thus, there is some concern that Plaintiff wants to add a new, unrelated claim for sexual harassment onto his existing claim by arguing it is continued retaliation, perhaps to avoid a separate filing fee and/or strike under the PLRA. *See, Gonzalez v. Maldonado*, 2013 WL 4816038 at *2; *Gonzalez v. Mason,* 2008 WL 2079195 at *1.

Due to the uncertainty of the claim or claims Plaintiff seeks to add or supplement, and because of the requirement of liberal construction of *pro se* pleadings, the court will address both supplementing the complaint to add D. Baughman, K. Steele and K. Dickens (the "CAL-SAC defendants") as defendants to the alleged retaliation claim and leave to supplement or amend the complaint to add a claim for Eighth Amendment violations against the CAL-SAC defendants.

## A. Adding CAL-SAC Defendants to the Retaliation Claim

Rule 20's transactional test has two requirements: That the events arise from the same transaction, occurrence, or series of transactions or occurrences, and that a common question of law or fact will arise. Fed. R. Civ. P. 20; 4-21 Moore's Federal Practice - Civil § 21.02 (2017) ("Failure to satisfy either prerequisite for permissive joinder constitutes misjoinder of parties.") Additionally, "Rule 20(a)(2) … requires liberal construction to promote judicial economy and trial convenience." *Soares v. Paramo,* No. 13-cv-2871-BTM-RBB, 2016 WL 3022040, *4 (S.D. Cal. 2016) (citations omitted). There can be no question that adding defendants to the presently pending retaliation claim will raise the same questions of law for each newly added defendant, so the analysis turns to whether or not the claim arises from the same transaction or occurrence.

"[T]he same transaction or occurrence requirement 'refers to similarity in the factual background of a claim.'" *Fid. Nat. Title Co. v. U.S. Small Bus. Admin.*, No. 2:13-CV-02030-KJM-AC, 2014 WL 1883939, at *8 (E.D. Cal. May 12, 2014) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Claims that "arise out of a systematic pattern of events" and "have [a] very definite logical relationship" arise from

the same transaction or occurrence. *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 842-43 (9th Cir. 2000) (internal quotations omitted).

The pending retaliation claim alleges the process by which Plaintiff landed on the weekly testing list was part of a retaliatory conspiracy of officers at RJD, without any complaint regarding the testing procedure. The RJD based claims arise from a fight in the yard, subsequent rule violation reports and an alleged conspiracy to retaliate against plaintiff for exposing the falsity of reports. ECF No. 32 at 2-3. In contrast, the supplement seeks to add CAL-SAC defendants, and arises from the testing procedure at CAL-SAC and Plaintiff's interpretation of the Department Operational Manual's instructions for the procedure, coupled with Plaintiff's personal background. Plaintiff argues that lack of accommodation or variance from the testing procedure for his particular circumstances amounts to sexual harassment. These claims and allegations do not arise from same transaction or occurrence.

The only point of connection between the two claims is Plaintiff's presence on a weekly urinalysis testing list. There is not a "very definite logical relationship" between the officers at CAL-SAC following the testing protocol for urinalysis of a prisoner who appears on a weekly testing list, and the alleged retaliatory conspiracy of another set of officers at a separate location by which Plaintiff was allegedly added to that list. There are no allegations or arguments that the proposed CAL-SAC defendants were involved in the retaliatory conspiracy at RJD. There is no systematic pattern to either the events that led up to the pending retaliation claim or the testing done at two different facilities, in two different locations, by two different sets of people. Nor is there any indication that Plaintiff ever raised any issue with the testing procedure while at RJD. Plaintiff does not satisfy the same transaction or occurrence requirement.

Even assuming the presence of Plaintiff's name on the weekly testing list post-transfer to the new location was sufficient to satisfy the "same transaction" requirement, amendment or supplementing the complaint to add CAL-SAC defendants would be futile and is properly denied on that ground as well.

## 1. *Futility*

Plaintiff's FAC and RJD based claims allege conspiracy and retaliation. Plaintiff's reply indicates he intends to add the CAL-SAC defendants to the retaliation claim. Accordingly, Plaintiff will have to allege as to each defendant that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals…." *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Specifically, Plaintiff must allege facts supporting the following elements for a retaliation claim: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Broadheim v. Cry,* 584 F.3d 559, 567 (9th Cir. 2005). It does not appear that there is any set of facts Plaintiff can allege that would satisfy causation and, Plaintiff's own arguments and submissions contradict such a finding. Moreover, there is a legitimate correctional goal achieved by the testing.

## 2. *Causation*

Leave to supplement or amend is properly denied where amendment would be futile. To allege retaliation, there must be a causal connection between the defendant's allegedly retaliatory conduct and the action that purportedly provoked the retaliation. *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012) ("the plaintiff must allege a causal connection between the adverse action and the protected conduct"); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). A plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, mere

speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Johnson v. Paramo*, 15CV1531 GPC JMA, 2015 WL 6758304, at *3 (S.D. Cal. Nov. 5, 2015) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009); *see also Jones v. Community Redevelopment Agency of City of Los Angeles,* 733 F.2d 646, 649 (9th Cir.1984) (even a *pro se* plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

Plaintiff argues the supplement is proper to add CAL-SAC defendants because "the retaliatory placement of Plaintiff on the weekly mandatory U/A testing [by the RJD defendants] for over two (2) years caused D. Baughman, K. Steele, and K. Dickens to harass and/or retaliate against Plaintiff leading up to the supplemental complaint…." ECF No. 49 at 5:4-9. This allegation and theory of causation fails to satisfy the standard to allege a claim against the CAL-SAC defendants.

There are no allegations or argument that any of the CAL-SAC defendants had any connection to or involvement with the actions occurring at RJD. Plaintiff has not alleged any facts to show a causal connection or that Plaintiff's protected conduct of submitting grievances at RJD was a "substantial" or "motivating" factor to the CAL-SAC defendants' performance of urinalysis testing in conformance with the standard applicable protocols. Plaintiff fails to plead or present any facts that might support a causal connection between the actions of the CAL-SAC defendants and the events at RJD which allegedly provoked the retaliation. In fact, Plaintiff tacitly concedes that there is no causal connection or retaliatory motive for any of the CAL-SAC defendants by admitting that he would not be seeking to join the CAL-SAC defendants but for the conduct of the RJD defendants:

> "the retaliatory placement of Plaintiff on the mandatory U/A list, that was conspired by defendants Hernandez and Martinez [of RJD] directing Plaintiff to a 'random U/A' after Plaintiff had been tested twice within 60 [sic] and negative results, and who was already testing in the Substance Abuse Program (SAP). **Had the Plaintiff been spared the misconduct of the above-named defendants, there would be no weekly U/A of Plaintiff and the parties now named, D. Baughman, K. Steele, and K. Dickens would not be related to any retaliatory event in the First Amended Complaint**."

ECF No. 49 at 6:1-13 (emphasis added).

Absent any facts to support a causal connection required to allege a retaliation claim, leave to supplement the complaint to add the CAL-SAC defendants to the retaliation claim is properly denied.

### 3. Individual Defendants

Addressing each CAL-SAC defendant individually reaches the same result. A section 1983 claim requires a connection between a defendant's actions and a plaintiff's allegations. *See Monell*, 436 U.S. at 692; *Rizzo*, 423 U.S. at 370-371. "Causation is, of course, a required element of a § 1983 claim." *Estate v. Brooks v. United States,* 197 F.3d 1245, 1248 (9th Cir.1999). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *See Rizzo,* 423 U.S. at 370-71; *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988); *Berg v. Kincheloe,* 794 F.2d 457, 460 (9th Cir. 1986). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *Newman v. Dept. of Corrections*, 2:16-cv-1575 WBS CMKP, 2017 WL 2813159, at *2 (E.D. Cal. June 29, 2017) (citing *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978).

*Warden D. Baughman*

Here, accepting as true the factual allegations of the complaint and supplemental documents, the allegations and arguments addressing Warden D. Baughman are as follows: Plaintiff was transferred to CAL-SAC and "[a]s a result of defendant Hernandez placing Plaintiff on the mandatory weekly u/a list has to continue being subjected to weekly u/a testing." ECF No. 32 at 18. Plaintiff then wrote a letter to defendant Kernan explaining his situation and personal history and requesting alternative testing. *Id.* Defendant Kernan then "past [sic] the buck" to Warden D. Baughman to decide, who denied Plaintiff's request for alternative testing on the grounds the requested alternative weekly blood draw was not available. *Id., see also,* ECF No. 49 at 3-4. By means of this letter, Warden D. Baughman was aware of Plaintiff's alleged mental health condition, the events at RJD, and that the urinalysis testing was allegedly retaliatory in nature. ECF No. 49 at 2-4.

These allegations fail to establish a direct causal connection between protected conduct and the Warden's actions being in retaliatory response. The only protected conduct alleged by Plaintiff remains the identification and exposure of allegedly false rule violation reports while at RJD and filing of grievances related to those reports. Here, the Warden is not alleged to have done an affirmative retaliatory act in response to those actions *i.e.*, place Plaintiff on the weekly testing list. He is not alleged to have participated in an affirmative act in response to those actions *i.e.*, participate in a conspiracy to have Plaintiff placed on the testing list or transferred. And he is not alleged to have omitted to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains *i.e.*, he was not in a position to prevent Plaintiff's name from being added to the weekly testing list at RJD or prevent his transfer from RJD.

Moreover, the documents submitted by Plaintiff reveal the lack of causal connection between Warden Baughman's actions and the actions which Plaintiff claims caused the retaliatory actions. Attached to Plaintiff's motion to supplement is the

Warden's letter responding to the Plaintiff's letter—initially directed to defendant Kernan and passed on to Warden Baughman to respond to—dated December 10, 2016.  ECF No. 38, pg. 11.  Notably, Plaintiff did not ask to be removed from the testing list in this correspondence, he simply requests alternate testing.  *See,* ECF No. 4 at 11-13.  The responsive letter from Warden Baughman includes reference to an interview of Plaintiff wherein Plaintiff informed his interviewer that his "concerns stem from when [he was] housed at Richard J. Donovan Correctional Facility in 2015." *Id.* at 11.  The Warden's letter continues to explain that the alternative drug testing method of a blood draw requested by Plaintiff is not available.  *Id.*

Even with the most liberal construction, there remains no causal connection because (1) there are no allegations or facts to support this action/omission was in response to Plaintiff's protected conduct; (2) Plaintiff's FAC clearly and repeatedly allege his belief that the retaliation is in response to actions at RJD in which Warden Baughman took no part,[7] and (3) the documents submitted by Plaintiff confirm that Plaintiff attributes causation to actions and actors at RJD.

Finally, there is a legitimate purpose for the testing performed at CAL-SAC.  "There is no question that 'the use of narcotics is a problem that plagues virtually every penal and detention center in the country.'" *Thompson,* 111 F.3d at 702 (quoting *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986)).  The only fact alleged by Plaintiff is that Warden Baughman was aware that Plaintiff claimed the testing was retaliatory by means of the letter directed to defendant Kernan.  ECF No. 49 at 3-4.  From this, Plaintiff alleges that the CAL-SAC defendants "continued the retaliation" because "relief was not provided." ECF No. 49 at 4.  Plaintiff's allegations are conclusory and fail to establish facts that show inappropriate harassment from the CAL-SAC defendants.  Further,

_____

[7] *See* ECF No. 32 at 19:11-14 ("It is Plaintiff's claim that because of his position as a 'jailhouse lawyer' who exposed RJ Donovan's deficiencies and problems on January 2, 2014, he became a target.")

3:16-cv-2462-BAS-NLS

Plaintiff's letter to defendant Kernan requested only one form or relief: alternate testing

in the form of a weekly blood draw. *See,* ECF No. 4 at 11-13. He did not request the

review of his status on the weekly testing list or removal from the list, and concedes "the

policy requires substance abuse monitoring." ECF No. 4 at 12. Plaintiff arguably has not

exhausted his administrative remedies to seek this as a form of relief as there is no

indication that Plaintiff ever sought review of his status on the testing list while at CAL-

SAC.[8] Nonetheless, Plaintiff concedes the testing is a necessary part of his

incarceration, and in all the filings and grievances presented his only complaint at CAL-

SAC has to do with the procedure by which testing is accomplished. *Id.* There are no

facts to show that either the testing—which Plaintiff admits is necessary—or the

procedure by which testing is performed, is intended to be harassing or in any way

deviated from the established protocol at CAL-SAC.[9]

_____

[8] Plaintiff has filed a motion for preliminary injunction to cease testing, which was
initially denied by the Court (ECF No. 5) and for which Plaintiff requested and was
granted a motion for reconsideration (ECF No. 54).
[9] Plaintiff offers a conclusory argument that the CAL-SAC testing officials were not
properly certified or trained. The Court finds no merit to this argument as the documents
submitted by Plaintiff at every level of review reiterate that "trained officers provide you
with a sanitary and private area for testing" (ECF No. 38 at 11); "All staff have already
received training on how to conduct a U/A" (ECF No. 38 at 15); and "all staff are in
accordance with the CCR in conducting the UA" (ECF No. 38 at 18-19). The Court finds
no basis on which Plaintiff was entitled to, or that there was any affirmative obligation to
provide an inmate with, certification of training. Plaintiff also offers the conclusory
argument that he has a mental health condition and thus is entitled to accommodation.
Plaintiff has not established that his testing at CAL-SAC deviated in any way from the
required procedures and has not established that he has a *diagnosed* mental health
condition or documented disability. Plaintiff's own averments of childhood abuse and
mental health disabilities, without substantiation from a medical professional, and arising
only after over a year of weekly testing without incident, appear self-serving and are
insufficient to establish that Plaintiff required accommodation. *Cf., Givens v. Miller,* No.
16cv2877-GCP-PCL, 2017 WL 840658, *4 (S.D. Cal. March 3, 2017) (plaintiff with
medical diagnosis and documented shy bladder syndrome seeking to restore good time
credits failed to state a § 1983 claim based on urinalysis testing procedure and was

### K. Steele, Drug Testing Coordinator

Plaintiff's FAC contains no reference to K. Steele.  *See* ECF No. 32.   In the motion for leave to supplement, K. Steele is identified once in the moving papers (ECF No. 38 at 1:23), and his name appears in a response he provided to a "Form 22 Inquiry" dated December 6, 2016, filed by Plaintiff seeking to "utilize the Low Dose Full Body X-Ray Scanner" as an alternative to the urinalysis testing protocol[10] (ECF No. 38 at 10). Plaintiff's reply argues that, like Warden Baughman, K. Steele was aware of Plaintiff's past abuse and that his placement on the weekly urinalysis testing list was retaliatory in nature, and the testing he is subjected to is a continuation of the retaliation.  ECF No. 49 at 2.

All the reasons Plaintiff's claim against Warden Baughman fails to satisfy the causation requirements of a Section 1983 action are equally applicable to K. Steele and incorporated herein by reference without being repeated.

### K. Dickens, Correctional Officer

Plaintiff's FAC contains no mention of K. Dickens.  K. Dickens is identified only in Plaintiff's administrative grievance as the officer who performed the urinalysis testing that is the subject of Plaintiff's CAL-SAC grievance.  K. Dickens is not mentioned by name as a potential additional defendant until Plaintiff's reply brief.  *See* ECF No. 49. There is no indication in Plaintiff's motion for leave to supplement the complaint, reply in support thereof, or any attachments/grievances submitted by Plaintiff that K. Dickens had any knowledge of any actions at RJD, Plaintiff's suit, or that Plaintiff claimed that urinalysis testing was retaliatory.  Plaintiff's argument that K. Dickens was involved in

---

required to pursue habeas action);  *Tyler v. Adams,* No. C 09-4225 MHP (PR), 2010 WL 4704299 at *3 (N.D. Cal. Nov. 12, 2010) (finding unsubstantiated and "newly discovered" mental health disability of prisoner was not grounds for equitable tolling in a habeas case).

[10] A Form 22 complaint is attached to ECF No. 4, pg. 10, but it is dated November 22, 2016 and does not mention x-ray testing; instead, it requests a weekly blood draw.

any form of retaliation is mere speculation. The Ninth Circuit has "repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient" to support a claim. *Wood,* 753 F.3d at 905 (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit). Plaintiff has no grounds to add K. Dickens as a defendant to a retaliation claim and leave is properly denied.

### 4. *Legitimate Penological Purpose*

Plaintiff's motion for leave to supplement his complaint to add CAL-SAC defendants to the retaliation claim is also futile because it is well established that urinalysis testing is reasonably related to a legitimate penological goals. *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (holding that even non-random drug testing in prison can be reasonable under *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 617-18, (1989), when based on legitimate criteria and not intended to harass); *Hinkley v. Warner,* 616 Fed.Appx. 255, 255 (9th Cir. 2015) (finding the "urinalysis policy … was reasonably related to a legitimate penological interest"). The lack of a legitimate purpose is an essential element of a retaliation claim. *Rhodes v. Robinson,* 408 F.3d 559, 568 (9th Cir. 2005).

While Plaintiff has alleged facts sufficient to support allegations that the testing was for the purposes of harassment at RJD, Plaintiff has offered no evidence of harassing intent or motive for any individual at CAL-SAC. Plaintiff's transfer of locations does not automatically transfer the intent and/or motive for testing. Plaintiff admits in his pleadings that testing is required as he is a participant in the Substance Abuse Program. *See* ECF No. 4 at 12; ECF No. 49 at 6. Plaintiff offers nothing more than conclusory allegations of harassment as to any of the CAL-SAC defendants, which need not be accepted. The allegations and supplemental documents addressing the CAL-SAC defendants are "devoid of any suggestion of inappropriate harassment." *Thompson,* 111 F.3d at 702. Not only is there a legitimate penological purpose for urinalysis testing itself, there is likewise, a legitimate purpose for Plaintiff to be observed during the process to prevent tampering with the tests. *Thompson,* 111 F.3d at 703 ("the presence of

the guard was reasonable to safeguard the integrity of the test and to maintain control over the prisoner.") These legitimate purposes negate the ability of Plaintiff to assert a retaliation claim based on urinalysis testing at CAL-SAC.

### B. Adding an Eighth Amendment Claim

Plaintiff's motion for leave to supplement the complaint and add the CAL-SAC defendants also initially requests "supplementation of the civil complaint "because [Plaintiff's] continued suffering that includes now [sic] cruel and unusual punishment in violation of the U.S. Constitution." ECF No. 38 at 2. Plaintiff requests that the Court "review the attached complaint (administrative grievance) and conclude that his rights were violated and the defendant director's policy, practices and procedure conflict with the normal human behavior of decency." *Id.* at 4. The "administrative grievance" Plaintiff references is a grievance for sexual harassment relating to urinalysis testing on January 17, 2017. Plaintiff's grievance is based upon Officer K. Dickens interrupting a religious practice, istinja,[11] and observing him during the urinalysis testing collection process after being advised of Plaintiff's childhood abuse. *Id.* at 3-4. As to K. Dickens, Plaintiff's grievance indicates that he informed K. Dickens of his childhood abuse while on the toilet/being interrupted from his religious practice. *See* ECF No. 38, Ex. 1. Any claim against Warden Baughman and K. Steele appear to be based upon their permitting urinalysis testing of Plaintiff with knowledge of his mental health condition vis-à-vis the letter to defendant Kernan discussed previously.

Plaintiff's allegations related to Eighth Amendment violations are new and unrelated to the allegations arising from the conspiracy alleged at RJD and thus, do not

---

[11] Plaintiff explains that "istinja" is a ritual cleansing of the genitals. Any claims or potential claims based upon the Second Amendment religious freedom or any right to privacy related to those religious practices are unrelated to the case pending in the Southern District and rest soundly and solely in the Eastern District.

1 satisfy either Rules 15 or 20. Plaintiff cannot establish the events arose from the same

2 transaction or occurrence or that they share common questions of law or fact.

3       Plaintiff's Eighth Amendment claims do not arise from the same transaction or

4 occurrence as the RJD based claims: The RJD based claims arise from a violent

5 altercation which Plaintiff allegedly reported and from exposing false rule violation

6 reports related to that altercation. The CAL-SAC based claims arise from Plaintiff's

7 interpretation of the Department Operations Manual and the procedures related to

8 urinalysis testing. Leave to supplement or amend to add these new claims against new

9 defendants is properly denied, without prejudice to Plaintiff's pursuit of any claims

10 regarding urinalysis testing procedure and accommodations in the Eastern District where

11 his claims related to the testing procedure at CAL-SAC arose.

12       Nor can Plaintiff establish an Eighth Amendment claim will share any questions of

13 law or common questions of fact with the claims presently alleged in the FAC. The

14 Eighth Amendment protects prisoners from excessive uses of force, inhumane conditions

15 of confinement, and deliberate indifference to serious medical need. *See Wilson v. Seiter*,

16 501 U.S. 294, 298-99 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v.

17 Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Plaintiff appears to seek to add a claim

18 of an Eighth Amendment violation based on inhumane conditions of confinement.[12]

19       An Eighth Amendment claim based on inhumane conditions requires a prisoner

20 satisfy an objective and subjective component. *Robinson v. Catlett,* 725 F.Supp 1203,

21 1208 (S.D. Cal. 2010) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

---

[12] Plaintiff makes no allegation or mention of the use of force, eliminating this as a possible claim. The facts and circumstances as presented by Plaintiff also fail to implicate a need for medical care sufficient to implicate a deliberate indifference to an objectively serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (finding gross negligence is insufficient to establish deliberate indifference to serious medical needs).

Objectively, the prison official's acts or omissions must be sufficiently serious to deprive the inmate of the minimal civilized measure of life's necessities. *Id.* No violation exists when the inmate has "adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Id.* (citing *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982)). Plaintiff offers no facts in his FAC, moving papers, or reply, and none are implicated by the grievance attached to Plaintiff's motion for leave to amend that Plaintiff was deprived any of life's necessities such that he could satisfy the objective requirement of an Eighth Amendment violation.

In addition, Plaintiff must satisfy the subjective component requiring he establish deliberate indifference. Deliberate indifference requires a prison official "knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. This subjective inquiry to establish deliberate indifference requires two parts, first, Plaintiff must demonstrate that the seriousness of the risk was obvious or provide other circumstantial evidence that defendants were aware of the substantial risk to his health, and second, that there was no reasonable justification for exposing him to that risk. *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013) (citing *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)).

There is a well-established reasonable justification to observe the collection of a urine sample to prevent tampering. *See, Thompson,* 111 F.3d at 703 ("the presence of the guard was reasonable to safeguard the integrity of the test and to maintain control over the prisoner.") Because the Plaintiff cannot satisfy the second part of this inquiry and the Court need not address the seriousness or substantiality of risk to Plaintiff based upon averments of past childhood abuse.

Accordingly, leave to amend or supplement the complaint to add defendants and Eighth Amendment violations are properly denied as there are no common questions of law or fact arising from an Eighth Amendment claim.

## C. Other Factors Relevant to Leave to Amend

### *1. Prejudice and Principles of Fundamental Fairness*

There is risk of prejudice to both the RJD defendants and the CAL-SAC defendants by joinder of the claims in one action. Both claims of conspiracy and sexual harassment are charged with certain preconceived notions. Joining these claims and defendants risks that a jury will attribute conspiratorial motives to the proposed CAL-SAC defendants- which are not alleged against the CAL-SAC defendants. Similarly, that a jury may paint the RJD defendants as participating in sexual harassment, claims which were never raised or alleged against them. This factor weighs against adding the CAL-SAC defendants to the case in the Southern District.

### *2. Supplementing the Complaint will Not Serve Judicial Economy*

Judicial economy is not served by joining defendants from a different location, in a different judicial district, for which there will be separate witnesses. Not only will joinder continue to delay a case that is yet to proceed past the pleading stage, subjecting CAL-SAC officials to the jurisdiction in the Southern District of California does not serve the interests of judicial economy, would increase the costs of the case to account for travel for these additional defendants and any witnesses, all of which will contribute to the complexity of scheduling and overall expense of the case.

## VI.   CONCLUSION

After careful consideration, the undersigned finds Plaintiff cannot establish causation necessary to add CAL-SAC defendants to the pending retaliation claim and that any Eighth Amendment claims are unrelated to the pending action. Additionally, amendment and/or supplementing the complaint to join additional defendants from another prison in another judicial district will not serve judicial economy and presents a risk of prejudice to all defendants. For these reasons, it is **RECOMMENDED** that the District Judge **DENY** Plaintiff's motion for leave to supplement the complaint, without prejudice to his filing any such claim in the Eastern District. This report and

recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **September 27, 2017**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **October 4, 2017.**

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: September 12, 2017

Hon. Nita L. Stormes
United States Magistrate Judge