UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN SINGLETON,<br>CDCR#: H-86959,<br><br>                    Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>                   Defendants. | Case No.:  3:16-cv-2462-BAS-NLS<br><br>**REPORT AND RECOMMENDATION FOR ORDERS ON MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos.  34, 36, 50, 51]** |

Kelvin X. Singleton ("Plaintiff") is incarcerated at the California State Prison, Sacramento, located in Represa, California.  He is proceeding *pro se*, and has filed a civil Complaint pursuant to 42 U.S.C. § 1983 relating to incidents occurring while incarcerated at R.J. Donovan Correctional Facility ("RJD") in San Diego.  ECF No. 32 (First Amended Complaint).  Before the Court are four separate motions submitted by various defendants.  First, the named individual defendants, C. Martinez, E. Garza, K. Hurm, J. Ortiz, G. Hernandez, A. Sanchez, S. Kernan, and N. Beduhi (hereafter "Defendants") filed a motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), to which Plaintiff submitted an opposition and Defendants replied.  ECF Nos. 34, 59, 60.  Defendants simultaneously filed a motion for summary judgment on the ground that Plaintiff failed to exhaust

administrative remedies.  ECF No. 36.  Plaintiff opposed this motion and Defendants replied.  ECF Nos. 57, 63.  Defendant San Diego Reference Laboratory (hereafter "SDRL"), also filed a motion to dismiss for failure to state a claim and a motion for summary judgment for failure to exhaust administrative remedies.  ECF Nos. 50, 51.  Plaintiff opposed both of the SDRL's motions in a single document.  ECF No. 66.  The SDRL likewise submitted a single reply.  ECF. No. 67.

For the reasons discussed within, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 36) be **GRANTED IN PART AND DENIED IN PART**; that Defendants' motion to dismiss (ECF No. 34) be **GRANTED IN PART AND DENIED IN PART**; that SDRL's motion for summary judgment (ECF No. 51) be **DENIED**; and that SDRL's motion to dismiss (ECF No. 50) be **GRANTED**.

## I.     RELEVANT PROCEDURAL HISTORY

Plaintiff filed his initial complaint on September 29, 2016, and shortly thereafter filed an ex parte request for preliminary injunction.  ECF Nos. 1, 4.   The District Judge denied Plaintiff's request for a preliminary injunction, and ordered the named defendants to respond to the complaint.  ECF No. 5.

Before Defendants had an opportunity to respond to the complaint, Plaintiff submitted an "Ex Parte Supplemental Complaint Adding the San Diego Reference Laboratory," adding allegations and a defendant.  ECF No. 8.  The Court construed Plaintiff's submission as a motion for leave to amend his complaint to add San Diego Reference Lab as a defendant.  *Id.*  While the motion for leave remained pending, Plaintiff also filed an "Affidavit in Support of Continued Retaliation/Harassment regarding His Claims," which also appeared to allege additional substantive claims, and so the Court also construed this filing as a second request for leave to file a supplemental complaint.  ECF No. 27.   Both of these motions were resolved by the District Court's grant of leave to file a First Amended Complaint.  ECF Nos. 29, 31.

Thus, Plaintiff filed his fourth significant pleading in the form of his First Amended Complaint ("FAC") on May 19, 2017. ECF No. 32. In response, Defendants filed a motion to dismiss and motion for summary judgment. ECF Nos. 34, 36. Subsequently, defendant SDRL filed its response to the Complaint, which also consisted of a motion to dismiss and motion for summary judgment. ECF Nos. 50, 51.

Between the time of filing the Defendants' motions and the SDRL's motions, Plaintiff filed a third motion for leave to supplement the Complaint to add Defendants from a separate prison facility. ECF No. 38. That motion was fully briefed and decided, denying Plaintiff leave to amend. ECF Nos. 71, 74. Now that the FAC is the confirmed operative pleading, this Court addresses the motions to dismiss and motions for summary judgment.

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff concedes the accuracy of the summation of allegations as included in several sections of the Defendants' motions.[1] Accordingly, the Court adopts the Defendants' summary of allegations where agreed upon, and quotes those sections.[2]

"Singleton alleges that he is an inmate currently incarcerated at CSP-Sacramento, but at the times relevant to the Complaint he was incarcerated at R. J. Donovan Correctional Facility ("RJD") in San Diego, California. (First Am. Compl. (FAC) at 2, 18.) Singleton alleges that Defendants began to retaliate against him after he was convicted of a rules violation report and sentenced to a term in a Secured Housing Unit for participating in a prison riot on January 2, 2014. (FAC at 3.) Singleton alleges that Defendant Martinez wrote the rules violation report for participating in a riot, and Defendant Sanchez found him guilty. (FAC at 3-4.) Singleton claims that he overheard Correctional Officer Matthews tell Defendant Hernandez that the Mexican inmates, and

---

[1] *See* ECF No. 57 at 3:20-24; ECF No. 59 at 6:13-14, 7:24-25, 8:12-13.
[2] All citations to page numbers throughout this order reference the page number generated by CM/ECF and appearing in the header of the document.

not the Black inmates, were the aggressors in the riot. (*Id.*) Singleton alleges that Hernandez and Matthews refused to testify at his Rule Violation Hearing, and Sanchez refused to compel them to testify."[3]

While Plaintiff's FAC stems from the riot that occurred at RJD; Plaintiff's claims related to the riot itself were addressed in State Court.[4]  Plaintiff's claims in the present case arise from the allegedly retaliatory behavior in response to Plaintiff's administrative grievances.  The overarching allegations of Plaintiff's FAC are that because his grievances regarding the riot exposed officer misconduct in both the officers' response to the underlying fight (by failing to prevent it) and the later cover-up of that misconduct in Rule Violation hearings (by refusing witnesses), he became the target of retaliation by each of the Defendants and in the process was subjected to cruel and unusual punishment. FAC at 19.   The specific allegations against each defendant are as follows.

**A. Defendants Martinez and Hernandez**

"Singleton alleges that on January 21, 2015, Defendant Hernandez ordered Defendant Martinez to administer a random urinary analysis to Singleton. (FAC at 6.) Singleton alleges he had already had two negative tests within the last sixty days, but agreed to submit to the test.  (*Id.*)  On February 5, 2015, Martinez issued Singleton an RVR for testing positive for codeine on the January 21, 2015, test.  (*Id.*) Singleton was found guilty, but had the RVR vacated and re-heard. (FAC at 7.)  The RVR was subsequently re-heard, and Singleton was found guilty again.  (*Id.*) Singleton does not state the name of the Senior Hearing Officer who found him guilty of this RVR. Singleton also alleges that Hernandez['s immediate understaff"][5] drafted a confidential memorandum identifying Singleton as a 'Hoover Crip' gang member transporting drugs

---

[3] Quoted from ECF No. 34-1 at 7:13-25: ECF No. 36-1 at 7:12-24.
[4] Defendants' Request for Judicial Notice (ECF Nos. 34-2, 36-3) of the Notice of Ruling and Judgment is **GRANTED**.
[5] The addition in brackets is a correction noted in Plaintiff's Opposition.  ECF No. 59 at 6:26-28.

into the prison through visits with his brother. (FAC at 20.)  Singleton alleges that Hernandez failed to notify Singleton of the memorandum as required by prison regulations. (*Id.*)" [6]

Plaintiff further alleges that defendant Hernandez, as the Drug Testing Coordinator, has responsibility for ensuring compliance with the policies and procedures related to urinalysis testing.  FAC at 9.   Plaintiff alleges Hernandez was the party that added his name to the mandatory weekly drug testing list.  FAC at 9-10, 18.

**B. Defendant Sanchez** [7]

Defendant Sanchez is the alleged hearing officer who conducted two of the Rule Violation disposition hearings regarding Plaintiff's positive urinalysis test results:  (1) Plaintiff's second positive RVR issued by Officer Hampton, and (2) Plaintiff's third positive RVR issued by an unidentified officer.  FAC at 9-10.   Plaintiff's claims center on the circumstances of the second hearing, where the lab report issued from San Diego Reference Laboratory indicated that the security label was damaged and information was missing from the label.  *Id.*

Plaintiff alleges due process violations related to the hearing in that Officer Sanchez improperly denied witnesses and refused to permit Plaintiff to ask certain questions.  *Id.*  Plaintiff alleges that Officer Sanchez has a pattern of not permitting inmates to call witnesses.  FAC at 6.  The second hearing allegedly concluded with a verbal altercation, Plaintiff protested the denial of witness with an exclamation of "Fuck this, I'm done. I'm out of here," to which Officer Sanchez allegedly responded, "Sit your black ass down. You're not done until I say you're done."  FAC at 10.   Plaintiff alleges that Sanchez then called him a drug addict and threatened him with time in administrative

---

[6] Quoted from ECF No. 34-1 at 8:9-23; ECF No. 36-1 at 8: 9-23.

[7] Defendants neither move to dismiss nor move for summary judgment on behalf of defendant Officer Sanchez, so alleged facts regarding Officer Sanchez are included for completeness only. *See* ECF No. 34 at 8:5-6; 34-1 at 16, n. 2; ECF No. 36 at 8:1-2, 36-1 at 7:2-3.

segregation. *Id.* Plaintiff was found guilty of the third RVR, his classification score increased, and as a result he was eventually transferred to a maximum security prison. FAC at 13.

### C. Defendants Hurm and Beduhi

"Singleton alleges that on August 20, 2015, Defendant Hurm searched his cell while Singleton was at breakfast. (FAC at 14.) Singleton alleges that Hurm did not find any contraband. (*Id.*) Singleton alleges after breakfast, he went and confronted Hurm in front of other Black prisoners and let Hurm know he was violating policy and procedures regarding cell searches. (*Id.*) Hurm and Defendant Beduhi returned to Singleton's cell, and searched the cell again. (FAC at 14.) Hurm and Beduhi confiscated a state owned book and a book owned by another inmate that Singleton had 'found' in the common area day room. (FAC at 15.) Beduhi and Hurm issued RVRs for being in possession of another inmate's property and for theft of state property. (*Id.*)"[8]

Plaintiff also alleges that Defendants, and specifically Hurm and Beduhi, improperly stacked RVRs to increase Plaintiff's classification score and cause his transfer. FAC at 13.

### D. Defendants Ortiz and Garza

"Singleton claims that after his RVR hearing on June 5, 2016, his attorney forwarded a complaint regarding Sanchez to CDCR's Office of Internal Affairs. (FAC at 17.) Singleton alleges that Ortiz summoned him on June 23, 2016, and told him that Garza was taking him for a special review and transfer before the Unit Classification Committee (UCC). (*Id.*) Ortiz allegedly said, 'you must have pissed someone off because they want you out of here.' (*Id.*) The following Tuesday, Plaintiff appeared before the UCC. (*Id.*) Because Singleton's multiple violations for failed drug tests had raised his classification score, Defendant A. Garza recommended Singleton be transferred

---

[8] Quoted from ECF No. 34-1 at 9:14-24; ECF No. 36-1 at 9:14-24.

to a higher level security prison. (FAC at 13, 17.) Singleton alleges that the transfer violated a July 5, 2016 memorandum which required the UCC to consider the prisoner's needs and his rehabilitation before transferring to a higher security facility. (FAC at 17-18.) On August 25, 2016, Singleton was transferred to California State Prison - Sacramento. (*Id.* at 18.) Singleton alleges that he continues to be subject to random drug tests, which effect his mental health and causes him emotional distress. (*Id.*)"[9]

### E. Defendant Kernan

Plaintiff alleges defendant Kernan, the Secretary of the Department of Corrections and Rehabilitation, has policies and procedures that: (1) do not allow meaningful challenges to urinalysis results that may have been tampered with (FAC at 12, 16); (2) restrict prisoners from requesting polygraphs or present mitigating evidence at RVR hearings (FAC at 11, 16); (3) allow prison staff to violate chain-of-custody for urinalysis testing and allow "uncertified" officers to perform testing (FAC at 15-16); (4) subjects Plaintiff to loss of contact visits as result of guilty RVR for positive urinalysis tests when violent in prison offenses are not subject to loss of contact visits (FAC at 16); and (5) that do not consider the Plaintiff's mental health challenges (FAC at 18). Plaintiff alleges that Secretary Kernan's policy of subjecting Plaintiff to weekly urinalysis testing without any "cut-off date" serves no penological purpose and constitutes cruel and unusual punishment. FAC at 18-19.

### F. San Diego Reference Laboratory

Plaintiff alleges that after receiving the toxicology report from his June 5, 2016 test, he sent a letter to the SDRL requesting information on items he noted in the report, specifically, whether the SDRL had crossed out any information and if there was an explanation for the missing "collector's ID." FAC at 12. When he received no response, Plaintiff sent a second letter, informing the SDRL of this civil action and requesting a

---

[9] Quoted from ECF No. 34-1 at 9:25-10:12; 36-1 at 9:25-10:12.

copy of the full report as well as information on the testing procedures. *Id.* Plaintiff requested a response but did not receive one. *Id.*

Plaintiff alleges that the SDRL's failure to respond and provide the information he requested is due to a conspiracy between the SDRL and named defendants in order to "maintain the multi-million dollar contract with defendant Kernan to conduct and perform u/a testing for all of CDCR." *Id.* at 12-13. Plaintiff alleges the SDRL conspired with defendants by (1) concealing information that is normally public in order to protect the defendants from being exposed for tampering with the tests and (2) by accepting damaged or tampered samples. *Id.* at 13.

## III. MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 36, 51)

Several of the named defendants and the SDRL also move for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies. Defendants concede that Plaintiff exhausted his remedies on the claims against Officer Sanchez. ECF No. 36-1 at 7 ("Plaintiff …failed to exhaust his administrative remedies against all of the Defendants in this action other than Defendant Sanchez.").

As to the remaining defendants, this Court addresses the motion for summary judgment and **RECOMMENDS** that the motion be **GRANTED** as to defendants Kernan, Martinez, Hurm, Beduhi, Ortiz, and Garza, but **DENIED** as to defendants Hernandez and the SDRL.

### A. Legal Standard for Summary Judgment

Summary judgment is generally proper if the movant shows there is no genuine dispute as to any material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible

8

evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When Defendants seek summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *see also Ross v. Blake*, 136 S. Ct. 1850, 1858-60 (2016); *McBride*, 807 F.3d at 986 (citing "circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable."). Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

## B. Legal Standards for Exhaustion

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a). Exhaustion is "mandatory." *Ross v. Blake*, 136 S. Ct. at 1856.

The Supreme Court has "held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' [citation]—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Grievance procedures are available

if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)); *see also Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino*, 747 F.3d at 1171).

In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is *not* capable of use to obtain relief." 136 S. Ct. at 1859 (emphasis added). These circumstances arise when: (1) the "administrative procedure ... operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use ... so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted).

Applying these principles, the Ninth Circuit has specifically found that "[w]hen prison officials fail to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA." *See Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) (per curiam) (finding RJD's 6-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable); *accord Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006) (officials' failure to respond to a "timely complaint that was never received" rendered prisoner's administrative remedies unavailable). The Ninth Circuit has further found administrative remedies "plainly unavailable" where prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and "effectively unavailable" where they provide the inmate mistaken instructions as to the means of correcting a claimed deficiency, but upon re-submission, reject it as untimely after compliance proved impossible. *See Nunez*, 591 F.3d at 1226. Administrative remedies may also prove unavailable if the prisoner shows

an "objectively reasonable" basis for his belief that "officials would retaliate against him if he filed a grievance." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

### C. CDCR's Exhaustion Requirements

The California Department of Corrections and Rehabilitation ("CDCR")'s administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations: "Any inmate ... under the [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate ... can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). For appeals submitted after January 28, 2011, inmates must commence the appeals process by submitting a CDCR Form 602 to the facility's appeals coordinator describing "the specific issue under appeal and the relief requested." *Id.* at § 3084.2(a), (c). Among other requirements, the appeal must be "limited to one issue or related set of issues" and "list all staff member(s) involved and shall describe their involvement in the issue." *Id.* at § 3084.2(a)(1), (3). "To assist in the identification of staff members, the inmate ... shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate ... does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." *Id.* at § 3084.2(a)(3). "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 ... and addressed through all required levels of administrative review up to and including the third level. In addition, a cancellation or rejection decision does not exhaust administrative remedies." *Id.* at § 3084.1(b).

If a prisoner is not satisfied with the first level response, he may submit a formal appeal for a second level review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden ... or the equivalent." *Id.* at § 3084.7(d)(2).

11

If the prisoner is not satisfied with the second level review, he may appeal to the third level of review by the chief of the Office of Appeals in Sacramento. *Id.* at § 3084.7(c), (d)(3). "The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and ... exhausts administrative remedies." *Id.* at § 3084.7(d)(3).

CDCR has exceptions to the regular appeals process for certain types of appeals, including staff complaints, disciplinary appeals, and transfer appeals. *See id.* at § 3084.9. An inmate alleging staff misconduct by a departmental employee, as defined by § 3291(b), shall attach a § 3391(d) "Rights and Responsibility Statement" to the appeal and forward the appeal to the appeals coordinator. *Id.* at §§ 3084.9(i)(1). "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days." *Id.* at § 3084.9(d)(i)(3). "An appeal alleging staff misconduct by an appeals coordinator shall be reviewed by the hiring authority for determination of processing." *Id.* at § 3084.9(i)(6). "If the hiring authority makes a determination that the complaint shall not be accepted as a staff complaint, it shall be processed as a routine appeal." *Id.* at § 3084.9(i)(1). With respect to disciplinary appeals, "[a] disciplinary action cannot be appealed until the hearing process is completed, including any re-hearing." *Id.* at § 3084.9(g)(1). Transfer appeals may be filed "after the transfer endorsement by the classification staff representative." *Id.* at § 3084.9(h)

## D. Discussion

With respect to the initial burden on summary judgment, the Court finds Defendants have offered sufficient evidence to prove that the CDCR has established an "administrative remedy" for prisoners like Plaintiff to pursue before filing suit under § 1983. *See Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The CDCR has procedures for inmates to challenge each of the types of action alleged by Plaintiff, including results of disciplinary hearings, staff conduct, and transfer of institutions. The burden therefore shifts to Plaintiff to offer evidence that the administrative remedies were not available, *i.e.,* not practically capable of use to obtain

the relief sought, for his particular circumstances. *Ross,* 136 S. Ct. at 1859. The Court will address the exhaustion as to each of the remaining named Defendants.

### 1. Hernandez

Defendant Hernandez, the DTC, is identified in several of the appeals and logs. In Log No. RJD-16-2777, Plaintiff submitted a grievance against defendants Sanchez and Hernandez for retaliation in regard to alleged tampering with his urinalysis test sample, dated June 20, 2016. ECF No. 36-7, Declaration of B. Self, ("Self Decl.") at 8, Ex. A. Plaintiff's grievance is titled "Staff Complaint, Retaliation & Evidence Tampering." *Id.* at 10. Plaintiff's grievance alleges that Hernandez, as the DTC, conspired with Sanchez to tamper with Plaintiff's sample, falsify evidence, and find Plaintiff guilty of a RVR. *Id.* at 11. Defendants screened out Plaintiff's complaint because the "Hiring Authority determined it did not meet the requirement for assignment as a staff complaint." Self Decl. at 3, ¶ 6(a). The "screen out memo" provided to Plaintiff and dated August 4, 2016, informed him "If you wish to pursue this appeal, it will only be processed as a disciplinary appeal and you will have to attach the RVR. Failure to follow instructions may lead to cancellation of your appeal." *Id.* at 9. Defendants' records do not show that Plaintiff re-submitted this appeal. *Id.* at 3-4, ¶ 6(a). Mr. Self further testifies that Plaintiff's Complaint (ECF No. 1) contains another appeal dated "eight days after"[10] RJD-16-2777 which (1) was not received by the appeals office and (2) *had* it been received would have been screened out as a duplicate of RJD-16-2777. *Id.*

The Court reviewed the grievance attached to Plaintiff's original complaint purportedly "never received" and finds it to be RJD-A-16-2954, a grievance which

---

[10] RJD-16-2777 is dated submitted June 20, 2017 and stamped "received" on June 23, 2016. Self Decl., Ex. A, at 10. Mr. Self's declaration states that the un-received grievance is "dated 6/20/2016, eight days after submitting inmate appeal 16-2777." Self Decl. at 4, ¶ 6(a), line 4. The grievance attached to the initial complaint is dated June 28, 2016. The Court presumes a typographical error and that the characterization of "eight days later" is accurate, coinciding with the grievance dated 6/28/2016.

Plaintiff exhausted to the third level of review. *Compare,* Self Decl. at 4, ¶ 6(a), line 5 and Ex. A at 15-33 (the "never received" grievance); *with* Self Decl. at 32 (Ex. D) (identical, stamped received July 8, 2016) *and* ECF No. 1-2 at 104-122 (identical, attached to original complaint).

Plaintiff clearly wished to pursue and submitted a staff complaint against defendants Sanchez and Hernandez. Self Decl. at 10-11 (Ex. A). The hiring authority made a determination that the complaint would not be accepted as a staff complaint. Cal. Code Regs. tit. 15, § 3084.9(i)(1). By the time Plaintiff was made aware of the rejection of his staff complaint on or about August 4, 2016, (*see,* Self Decl. at 9, Ex. A) his disciplinary grievance, RJD-16-2954 was already onto the Second Level of review. Self Decl. at 40 (Ex. D, Second Level Appeal Response dated August 3, 2016). Continued pursuit of the staff complaint as disciplinary appeal was pointless as a disciplinary appeal of underlying RVR was already well underway. Moreover, pursuant to Defendants' own declarations, Plaintiff's re-submission or related, continued submission would be rejected as duplicative. Self Decl. at 4, ¶ 6(a). In fact, the previously submitted disciplinary grievance challenging the result of the RVR hearing (as opposed to the conduct of the officers) was submitted, identified both Hernandez and Sanchez, and was appealed to the third level of review and exhausted. Nonetheless Defendants now argue that because Hernandez was only "identified" in the exhausted grievance and that the staff complaint was not resubmitted, Plaintiff has failed to exhaust his administrative remedies as the Hernandez.

Here, Plaintiff satisfies his burden that under the particular circumstances of this appeal, there was no other "available remedy" for his staff complaint. It appears even the Appeals Coordinator was incapable of "making sense" of the interrelated nature of simultaneous staff and disciplinary complaints- swearing that a related disciplinary complaint (which was filed and appealed to the third level) would be screened out as duplicative. *Ross,* 136 S. Ct. at 1859-60. By review of the Defendants' own contradictory submissions, it appears that Plaintiff pursued the only *available* option to

remedy a staff complaint, and exhausted that remedy when his grievance was rejected. Moreover, neither Mr. Self nor the record establishes that Plaintiff's complaint was not screened out for "improper reasons" – there is no reasoning provided whatsoever in response to Plaintiff's grievance which plainly alleges a retaliatory conspiracy between Hernandez and Sanchez. *Sapp v. Kimbrell*, 623 F.3d at 823.

Even if the staff complaint was insufficient or properly screened out, defendant Hernandez is identified in RJD-A-16-2954, which was decided on the merits at all levels of appeal and "plainly put prison officials on notice of the nature of the wrong alleged in the federal suit." *Reyes v. Smith,* 810 F. 3d 654, 659 (9th Cir. 2015). Grievance RJD-A-16-2954 is a retaliation complaint related to the conduct of a RVR hearing and alleged tampering with urinalysis test results. Though Hernandez's conduct is not specifically referenced except in the context of Defendant Sanchez's actions,[11] in his capacity as DTC the Plaintiff's grievance provides prison officials with adequate notice of the "nature of the wrong for which redress is sought"—namely improper use and reliance on a sample with which officers, including Hernandez, may have tampered or falsified. *Id.* (citing *Sapp,* 623 F. 3d at 824).

The undersigned **RECOMMENDS** the motion for summary judgment as to defendant Hernandez be **DENIED**.

### 2. Martinez

Defendant Martinez is identified in only one of the Plaintiff's grievances, RJD-15-03905 relating to a urinalysis test that was positive for codeine. Defendants do not dispute that this grievance was exhausted through the third level appeal but do dispute whether it provided adequate notice of Plaintiff's retaliation claim against Martinez. ECF No. 36-1 at 20. In reviewing the grievance, it does not mention or imply retaliation in the

---

[11] Plaintiff's response to the Second Level of Review, he includes as part of his challenge that the "SHO did not contact the DTC to question him regarding the lab results." Self Decl. at 38.

initial complaint or in the section responding to the second level review. Plaintiff's claim is directed only toward the improper collection process in which Martinez participated, and the subsequent positive results and guilty finding which Plaintiff challenges. ECF No. 51-4, Ex. E.[12] This grievance does not provide any notice that Plaintiff believes he is the subject of retaliation, and Plaintiff may not now graft on a retaliation claim.[13] *Goolsby v. Ridge,* No. 09-cv-2654-RBB, 2012 WL 1068881, at *14 (S.D. Cal. Mar. 29, 2012) ("Even if the Plaintiff was unaware that he was being retaliated against at the time he submitted his initial grievance, [Plaintiff] was still required to include the allegation in his subsequent appeals, or file another grievance, when he learned of the distinct claim of retaliation.")

Plaintiff argues in response that each of his grievances have included the request for "no reprisals" as a result of filing the grievance. However, including that request does nothing to inform the institution if and when reprisals occur. Plaintiff's active use of the grievance process demonstrates his awareness and understanding of this process, as he has filed grievances addressing retaliatory actions when they occur. *See,* Self Decl. Ex. A (RJD-16-2777 addressing retaliation by Hernandez and Sanchez); Ex. B (RJD-15-03370 addressing retaliation by Hurm and Beduhi); Ex. D (RJD-A-16-2954 addressing retaliation by Sanchez and Hernandez). Plaintiff did not file a grievance at any time to

_____

[12] The Court notes that the Declaration of B. Self submitted as ECF Nos. 36-7 and 36-8 include only Exhibits A-D. However, the Court reviewed the substance of the Declaration of B. Self submitted as ECF No. 51-4, which does contain Exhibit E, and finds that the paragraphs addressing Exhibit E are identical and that ECF No. 51-4 properly attaches the same referenced Exhibit E.

[13] Plaintiff also argues that he exhausted a retaliation claim against defendant Martinez in Appeal No. RJD-14-00722, which Plaintiff attaches as an exhibit to his opposition. Appeal RJD-14-00722 addresses the due process/denial of Officer Martinez as a witness at the hearing regarding the fight that precipitated this and prior litigation. ECF No. 57 at 21-29. There are also no claims of retaliation and again, Plaintiff may not now graft on a claim.

indicate that he believed that defendant Martinez was retaliating or participating in retaliation. Plaintiff has not satisfied his burden that anything about his circumstances rendered the administrative remedies unavailable. The undersigned **RECOMMENDS** the motion for summary judgment be **GRANTED** as to defendant Martinez.

### 3. Kernan, Garza & Ortiz

Defendants only argument as to defendants Kernan, Garza, and Ortiz is that none are named or identified in any of the Plaintiff's exhausted grievances. *See* ECF 36-1 at 19. Plaintiff's opposition evidence regarding defendant Garza and Ortiz is scant, stating only "I did exhaust the administrative remedies against defendants Kernan, Garza, and Ortiz." ECF No. 57 at 17, ¶ 6; *see also,* ECF No. 57 at 8.

Plaintiff argues that *Reyes* applies rendering his failure to identify a defendant a procedural error that is overcome by the CDCR's addressing a claim on the merits. *Reyes* is distinguishable under these circumstances because there are no grievances that challenge or provide notice to the CDCR that Plaintiff is challenging his transfer or transfer hearing, the only basis for any claims against Garza and Ortiz. Nor do the grievances, even if challenging policies and procedures, provide notice that Plaintiff had any complaints against Secretary Kernan. *Reyes* is applicable to the circumstances with defendant Hernandez where the Plaintiff's complaints regarding urinalysis testing include reference to the DTC even when Hernandez was not specifically named, and subsequent use at RVR hearings were well known to and addressed substantively by the CDCR. *See, Reyes,* 810 F. 3d 654 (members of the pain management committee where known and implicated by the grievance though not specifically named). Plaintiff appears to have no grievances on file regarding Garza, Ortiz, his transfer, the transfer hearing, rendering *Reyes* inapplicable to these facts. *See,* Self Decl. Exs. A-E.[14] Likewise, even where the

---

[14] Exhibit E is found in ECF No. 51-4.

Plaintiff's grievance includes in part a challenge to policies and procedures, there is nothing in the grievance to implicate Secretary Kernan.

Plaintiff has not satisfied his burden to show that the administrative grievance process was unavailable as to these Defendants and so the undersigned **RECOMMENDS** the motion for summary judgment be **GRANTED** as to defendants Kernan, Garza and Ortiz.

### 4. Hurm and Beduhi

Defendants argue that Plaintiff withdrew his grievance against defendants Hurm and Beduhi and so, failed to exhaust his administrative remedies. Plaintiff concedes that he did withdraw the grievance regarding Hurm and Beduhi's cell searches, leaving no undisputed facts. ECF No. 57 at 16-17, ¶ 3. Plaintiff is aware of the grievance process and has used it effectively to exhaust his claims on several occasions and unquestioningly began that grievance process for a claim of retaliatory searches against Defendants Hurm and Beduhi. Plaintiff's decision to withdraw his grievance following a "meaningful discussion" with Sergeant Lewis is not a substitute for exhaustion. *See,* Self Decl. at 42 (§ H, Plaintiff's withdrawal statement). The Plaintiff used the administrative remedy and the grievance process was effective to the point that Plaintiff withdrew his claim. To permit Plaintiff to proceed on this claim following withdrawal would eviscerate the purpose of the PLRA and the grievance process to "alert the prison to a problem and facilitate its resolution." *Reyes v. Smith,* 810 F. 3d at 659 (citing *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009)).

Unaddressed in Defendants' motions – both the motions to dismiss and the motions for summary judgment – is the allegation that "Defendants" (encompassing all named defendants), "knew by issuing falsified RVR [sic] to him and finding Plaintiff guilty would increase Plaintiff's classification score to a Level IV maximum secure prison…[and] alleges defendants purposefully transferred him to the Level IV (180) prison to harass him…." FAC at 13. Plaintiff goes on to offer the specific RVRs

submitted by defendants Hurm and Beduhi for possession of books and the subsequent "stacking" of the RVRs to increase the classification score as evidence. *Id.* at 13-15.

In Plaintiff's declaration he swears he filed several appeals that were not adjudicated. ECF No. 57 at 17, ¶ 5. Defendants' evidence shows that Plaintiff submitted a grievance directly to the Appeals office regarding the failure of RJD to respond to Plaintiff's grievances regarding the alleged improper stacking of RVRs, specifically those of Hurm and Beduhi. Voong Decl., ECF No. 36-6 at 23-45 (Ex. E).[15] The response from the Appeals Office and signed by M. Voong directs Plaintiff to proceed to address his concerns regarding failure of RJD to respond to his grievances using a CDCR Form 22. *Id.* at 23. There is no indication or evidence that Plaintiff did so, or took any further action at RJD to compel a response or to otherwise address the grievance regarding the alleged improper stacking. Plaintiff has not exhausted his remedies as to this claim.

The undersigned **RECOMMENDS** the motion for summary judgment as to retaliation claims against defendants Hurm and Beduhi be **GRANTED**.

### 5. SDRL

The grievance process is for use to challenge "…any policy, decision, action, condition, or omission by the department or its staff…." Cal. Code Regs. tit. 15, § 3084.1(a). The SDRL contracts with the CDCR to perform a service, but is not part of the department and does not constitute part of its staff. Thus, Title 15 would not apply and there is neither a procedure for Plaintiff to seek redress nor an available remedy. The SDRL does not satisfy its burden and it is **RECOMMENDED** that the motion for summary judgment as to the SDRL be **DENIED**.

///

---

[15] The two grievances regarding RVR stacking appear at pages 33-36. The third grievance that Plaintiff attaches as "unaddressed" as of November 19, 2016 is identical to RJD-A-15-03905. *Compare* Voong Decl., ECF No. 26-6 at 37 *with* Self Decl. ECF No. 51-4 at 169.

## IV. MOTIONS TO DISMISS (ECF Nos. 34, 50)

Defendants move to dismiss on the grounds that Plaintiff fails to state a claim. against Defendant and the SDRL. Because the Plaintiff failed to exhaust administrative remedies as to Secretary Kernan, Officers Martinez, Hernandez, Garza, Ortiz, Hurm, Beduhi and the undersigned recommends that the motion to dismiss be **DENIED AS MOOT** as to each of them. The Court addresses the remaining Defendants, Hernandez and the SDRL.

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.; Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197, fn.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 557 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting

this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears *pro se* in a civil rights case, the court "must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

## B. Discussion

Defendants interpret the allegations of the FAC as consistent with the original complaint (ECF No. 1), which alleged two specific claims: (1) cruel and unusual punishment under the Eighth Amendment and (2) retaliation under the First Amendment. *See* ECF No. 34-1. The Court agrees with Defendants that these are the two primary causes of action alleged in the FAC, however, under liberal pleading standards Plaintiff's allegations also implicate a Fourteenth Amendment claims against that are unaddressed in Defendants' motion. To the extent there are any Fourteenth Amendment claims against the remaining defendants, Hernandez and Sanchez, they survive.

### 1. Eighth Amendment Claims

Plaintiff's Eighth Amendment claims as alleged in the FAC are premised upon his mental/emotional injuries, and not clearly directed to any individual. Plaintiff alleges, in sum, that improper transfer, retaliatory searches, denial of contact visits, and on-going urinalysis testing has impacted his mental health. FAC at 13-18 ("…describing the retaliatory claims and how the weekly u/a's have now affected his mental health…."); *see also,* ECF No. 59 at 10-11 (addressing mental health concerns).

Claims that seek recovery for mental or emotional injury are subject to the "physical injury" requirement of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e (e); *see also, Grenning v. Miller-Stout,* 739 F.3d 1235, 1238 (9th Cir. 2014). The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined

while in jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury…" 42 U.S.C. § 1997e (e). The Ninth Circuit holds this "requires a prior showing of physical injury that need not be significant but must be more than de minimus. *Oliver v. Keller,* 289 F.3d 623, 627 (9th Cir. 2002).

Plaintiff does not, in the FAC, or any other document submitted to the Court (*see, e.g.,* ECF Nos. 1, 4, 8, 27, 38), allege a prior physical injury of any kind. To the contrary, Plaintiff's submissions make clear <u>no</u> prior physical harm had occurred. *See* ECF No. 4 at 4:23-25 ("…Plaintiff is suffering mentally as affirmed in his affidavit. This urgent situation *can potentially lead to* physical harm….") (emphasis added); ECF No. 38 at 3:9-12 ("a[n] incident that was a direct result related to the u/a's and the mental health of the Plaintiff in which violence *almost* erupted") (emphasis added). Plaintiff's opposition to the motion to dismiss continues to focus on only the mental health care aspect of his claim and fails to identify physical injury.[16] ECF No. 59 at 10-11.

Plaintiff has failed to allege any physical injury—through multiple rounds of pleading—as required to sustain a claim for emotional or mental damages under the Eighth Amendment. 42 U.S.C. § 1997e (e); *Grenning v. Miller-Stout,* 739 F.3d at 1238; *Oliver v. Keller,* 289 F.3d at 627. Accordingly, the undersigned **RECOMMENDS** the Defendants' motion to dismiss claims based on the Eighth Amendment be **GRANTED**.

Next, the Court must consider whether leave to amend is appropriate. Leave to amend "should be 'freely given,' '[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'"

---

[16] Plaintiff requests the Court take judicial notice of the Second Request for Preliminary Injunction. ECF No. at 10, n. 4. This document was rejected on discrepancy because Court granted reconsideration of the denial of the First Request for Preliminary Injunction. ECF No. 55.

*San Luis & Delta–Mendota Water Auth. v. U.S. Dept. of Interior,* 236 F.R.D. 491, 496 (E.D. Cal. 2006) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962).)

The Court finds that even if Plaintiff could allege a heretofore unknown and unstated physical injury, amendment would be futile because the face of the FAC precludes a finding of deliberate indifference. Plaintiff's remaining allegations that the ongoing urinalysis testing adversely affected his mental health do not, and cannot, state a claim against any Defendants. Plaintiff alleges on-going urinalysis testing impacted his mental health. In his opposition to the motion to dismiss, Plaintiff argues that "mental health care is a fundamental right," and that Plaintiff "was not/is not receiving any health care from the mental health department." ECF No. 59 at 10:19.

In order to state a claim for inadequate medical care under the Eighth Amendment, Plaintiff must show "deliberate indifference to serious medical needs." *Helling v. McKinney,* 509 U.S. 25, 32 (1993) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). Deliberate indifference requires a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *see also, Hinkley v. Warner*, 616 Fed. Appx. 255 (9th Cir. 2015); *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013). "[A]ccidental or inadvertent failure to provide adequate medical care to a prisoner" is not sufficient. *Id.* This rule applies to "physical, dental, and mental health." *Hoptowit v. Ray,* 682 F.2d 1237, 1253 (9th Cir. 1982).

There is a timing consideration that is fundamental to the Court's analysis. The case pending before this Court is limited to the allegations related to actions and conduct that occurred while at RJD (*see* ECF Nos. 71, 74, 77) and requires Plaintiff to allege facts that plausibly suggest the named Defendants, all of whom (apart from Secretary Kernan) were employed at RJD, were deliberately indifferent. *Iqbal*, 557 U.S. at 679. As to urinalysis testing, the allegations of the FAC show Plaintiff did not raise the issue of mental health concerns during his time at RJD. Plaintiff's FAC alleges that he was

transferred from RJD on August 25, 2016. FAC at 18. His letter to Secretary Kernan, which Plaintiff argues is the basis for notice and thus, potential Eighth Amendment liability, was not written until more than two months following his transfer: "On November 16, 2016, Plaintiff wrote defendant Kernan describing his retaliatory claims and how the weekly u/a's *have now* affected his mental health." FAC at 18 (emphasis added). Neither the FAC nor any of the administrative grievances filed by Plaintiff allege that during his time at RJD Plaintiff ever informed any personnel or named defendant, including Secretary Kernan, of mental health challenges, or sought and was denied or delayed access to mental health treatment. Plaintiff's mental health was not raised at any time while he was incarcerated at RJD. Therefore, Plaintiff would be unable to allege that any Defendants were deliberately indifferent, rendering it futile to allow Plaintiff leave to amend. *Farmer,* 511 U.S. at 837 (requiring defendants "*knows of* and disregards") (emphasis added). .

Based on the allegations and pleadings, leave to amend to state an Eighth Amendment claim would be futile and the undersigned **RECOMMENDS** that leave to amend the Eighth Amendment claims be **DENIED**.

### 2. First Amendment Claims for Retaliation

To state a claim for retaliation, Plaintiff must allege as to each defendant that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals…." *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Specifically, Plaintiff must allege facts supporting the following elements for a retaliation claim: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Broadheim v. Cry,* 584 F.3d 559, 567 (9th Cir. 2005).

To allege retaliation, there must be a causal connection between the defendant's allegedly retaliatory conduct and the action that purportedly provoked the retaliation.

*Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012) ("the plaintiff must allege a causal connection between the adverse action and the protected conduct"); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). A plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Johnson v. Paramo*, 15CV1531 GPC JMA, 2015 WL 6758304, at *3 (S.D. Cal. Nov. 5, 2015) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009)); *see also Jones v. Community Redevelopment Agency of City of Los Angeles,* 733 F.2d 646, 649 (9th Cir. 1984) (even a *pro se* plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (quoting *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989)). "The requisite causal connection can be established ... by setting in motion a series of acts by others … or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury," *Id.* (internal alterations omitted)

3:16-cv-2462-BAS-NLS

(citing *Dubner v. City & Cnty. of San Francisco,* 266 F.3d 959, 968 (9th Cir. 2001)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted).

Plaintiff's FAC adequately states a retaliation claim against Hernandez. Defendants' reply memorandum primarily argues that Plaintiff's opposition includes arguments that do not appear in the FAC. *See* ECF No. 60 at 6-7. Review of the FAC finds sufficient factual allegations, construed liberally and accepted as true, to state a claim for retaliation.

Hernandez is alleged to be the Drug Testing Coordinator ("DTC") that directed defendant Martinez to conduct the first "random" and allegedly retaliatory urinalysis testing of Plaintiff. FAC at 6. Plaintiff's footnote requests judicial notice of the state court action against, among others, Hernandez. *Id.* at 6, n.3.[17] These allegations and the reasonable inferences construed in favor of Plaintiff are sufficient to plausibly suggest that Hernandez directed the additional urinalysis testing to occur because of Plaintiff's state court action. Coupled with Plaintiff's allegations that he had recently been tested randomly, suggests that Hernandez did not have a legitimate correctional goal in ordering additional "random" urinalysis testing. These allegations meet the pleading requirements of Rule 12(b)(6) to state a claim for retaliation. Plaintiff also alleges that much of the subsequent testing "was not [conducted by] the regular officer who conducts the weekly u/a's." FAC at 8, 9. Construed in Plaintiff's favor, due to his position as the DTC this alleges that irregular testing was conducted at Hernandez's direction and/or with his knowledge. The remainder of the irregular testing is alleged to have been somehow

_____

[17] Defendants requested judicial notice of pleadings in the same action. *See* ECF No. 34-2.

tampered with, falsified, or otherwise inaccurate.  FAC at 7-9, 12.  Plaintiff also alleges that "defendants," necessarily including Hernandez, falsified the testing to increase Plaintiff's classification score to ultimately transfer Plaintiff.  Due to Hernandez's position as DTC and alleged direction of at least one test, and suggestion as to the direction of others, Plaintiff satisfied the allegations for liability based on Hernandez's personal involvement by "setting in motion a series of acts" under § 1983.  *Starr v. Baca*, 652 F.3d at 1207–08.

### 3.  SDRL (ECF No. 50)

The only cause of action against the SDRL implicated by Plaintiff's FAC is conspiracy to retaliate.[18]  ECF No. 32 at 12-13.  "Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation."  *Lacey v.*

---

[18] The SDRL's Motion to Dismiss also argues that Plaintiff fails to state claim that the SDRL conspired to violate the Eighth Amendment.  The Court finds no need to further address this argument because, even with the most liberal construction, the Court does not find the FAC either intended to or did allege facts that plausibly suggest that the SDRL conspired to violate the Eighth Amendment.  *Iqbal*, 557 U.S. at 679.  The Court's review of Plaintiff's Opposition to SDRL's motion to dismiss confirms.  ECF No. 66 at 4:20-22 ("Plaintiff contends that the conspiracy created between CDCR and SDRL to retaliate…."); 5:3-5 ("Retaliation can and has been established by the Plaintiff in the context of conspiracy between CDCR defendants and SDRL."); 5:14-15 (Conspiracy to retaliate need not be spoken…").  Likewise, the Court does not find that the Plaintiff either alleged or intended to allege a stand-alone retaliation claim against the SDRL in the FAC.  FAC at 12:26 ("the lab conspired with the named defendants"); 13:2-3 ("The SDRL has conspired by concealing information…"); 13:7-8 ("Further, the SDLR conspires with the defendants by…").  Nonetheless, the allegations of the FAC do not state a retaliation claim as there are no facts to suggest that the SDRL's actions were in response to any protected conduct, or that the SDRL had any awareness of Plaintiff's claims.  *Iqbal*, 557 U.S. at 679; *Broadheim v. Cry,* 584 F.3d at 567; *Rhodes v. Robinson,* 408 F.3d 559, 567-68 (9th Cir. 2005).  Accordingly, the Court will not further address a stand-alone retaliation claim as to the SDRL.

*Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).  As previously explained by the District Judge,

> "The elements of a conspiracy claim under § 1983 are (1) the existence of an express or implied agreement to deprive plaintiff of his constitutional rights and (2) an actual deprivation of those rights resulting from that agreement. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (citations omitted); *see Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) ("To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown.") (citation omitted). A meeting of the minds "need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (citing Fonda, 707 F.2d at 438). For purposes of § 1983, private parties such as the Laboratory act under color of state law when they "willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers of Am.*, 865 F.2d at 1540 (citations omitted)."

ECF No. 29 at 3.  The District Court also noted that the survival of claims at the *sua sponte* screening stage is no guarantee those claims will survive a motion to dismiss under Rule 12(b)(6).  *Id.* at 4.

Here, the allegations of the FAC are significantly different from those raised in Plaintiff's motion for leave to amend.  *Compare* ECF No. 8 *with* ECF No. 32.  Gone are any allegations that the SDRL participated in any tampering or damage.  *See* ECF No. 8 at 2.  Additionally, the FAC makes clear that the typed toxicology report from the SDRL "noted the security label was damaged and the label was missing information."  FAC at 9.  In other words, the FAC alleges it was the SDRL's typed report that alerted the Plaintiff to the possibility of tampering.  The allegations of conspiracy based on accepting damaged or possibly tampered with test samples fail to plausibly suggest or give rise to

an inference of a conspiratorial agreement – or an agreement of any kind – when the SDRL reports themselves point out the damage and missing information. *Compare* FAC at 9:11-13 *with* FAC at 13:7-10.

Plaintiff's allegations that the toxicology report pointed out that the label was missing information gives rise to the inference that the "collector's ID" was the "missing information" from the label. Yet Plaintiff relies on the SDRL's failure to respond to his correspondence to identify the "collector's ID"—information known only to the persons there during the collection of the sample and no one at the SDRL—as the basis for the SDRL's participation in the conspiracy. This is nonsensical. The SDRL cannot be liable for failing to provide information it is alleged to have identified as missing. Moreover, the Court is not aware of any duty or obligation for the SDRL to respond to correspondence, prisoner or otherwise, rendering Plaintiff's reliance on its silence irrelevant. Likewise, the SDRL's failure to provide the unknown collector's ID or respond to correspondence does not give rise to an inference that the SDRL was "concealing information." Plaintiff's own allegations establish that it was the SDRL's affirmatively noting the absence and damage that revealed the issues with the tests. Plaintiff's allegations are both circular and conclusory.

The FAC does no more than establish that the SDRL, a facility that contracts with the CDCR to perform urinalysis testing, received a urine sample in a damaged condition and from which the label was missing information, tested it, and produced a report of its findings, which included notation of the damage and missing information. These allegations give rise to inference that the sample was tampered with, swapped out, or damaged between the time that the Plaintiff provided the sample and the time it reached the SDRL. But the allegations do not give rise to an inference of any agreement between the named Defendants and the SDRL, and are devoid of allegations of any willful participation by the SDRL. Plaintiff fails to state a claim for conspiracy, and the undersigned **RECOMMENDS** the motion to dismiss the SDRL be **GRANTED**.

Additionally, the Court does not find it appropriate to grant leave to amend. As discussed previously, leave to amend should be liberally granted absent certain factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *San Luis & Delta–Mendota Water Auth. v. U.S. Dept. of Interior,* 236 F.R.D. at 496 (citing *Foman v. Davis,* 371 U.S. at 182)). However, the factors are not given equal weight; prejudice to the opposing party must be given the greatest weight. *Peterson v. California,* 1:10-CV-01132-SMS, 2011 WL 3875622, at *2 (E.D. Cal. Sept. 1, 2011) (citing *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003).

Here, Plaintiff was previously given leave to amend to add the SDRL as a defendant and given specific instruction by the District Judge regarding that amendment:

> Plaintiff's leave to amend extends only to: (1) adding the San Diego Reference Laboratory as a Defendant, and (2) adding the material factual allegations supporting a claim for civil conspiracy under 42 U.S.C. § 1983 against the Laboratory. In other words, *Plaintiff may only add the statements and allegations put forth in his proposed amended complaint* (ECF No. 8, 1–3). *Failure to abide by this instruction will result in further delay and possible dismissal of the claim.*

ECF No. 29 at 5 (emphasis added).

The allegations that Plaintiff ultimately included in his FAC significantly differ from those raised in his motion for leave to amend, and as modified, fail to state a claim. To now permit Plaintiff leave to amend to return to pleading allegations he abandoned in the FAC would be prejudicial to the SDRL. In addition, leave to amend would further delay the progress of this case. Under the circumstances presented, the undersigned **RECOMMENDS** leave to amend be **DENIED**.

///

///

///

## V. RECOMMENDATION

Consistent with the reasoning herein, the undersigned **RECOMMENDS**:

(1)     The Defendants' motion for summary judgment for failure to exhaust administrative remedies be **GRANTED** as to the claims against defendants Secretary Kernan, Officers Martinez, Hurm, Beduhi, Ortiz, and Garza, and that the Clerk of the Court be directed to terminate these defendants from the action;

(2)     The Defendants' motion for summary judgment for failure to exhaust administrative remedies be **DENIED** as to the claims against defendant Hernandez and the SDRL;

(3)     Defendants' motion to dismiss on behalf of Secretary Kernan, Officers Martinez, Hurm, Beduhi, Ortiz, Garza, be **DENIED AS MOOT**;

(4)     Defendants' motion to dismiss Eighth Amendment claims for cruel and unusual punishment be **GRANTED WITHOUT LEAVE TO AMEND**;

(5)     Defendants' motion to dismiss the First Amendment claims for retaliation be **DENIED** as to defendant Hernandez,

(6)     Defendants' motion to dismiss the SDRL be **GRANTED WITHOUT LEAVE TO AMEND**, and the Clerk of the Court be directed to terminate this Defendant from the action; and

(7)     The remaining defendants, Officers Sanchez and Hernandez, be **DIRECTED** to file an answer to the First Amended Complaint.

## VI. CONCLUSION

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **January 5, 2018**, any party to this action may file written objections and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **January 19, 2018.**

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: December 15, 2017

Hon. Nita L. Stormes
United States Magistrate Judge