# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN X. SINGLETON,<br><br>                      Plaintiff,<br><br>  v.<br><br>SCOTT KERNAN, *et al*.<br><br>                   Defendants. | Case No. 16-cv-02462-BAS-NLS<br><br>**ORDER:**<br><br>**(1) OVERRULING PLAINTIFF'S OBJECTIONS [ECF No. 88]**<br><br>**(2) ADOPTING REPORT & RECOMMENDATION [ECF No. 85];**<br><br>**(3) GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 36, 51];**<br><br>    **AND**<br><br>**(4) GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS [ECF Nos. 34, 50]** |

Plaintiff, a prisoner in the California Department of Corrections and Rehabilitation ("CDCR") system, received multiple rules violations reports ("RVRs") for testing positive for codeine and methamphetamine. He now claims these positive tests were manufactured in retaliation for his complaint about a prison riot that occurred while he was housed at the R.J. Donovan Correctional facility ("RJD"). (ECF No. 32.) All Defendants except Defendant Sanchez move for summary judgment, claiming that Plaintiff failed to exhaust his administrative remedies. (ECF Nos. 36, 51.) The Magistrate Judge filed a Report and Recommendation ("R&R") (ECF No. 85) recommending that the Court deny the Motion for Summary Judgment with respect to Defendants Hernandez and San Diego Reference Laboratory ("SD Lab"), but grant the motion with respect to the remaining Defendants. (ECF No. 85.) Relying on *Reyes v. Smith,* 810 F.3d 654 (9th Cir. 2016), Plaintiff objects to this recommendation. (ECF No. 88.) For the reasons stated below, the Court **OVERRULES** this objection and **ADOPTS** this recommendation.

The remaining Defendants move to dismiss the FAC to the extent it alleges a claim for cruel and unusual punishment under the Eighth Amendment. (ECF No. 34.) The R&R recommends that this motion be granted and, **OVERRULING** Plaintiff's objection, this Court agrees. Defendant SD Lab moves to dismiss any claims of conspiracy to retaliate (ECF No. 50), which the R&R also recommends granting. (ECF No. 85.) The Court agrees with the R&R and **OVERRULES** Plaintiff's objection. Defendants Kernan, Hernandez, Hurm, Beduhi, Ortiz and Garza move to dismiss any remaining counts against them. (ECF No. 34.) The R&R recommends denying the Motion as moot with respect to all Defendants except Hernandez and denying the Motion as to Hernandez, finding sufficient allegations of retaliation are alleged. (ECF No. 85.) No objections have been filed to this recommendation, and the Court finds the recommendation is not clearly

erroneous. Thus, the Court **OVERRULES** all of Plaintiff's objections and **ADOPTS THE R&R IN ITS ENTIRETY.**

I. BACKGROUND

   A. The Allegations

Plaintiff claims he received RVRs for three positive urinalysis ("U/A") tests. He claims he received all three RVRs in retaliation for complaints he had made about a prison riot. (ECF No. 32 First Amended Complaint ("FAC").)

According to Plaintiff, a prison riot occurred on January 2, 2014 at RJD, which involved Black and Mexican prisoners. (*Id.* at 2.) Plaintiff alleges that Defendant Martinez wrote Plaintiff an RVR for participation in the riot, and Defendant Sanchez found him guilty. (*Id.* at 3–4.) Singleton alleges that Defendants Matthews and Hernandez had information regarding who the aggressors in the riot were, but refused to testify at Plaintiff's Rule Violation Hearing. (*Id.*)

Nearly a year after these events, Plaintiff alleges that on January 21, 2015, Defendant Martinez inappropriately ordered him to submit to a random U/A test and then committed errors in the collection process making Plaintiff receive a "false positive." (*Id.* at 6.) Plaintiff received another positive U/A test in November 2015. At the hearing where Plaintiff attempted to challenge this positive test, Defendant Sanchez allegedly refused to allow Plaintiff to call Plaintiff's primary care doctor who could explain what medications Plaintiff was taking. (*Id.* at 8–9.) Finally, a May 15, 2016 positive U/A test had a damaged security label and did not list the Collector's ID number. Plaintiff learned this from an SD Lab toxicology report. (*Id.* at 9.) Defendant Sanchez was the hearing officer once more and denied Plaintiff the ability to call witnesses or ask specific questions. (*Id.* at 10.) After the hearing, Plaintiff sent letters to the SD Lab asking why a "Collector's ID" number was not on the toxicology report, but the SD Lab never responded. (*Id.* at

12.) Plaintiff alleges that "[a]s a result of the [SD Lab]'s failure to respond to these letters of inquiry about the Collector's ID number, the lab conspired with the named Defendants to retaliate against Plaintiff in order to maintain the multi-million dollar contract with Defendant Kernan to conduct and perform U/A testing for all of CDCR." (*Id.* at 13.)

Plaintiff claims that "[Defendant] Hernandez is the drug testing coordinator who ensures all policies, practices and procedures are followed by staff and prisoners." (*Id.* at 9.) Plaintiff further alleges that Kernan's policies provided no method to challenge the U/A test when a prisoner suspected the sample had been tampered with and specifically Plaintiff was not allowed to submit to a polygraph. (*Id.* at 12, 15–16.) Plaintiff also alleges that Kernan had a policy to suspend contact visits after a positive U/A "which is contrary to rehabilitation and imposed arbitrarily on Plaintiff." (*Id.* at 16.)

After these positive U/A tests, Defendant Ortiz summoned Plaintiff to his office and told him Defendant Garza had told Ortiz to prepare Plaintiff "for a 'special review' of programming and transfer." (*Id.* at 17.) Garza recommended Plaintiff be transferred to a "violent maximum security level prison." (*Id.*) On August 25, 2016, Plaintiff was transferred to CSP Sacramento in retaliation for his complaints. (*Id.*)

Independent of the drug testing procedures and results, Plaintiff also alleges that Defendant Hurm searched his assigned cell while Plaintiff was at breakfast without leaving a cell-search receipt. Plaintiff claims that this was "an additional retaliation tactic" due to his complaint regarding the prison riot and identified Defendant Hurm as one of the first responders to the riot. (*Id.* at 13.) After Plaintiff complained about this search, Defendants Hurm and Beduhi then re-searched his cell and included a strip search. (*Id.* at 13–14.) Hurm and Beduhi improperly removed personal property including two books. (*Id.* at 14.) Plaintiff alleges that

he filed a retaliatory grievance because these items were removed only after Plaintiff confronted Defendant Hurm about the first search. (*Id.* at 15.) Finally, Plaintiff alleges various other violations by other unidentified prison officials, including tampering with his legal mail and strip searching his brother before visits. (*See generally* FAC.)

**B.    Grievances Filed**

The California correctional system allows for three formal levels of appellate review. (*See* ECF No. 36-7 ¶2 ("B. Self Decl.").) To exhaust administrative remedies, a grievance must go through all three levels of appellate review. (*Id.* ¶3.)

According to the Declaration of M. Voong, Plaintiff has submitted two appeals for the third level of review (as required for exhaustion of administrative remedies) potentially pertaining to the allegations in the FAC. Specifically:

- Plaintiff appealed the positive U/A test results he received on January 30, 2015. In this grievance, Plaintiff alleges first that "[t]he chain of custody for [the] urine sample was likely broken" because Defendant Martinez allowed another officer to collect the sample and thus errors occurred in the collection process. Second, he claimed that there may have been a "false positive" because of the prescription medicine he was taking. And, finally, Plaintiff alleges that he was not afforded due process protections during his hearing. (ECF No. 36-4 ¶8a, Ex. A.) Notably absent from this claim is any allegation that the "false positive" or errors in collection were in retaliation for anything Plaintiff did or that Defendant Martinez directed another individual to erroneously collect the sample with any retaliatory motive.

- Plaintiff appealed the positive U/A test results he received on May 4, 2016. In this grievance, Plaintiff alleges that Defendant

Sanchez found him guilty in retaliation for other complaints filed. Notably absent from this claim is any allegation against any other Defendant in the FAC, with the exception of Defendant Sanchez. Apparently, Martinez was not involved in the collection of this U/A. (ECF No. 36-4 ¶8b, Ex. B.)

According to the Declaration of B. Self, Plaintiff has submitted additional grievances which were not pursued to the third level of review as follows:

- A complaint that Defendants Sanchez and Hernandez conspired to cause him to test positive on May 4, 2016. This complaint was screened out and eventually refiled without reference to Defendant Hernandez. (B. Self. Decl. ¶61, Ex. A.)
- A complaint that Plaintiff was harassed and retaliated against by Hurm and Beduhi following his random cell search. Plaintiff later withdrew this complaint and did not follow it up with appeals. (B. Self Decl. ¶6b; Ex. B.) Plaintiff claims he withdrew this grievance because he was told that withdrawing the grievance would help him out in the future and he "is not vindictive." (FAC at 15.)
- Plaintiff received a positive U/A on October 30, 2015. Plaintiff claimed he was inappropriately found guilty because his prescription medication caused a false positive and his due process rights were violated at the rules violation hearing. (B. Self Decl. ¶71; Ex. C.) None of the Defendants in the FAC is mentioned and there is no reference to any claim of retaliation.

## II. LEGAL STANDARD

The Court reviews *de novo* those portions of a Magistrate Judge's R&R to which objections are made. 28 U.S.C. §636(b)(1). The Court may "accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* "The statute [28 U.S.C. §636(b)(1)(c)] makes it clear," however, "that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made,* but not otherwise." *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also Schmidt v. Johnstone,* 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Reyna-Tapia,* 328 F.3d at 1121. Any objections must be written and specific. *See, e.g.,* FED. R. CIV. P. 72(b)(2) ("[A] party may serve and file specific written objections to the proposed findings and recommendations" of the magistrate judge). The failure of a party to timely file a written objection may waive the right of that party to raise those objections on appeal from a district court's order on an R&R. *See Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991). Further, "[n]umerous courts have held that a general objection to the entirety of a Magistrate Judge's [report and recommendation] has the same effect as a failure to object." *Alcantara v. McEwen,* No. 12-cv-401-IEG, 2013 WL 4517861 at *1 (S.D. Cal. August. 15, 2013) (citing cases). In the absence of specific objection, the clear weight of authority indicates that a court need only satisfy itself that there is no "clear error" on the face of the record before adopting the magistrate judge's recommendation. *See, e.g.,* FED. R. CIV. P. 72(b) Adv. Comm. Notes (1983) (citing *Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir. 1974)).

In addition, the Court adopts in full the legal standards in the R&R concerning summary judgment, exhaustion, and the CDCR's exhaustion requirements. (*See* ECF No. 85 at 8–12.)

## III. ANALYSIS

### A. Motion for Summary Judgment

Defendants Hernandez and SD Lab do not object to the R&R's recommendation that the Motion for Summary Judgment be denied with respect to them. Having reviewed the R&R and finding no clear error, the Court adopts this portion of the R&R.

Plaintiff objects to the portion of the R&R's recommendation that the Motion for Summary Judgment be granted with respect to Defendants Martinez, Hurm, Beduhi, Ortiz, Garza and Kernan. (ECF No. 88 at 2–4.) Plaintiff's objections are two-fold. First, Plaintiff claims that the fact that his original grievances requested "no reprisals" for "speaking the truth" means that the administration was on notice that any retaliation would be part of the grievance. (*Id.* at 2–3.) Second, Plaintiff reiterates that he exhausted administrative remedies. (*Id.* at 3–4.) Plaintiff raised this argument in opposition to Defendants' motion by relying on *Reyes v. Smith,* 810 F.3d 654 (9th Cir. 2016). He asserted that the fact that Defendants were not specifically named in his grievance for retaliation does not mean his administrative remedies were not exhausted. (ECF No. 57.) The Court rejects both arguments.

Plaintiff's first argument is misplaced. Requiring a prisoner to exhaust his administrative remedies allows prison officials a "fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). Simply telling prison officials there might be reprisals in the future that might need correction does not give prison officials a fair opportunity to know what reprisals may occur, nor sufficient information to correct those alleged reprisals. Plaintiff clearly understood and availed himself of the grievance procedure, yet he admits "a complaint for the retaliatory transfer [against Kernan, Garza and Ortiz] was not on file per se" and that any grievances for retaliation against Hurm and Beduhi were withdrawn. (ECF No. 88 at 4.) Plaintiff failed to put the prison officials on notice

that he was alleging he had been retaliated against by these individuals, and this failure to exhaust administrative remedies is fatal to his claims against these individuals in his FAC.

With respect to Plaintiff's second argument, Plaintiff claims that the fact that he failed to specifically name certain individual defendants does not bar his claims because he put the prison officials on notice of his retaliation claim. *See Reyes v. Smith,* 180 F.3d 654. In *Reyes,* the Ninth Circuit concluded that:

> [w]hen prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served: Prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed.

*Reyes,* at 658. In *Reyes,* the plaintiff filed a grievance about a change in his medical treatment ordered by certain prison officials without specifically naming all staff members involved, as required by a grievance rule. Nonetheless, the prison officials ruled on the merits of the medical treatment without requiring the plaintiff to comply with the relevant procedural rule. Under these circumstances, the Ninth Circuit determined that it is not proper for a federal court to dismiss "a claim that has already been fully vetted within the prison system." *Id.*

Unlike in *Reyes*, Plaintiff did not file grievances or exhaust his administrative remedies for most of the issues he now raises in the FAC. The FAC alleges wide-ranging conduct that Plaintiff claims was done in retaliation for his complaints to prison officials, including: Martinez and the SD Lab's improper processing of U/A tests resulting in incorrect positive tests; Sanchez's improper method of conducting the rules violation hearings on the positive tests (*i.e.*, denying plaintiff the ability to call witnesses or ask questions); Hernandez's failing to ensure

that appropriate drug testing procedures were followed by staff members; Kernan's adoption of policies which did not allow meaningful challenges to U/A tests; Hurm and Beduhi's improper searches of his cell and seizure of property, and improperly stacking rules violations to change his classification score; Ortiz and Garza's improper recommendation that Plaintiff be transferred to a higher security facility; and unknown prison officials tampering with his legal mail and strip searching his brother before visits. As detailed in the R&R, Plaintiff filed grievances claiming he was denied appropriate hearings regarding his U/A tests. (ECF No. 85 at 17–18.) However, he not only failed to mention the names Ortiz, Garza, or Kernan in his grievances, he failed to file a grievance regarding the conduct of which he now accuses them. Furthermore, although Plaintiff filed a grievance with respect to Martinez's improper collection of the U/A samples, he never once in this grievance procedure alleged that Martinez's conduct was the result of the retaliation he was claiming with respect to Hernandez and Sanchez. Finally, he admits he withdrew and did not further pursue any grievance against Hurm and Beduhi. Plaintiff's failure to file grievances for certain issues and his failure to exhaust administrative remedies for the grievances he did file mean that his claims have not been fully vetted within the prison system and, therefore, *Reyes* is inapplicable.

Accordingly, the Court agrees with the R&R that summary judgment should be **GRANTED** on all claims for which Plaintiff failed to exhaust administrative remedies. Specifically, Plaintiff failed to put prison officials on notice of the alleged retaliation he now claims against Defendants Martinez, Hurm, Beduhi, Garza, Ortiz and Kernan, and failed to exhaust his administrative remedies with respect to these claims. The claims against these Defendants must be dismissed.

**B. Motion to Dismiss**

The Court accepts all factual allegations pleaded in the complaint as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Because

the Plaintiff is proceeding *pro se*, the Court construes his pleadings liberally and affords him any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases, such as the one before the Court. *Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).) However, when liberally construing a *pro se* civil rights complaint, the Court is not permitted to "supply essential elements of the claim [] that were not initially pled." *Easter v. CDC*, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.* (quoting *Ivey*, 673 F.2d at 268).

### 1. Cruel and Unusual Punishment

The R&R recommends that this Court grant Defendants' Motion to Dismiss without leave to amend to the extent Plaintiff is alleging a violation of the Eighth Amendment. (ECF No. 85 at 21–24.) The Court agrees with this recommendation.

In order to allege cruel and unusual punishment, a plaintiff must allege that the prison official "deprived the prisoner of the 'minimal civilized measure of life's necessities.'" *Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992)), *overruled on other grounds by WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997). Additionally, the plaintiff "must demonstrate that the prison official 'acted with deliberate indifference in doing so.'" *Toguchi,* 391 F.3d at 1057. "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Id.* (quoting *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). The "deliberate indifference" standard is an objective one: the risk must be so obvious and so likely

to lead to a violation of constitutional rights that the prison officials were on actual or constructive notice that the risk was substantially certain to result in a constitutional violation. *Castro v. Cty. of Los Angeles,* 833 F.3d 1060, 1076 (9th Cir. 2016).

As the R&R points out, whereas the Prison Litigation Reform Act ("PLRA") requires a physical injury, *see* 42 U.S.C. §1997(e), Plaintiff alleges only mental anguish. (ECF No. 85 at 21–22.) Thus, the R&R recommends this court dismiss any claim of cruel and unusual punishment. (*Id.* at 22.)

Plaintiff objects that he has recently discovered that "defendants have/is using the guilt findings of the U/As to deny him any pain relief from his chronic back pain and blood cancer." (ECF No. 88 at 5.) Because Plaintiff was transferred out of RJD and away from the Defendants in this case in August of 2016, (ECF No. 85 at 23), the Court does not see how these new allegations can plausibly implicate the Defendants who work at RJD. Even assuming that the allegations could be raised, his objections address the recommendation that Plaintiff not be allowed to amend since Plaintiff made none of these allegations in his FAC. The R&R recommends that leave to amend not be given because Plaintiff would be unable to demonstrate deliberate indifference even with additional allegations. Plaintiff does not address "deliberate indifference" in his objections, and the Court finds that this is because he cannot allege sufficient facts that rise to such a level. Furthermore, although not addressed by the R&R, the Court finds other allegations in the FAC against these Defendants also fail to rise to the level of a deprivation of the "minimal civilized measure of life's necessities." *McGuckin,* 974 F.2d at 1059. Specifically, the insufficient allegations concern inappropriate random U/A tests, improper rules violation hearings, promulgation of policies that unfairly fail to allow meaningful challenges to U/A tests, improper search of his cell in his absence and seizure of two books, and recommendation that he be transferred to another

prison facility. Accordingly, the Court agrees with the recommendation that any claim of cruel and unusual punishment should be dismissed without leave to amend.

2. **Conspiracy to Retaliate**

As the R&R points out "[t]he only cause of action against the [SD Lab] implicated by Plaintiff's FAC is conspiracy to retaliate." (ECF No. 85 at 27.) The R&R concludes that the factual allegations in the FAC are insufficient to support this claim. According to the FAC, the report from the SD Lab "noted the security label was damaged and the label was missing information." (FAC at 9.) The FAC then claims that the SD Lab failed to respond to Plaintiff's request that the SD Lab identify the "collector's ID." However, this is information that the individual collecting the sample—not the SD Lab—would know. As the R&R appropriately concludes, "[t]his is nonsensical. The [SD Lab] cannot be liable for failing to provide information it is alleged to have identified as missing." (ECF No. 85 at 29.).

Nevertheless, Plaintiff objects to this recommendation of the R&R by asserting that he needs discovery to learn why the SD Lab failed to respond to his multiple letters of inquiry. (ECF No. 88 at 5.) This objection is unavailing. "It is inappropriate to assume that Plaintiff 'can prove facts which [he has] not alleged or that Defendants have violated . . . the laws in ways that have not been alleged.'" *Newdow v. Cong. of the United States*, 435 F. Supp. 2d 1066, 1071 (E.D. Cal. 2006) (quoting *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,* 459 U.S. 519, 526 (1983)). Plaintiff cannot satisfy his pleading burden—minimal as it may be—by speculatively asserting that discovery might provide him with the facts he needs to make his claim plausible. *See Alberts v. BAC Home Loans Servicing, L.P.,* No. 11-6304-HO, 2012 WL 96570 at *1 (D. Or. Jan. 10, 2012) ("Although pleading requirements are minimal, complaints cannot

be used as a fishing expedition.") Moreover, Plaintiff's objection confirms the propriety of the R&R's recommendation to dismiss SD Lab without leave to amend. Any amendment is clearly futile since Plaintiff admittedly has no facts that plausibly implicate SD Lab in a conspiracy to retaliate against him. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend may be denied when any amendment would be futile). Accordingly, Plaintiff's objection is overruled and the Court approves the R&R's recommendation to dismiss SD Lab without leave to amend.

## IV. CONCLUSION & ORDER

For the reasons stated above, the Court **HEREBY ORDERS** that:

1. Plaintiff's Objections (ECF No. 88) are **OVERRULED.**

2. The Court **APPROVES** and **ADOPTS** the R&R (ECF No. 85) in its entirety.

3. The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions for Summary Judgment (ECF Nos. 36, 51) as follows:

    a. The Court **GRANTS** the Motions on behalf of all Defendants **EXCEPT** Defendants Hernandez and San Diego Reference Laboratory. The Clerk of the Court shall terminate from this case Defendants Kernan, Martinez, Hurm, Beduhi, Ortiz, and Garza.

4. The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss (ECF Nos. 34, 50.) as follows:

    a. The Court **GRANTS** the Motion to Dismiss **WITH PREJUDICE** with respect to San Diego Reference Laboratory. San Diego Reference Laboratory is **DISMISSED** from the case. The Clerk of the Court shall terminate this

Defendant.

      b. The Court **GRANTS** the Motions **WITH PREJUDICE** with respect to Plaintiff's claim of cruel and unusual punishment in violation of the Eighth Amendment.

      c. The Court **DENIES** the Motion to Dismiss with respect to Plaintiff's allegations of retaliation or Fourteenth Amendment due process allegations against Defendants Hernandez and Sanchez.

      d. The Court **DENIES AS MOOT** the Motions to Dismiss by Defendants already dismissed as part of the ruling on Summary Judgment.

5. In light of the foregoing, the only remaining claims in this case are retaliation in violation of the First Amendment and denial of due process in violation of the Fourteenth Amendment against Defendants Hernandez and Sanchez. These Defendants are **ORDERED** to file an answer to the First Amended Complaint to **no later than February 12, 2018**.

**IT IS SO ORDERED.**

DATED: January 22, 2018

Hon. Cynthia Bashant
United States District Judge