UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN SINGLETON,<br>CDCR#: H-86959,<br><br>                    Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>                    Defendants. | Case No.: 3:16-cv-2462-BAS-NLS<br><br>**ORDER:**<br><br>**(1) DENYING EX PARTE REQUEST FOR A SUBPOENA DEUCES TECUM [ECF No. 103];**<br><br>**(2) GRANTING EX PARTE REQUEST FOR IN CAMERA REVIEW [ECF Nos. 105, 109]; AND**<br><br>**(3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL [ECF No. 114]**<br><br>**[ECF Nos. 103, 105, 114]** |

Kelvin X. Singleton ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* on a civil complaint brought under the provisions of 42 U.S.C. § 1983 relating to incidents occurring while incarcerated at R.J. Donovan Correctional Facility ("RJD") in San Diego. ECF No. 32 (First Amended Complaint). Before the Court are three separate discovery motions submitted by Plaintiff: (1) an ex parte request for a subpoena for documents to issue to San Diego Reference Lab; (2) an ex parte request for in camera review of documents withheld by Defendants in response to discovery requests; and (3) a motion to compel further production of documents. ECF Nos. 103, 105, 114.

## I.   EX PARTE REQUEST FOR SUBPOENA DUCES TECUM

A subpoena duces tecum is a discovery tool used for the production of specified documents or other tangible objects for inspection from a third party. Fed. R. Civ. P. 45(a)(2)(c). Where the plaintiff is proceeding *in forma pauperis* and requires service of a subpoena be effectuated by the U.S. Marshal's Office, the plaintiff's requested subpoena must meet certain requirements. Fed. R. Civ. P. 45, 28 U.S.C. § 1915(d); *Baca v. Biter*, 115CV01916LJOMJSPC, 2017 WL 1476943, at *2 (E.D. Cal. Apr. 25, 2017) ("[d]irecting the Marshal's Office to expend its resources personally serving a subpoena is not taken lightly by the court") (quoting *Austin v. Winett*, 104CV05104DLB PC, 2008 WL 5213414, *1 (E.D. Cal. 2008)).

Courts will consider granting a request for a subpoena duces tecum only if the documents sought from the non-party are discoverable, are not equally available to plaintiff, and are not obtainable from defendants through a request for production of documents. Fed. R. Civ. P. 45(c); Fed. R. Civ. P. 34; *Baca v. Biter*, 2017 WL 1476943, at *2 ("The 'Federal Rules of Civil Procedure were not intended to burden a non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena duces tecum.' Non-parties are 'entitled to have the benefit of this Court's vigilance' in considering these factors'") (quoting *Badman v. Stark*, 139 F.R.D. 601, 605 (M.D.Pa.1991)). Where the documents requested by subpoena can be obtained by document request to the defendant(s) or are already in the plaintiff's possession, a

subpoena to a third party is not appropriate. *See Brown v. Rasley*, 1:13-CV-02084-AWI-BAM PC, 2017 WL 6451706, at *4 (E.D. Cal. Dec. 18, 2017) (denying subpoena where records obtainable by document request and not clear plaintiff exhausted other "reasonably available means" before requesting subpoena); *Scofield v. Ball*, 11-CV-378-BEN WMC, 2013 WL 6061983, at *2 (S.D. Cal. Nov. 15, 2013) (denying request for subpoena for test results from blood lab because the relevant test results were included as part of plaintiff's complaint). Thus, a request for the issuance of a subpoena for documents requires Plaintiff to: (1) identify with specificity the documents sought and from whom, (2) make a showing that the records are only obtainable through that third party; and (3) demonstrate the relevance of the requested documents. Fed. R. Civ. P. 26(b)(1); *Brown v. Rasley*, 2017 WL 6451706, at *3.

Here, Plaintiff requests a subpoena issue for three categories of documents to be produced by the San Diego Reference Lab:

> (1) All test results of my person from January 2015 thru April 2016, while at R.J. Donovan, to include any/all information on dates/time received and by whom it was sent;
> (2) A copy of the contract and the standard procedures the lab has directed R.J. Donovan to follow in order for u/a sample to be received and tested by the lab;
> (3) Any/all information regarding "certification" requirements and training of persons who qualify to conduct and perform u/a collections and testing.

ECF No. 103 at 2-3.[1]

Plaintiff's requested categories of documents do not meet the requirements for issuance of a subpoena. Addressing category 1, at a minimum, the test results that Plaintiff challenges as tampered with are already in his possession and have been made part of the record. *See* ECF Nos. 51-3, 51-4 (Declarations in support of Motion for

---

[1] Page number references cite to the page number generated by CM/ECF appearing in the header of the filed document.

Summary Judgment of M. Voong at pp. 63, 111 and B. Self at pp. 61, 133). And because Plaintiff seeks only testing occurring while at RJD, all test results should be within the possession, custody or control of the Defendants as current employees of RJD and so, obtainable by document request. *See Bryant v. Armstrong*, 285 F.R.D. 596, 607 (S.D. Cal. 2012) ("A party is deemed to have control over documents if he or she has a legal right to obtain them"). This is equally true for categories 2 and 3—a copy of the procedures or requirements, if any, provided to RJD should be within the possession, custody and control of the Defendants and obtainable by document request.[2] Accordingly, Plaintiff's request for a subpoena duces tecum is **DENIED**.

## II. EX PARTE REQUEST FOR IN CAMERA REVIEW

Plaintiff also requests the Court conduct an in camera review of documents for which Defendants claimed an official information privilege. ECF No. 105. The particular document request at issue is not attached to Plaintiff's *ex parte* request, but Plaintiff appears to have requested a " 'probable cause' memorandum to strip-search Plaintiff's brother… and a … secret 'confidential' memorandum claiming Plaintiff is traffic[k]ing drugs through visits and is a 'hoova crip' gang member" that he believed to be part of his file. ECF No. 105 at 1-2; *see also,* ECF No. 114, Ex. 3 [RFP Nos. 8 and 10]. The Defendants responded by asserting the official information privilege and providing a declaration from defendant Lt. Hernandez in support of the assertion of privilege. ECF No. 109, Ex. A at pp. 3-6. *See also,* ECF No. 114, Ex. 3.

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing *Kerr v. United States Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975)). The discoverability of official documents should be determined under the "balancing approach that is moderately pre-weighted in favor of disclosure." *Kelly v. City of San*

---

[2] The document requests issued by Plaintiff to Defendants are addressed in detail below discussing Plaintiff's motion to compel.

4

*Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987). The party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." *Id.* at 669. To meet this showing, Defendants "must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Dowel v. Griffin*, 275 F.R.D. 613, 616 (S.D. Cal. Aug. 17, 2011) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 613). Specifically, "[i]n order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Soto*, 162 F.R.D. at 613 (quoting *Kelly*, 114 F.R.D. at 670). If the nondisclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an in camera review of the material and balances each party's interests. *Soto,* 162 F.R.D. at 613; *Kelly,* 114 F.R.D. at 671; *see also, Est. of Nunez by and through Nunez v. Correctional Physicians Med. Group, Inc.,* 16CV1412-BEN-MDD, 2017 WL 4005267, at *2 (S.D. Cal. Sept. 11, 2017).

Here, the declaration provided by Lt. Hernandez satisfies the initial burden of asserting the official information privilege. *See* ECF No. 109 at 3-6. Lt. Hernandez testifies that the material in question is maintained in the confidential portion of the inmate's file, and that he has reviewed the documents in question. *Id.* at ¶¶ 2-4. He also explains that disclosure would threaten future investigations within the CDCR by

5

3:16-cv-2462-BAS-NLS

affecting the willingness of civilians and cooperating inmates to speak with department investigators. *Id.* at ¶ 10. Lt. Hernandez states that due to the detailed descriptions of events, redaction of names is insufficient to protect the identity of informants from threats, retaliation, and violent attacks that could threaten their lives. *Id.* at ¶¶ 5-9.

Having met the initial burden, the Court will **GRANT** Plaintiff's request for in camera review of the documents in question to balance each party's interests.[3] Defendants must lodge documents withheld on the grounds of the official information privilege by no later than **June 1, 2018**.

### III.  MOTION TO COMPEL

Finally, Plaintiff moves to compel further production in response to various requests for production of documents ("RFP").[4] Plaintiff attaches as exhibits to his motion the Defendants' responses (Ex. 3), as well as subsequent meet and confer correspondence exchanged by the parties (Exs. 1-2). ECF No. 114.[5]

*Requests for Production Nos. 4 and 5*

RFP Nos. 4 and 5 request evidence of certification of urinalysis training for various correctional officers. ECF No. 114 at 4. Defendants respond that they will produce training records. *Id.* at 18-19 (Ex. 3). The subsequent meet and confer correspondence confirms all responsive documents were produced. *Id.* at 14 (Ex. 2). Plaintiff's declaration confirms receipt of training records, but challenges the amount of training reflected in the documents produced. Plaintiff presents no basis to compel further production and the motion to compel is **DENIED** as to RFP Nos. 4 and 5.

---

[3] The Court also notes that Defendants did not file an opposition, which also weighs in favor of granting the request for in camera review. *See* ECF No. 104 (directing "Defendants to submit opposition by Friday, April 13, 2018."); *see also,* Civ LR 7.1(f)(3)(c).

[4] Plaintiff refers to interrogatories and requests for production of documents interchangeably. Because the requests seek the production of documents, the Court will refer them as Requests for Production of Documents.

[5] Because it is clear to the Court that the parties have already met and conferred regarding this discovery dispute, and the requests and positions of the parties are straightforward and conveyed in the documents, the Court finds it appropriate to resolve this motion without ordering opposition from Defendants.

*Requests for Production Nos. 6, 8, 11, and 12*

RFP No. 6 requests the urinalysis testing logs for January 21, 2015, October 3, 2015, and April 25, 2016. ECF No. 114 at 19 (Ex. 3). Defendants respond that after a diligent search, no records were located. *Id.* However, in the subsequent meet and confer, Defendants state that the April 25, 2016 log was produced and that the 2015 logs remain unable to be located. *Id.* at 14 (Ex. 2). Likewise, RFP No. 8 requests all documents related to a visit by the Plaintiff's brother in which he was strip-searched. ECF No. 114 at 19. Defendants' responses indicate that Defendants were not able to locate any responsive documents. *Id.* at 20. Yet, Defendants produced at least one document responsive to this request, marked Bates No. AGO-470. *Id.* at 8. Similarly, RFP No. 11 requests all documents related to urinalysis testing conducted by Officer Martinez on or about January 21, 2015. *Id.* at 21. Defendants respond that they will produce documents, apart from the testing log from January 21, 2015 which Defendants were unable to locate. *Id.* For this request it is not clear what, if any, documents Defendants ultimately produced. Finally, RFP No. 12 requests a log book for January 21, 2018. *Id.* at 21. Defendants respond that they were unable to locate documents, but will continue to search and "will produce responsive documents when they are located." *Id.* In later correspondence, RFP 12 is identified among the RFPs for which "Defendants have produced all responsive documents." *Id.* at 14.

A representation that after a diligent search, no records were located is normally indicative that there are no responsive documents, but as Plaintiff points out, Defendants' production included responsive documents for some of these requests. The inconsistencies within Defendants' responses and production call into question the accuracy and thoroughness of the Defendants' search. Accordingly, Plaintiff's motion to compel is **GRANTED IN PART** as to RFP Nos. 6, 8, 11, and 12. Defendants are **ORDERED** to conduct another search for and production of responsive documents by **June 1, 2018**. Defendants must also file a declaration with the Court by **June 1, 2018** that sets forth (1) the locations documents are normally kept; (2) the locations that were

7

3:16-cv-2462-BAS-NLS

searched; and (3) that all responsive document(s) have been produced or are subject to a privilege that has, or is, being asserted.

*Requests for Production No. 10*

RFP No. 10 seeks the contents of the Plaintiff's central file and is the subject of the request for in camera review previously addressed. Plaintiff's motion to compel as to this request is therefore **DENIED AS MOOT**.

*Requests for Production No. 13*

RFP No. 13 requests copies of "memorandums, contract, directives and/or protocol procedures" received from the San Diego Reference Lab ("SDRL") regarding urinalysis testing. *Id.* at 21-22. Defendants' response objects on the grounds that the SDRL was dismissed from the case rendering the request disproportionate and that any contract would violate the rights of third parties. *Id.* at 22.

As to the contract between RJD and the SDRL, Plaintiff's First Amended Complaint only relied on the contract in support of the Plaintiff's now dismissed claim against the SDRL for conspiracy. *See* ECF No. 32 at 12-13; ECF No. 85 at 29; ECF No. 89 at 13-14. The dismissal of the SDRL renders the Plaintiff's request for the contract between RJD and the SDRL irrelevant and disproportionate to the remaining claims and that aspect of the Plaintiff's motion to compel is **DENIED**.

The request also seeks memorandums, directives and protocols for urinalysis testing. Among the Plaintiff's remaining claims are the allegations that the urinalysis testing was conducted improperly resulting in a false positive result, and that as the Drug Testing Coordinator, defendant Lt. Hernandez was responsible for ensuring testing followed proper procedure. Similarly, Plaintiff alleges that hearing(s) regarding positive test results were improperly conducted by defendant Lt. Sanchez. *See* ECF Nos. 32; 85, 89. In light of these claims, the dismissal of the SDRL does not render any "directives and/or protocol procedures" regarding urinalysis testing irrelevant. Plaintiff's motion to compel further response to RFP No. 13 is **GRANTED IN PART**. Defendants are

ordered to produce memorandums, directives, and/or protocols regarding urinalysis testing provided by the SDRL.

**IT IS SO ORDERED.**

Dated: May 18, 2018

*Nita L. Stormes*

Hon. Nita L. Stormes
United States Magistrate Judge