UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN SINGLETON,<br>CDCR#: H-86959,<br><br>                            Plaintiff,<br>v.<br>SCOTT KERNAN, et al.,<br>                          Defendants. | Case No.: 3:16-cv-2462-BAS-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>**[ECF No. 123]** |

Before the Court is the Plaintiff's "Ex Parte Motion for Sanctions for Defendants' Bad Faith Efforts." ECF No. 123. Plaintiff's motion alleges evidence tampering and/or spoliation, and requests evidentiary and monetary sanctions, that a subpoena issue, and terminating sanctions. *Id.* Due to the seriousness of the allegations and the various forms of relief requested, the Court ordered an opposition. ECF No. 125. Defendants timely submitted their opposition, and Plaintiff a reply. ECF Nos. 128, 133. Plaintiff later filed a supporting declaration of purported "new evidence" in support of his motion. ECF No. 142. The Court construed this as a supplemental reply because the evidence presented was not new, and had been previously put before the Court and litigated as part of the prior motion to dismiss and motion for summary judgment. *See* ECF No. 36-4 at 63;

ECF No. 85 at 29 (Report and Recommendation, specifically addressing the missing collector's ID number pointed to by Plaintiff).

For the reasons set forth below, Plaintiff's motion for sanctions is **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

Plaintiff brings his action under 42 U.S.C. § 1983 alleging retaliation and due process violations arising from a grievance he filed related to a riot. ECF No. 32 (First Amended Complaint). Plaintiff alleges the retaliation included urinalysis testing and tampering with the results, as well as due process violations during subsequent hearings on rule violations for positive urinalysis results. *Id.*

Plaintiff's discovery requested, *inter alia*, the log books for dates that urinalysis testing was completed, including January 21, 2015, October 13, 2015, and April 25, 2016. ECF No. 123 at 2; ECF No. 114 at 11.[1] Plaintiff also requested proof of officers' certification to establish proper training to conduct urinalysis as well as any protocol or instruction provided by the laboratory. ECF No. 114 at 10, 12. Defendants' response indicated that a copy of the log for April 25, 2016 was produced but logs for the 2015 dates were unable to be located. *Id.* at 14. Defendants' responses also indicated that they would produce training records or certifications for Defendants Hernandez, Martinez, Hampton, and Enano. *Id.* at 17-18.

Plaintiff moved to compel further responses to his request for production and various interrogatories. ECF No. 114. Defendants did not submit an opposition. *See* ECF Nos. 104, 116 n.3. Accordingly, based on Plaintiff's motion, which pointed out inconsistencies in Defendants' written responses contrasted with the subsequent document production, the Court granted in part the motion to compel, directing the Defendants to conduct another search for documents related to four distinct requests for

---

[1] All page number references are to page numbers generated by the CM/ECF header.

production, including the request for log books, and submit a declaration to the Court that it had been completed. ECF No. 116. Defendants timely complied, submitting the declarations of counsel and named defendant G. Hernandez that a diligent search was conducted and no additional documents were located.[2] ECF No. 120.

## II. MOTION FOR SANCTIONS

Plaintiff now moves for sanctions because he concludes that Defendants "either destroyed evidence or did not follow protocol related to the processing of Plaintiff's u/a's." ECF No. 123 at 3. Plaintiff argues that because he made counsel for Defendants aware of his concern of retaliation from Officers Hernandez and Martinez during separate state court litigation, all documents generated by or related to those officers were required to be "maintained as evidence" for a minimum of five years *Id.* at 6-7. Second, Plaintiff argues that the Department Operational Manual ("DOM") § 52010 also requires that records be maintained. *Id.* at 7. Finally, Plaintiff argues that "[i]t can be reasonably inferred" that there is no innocent explanation for the destruction of the documents because "evidence that is normally kept on record mysteriously is missing" in his retaliation case. *Id.*

Plaintiff requests (1) monetary and evidentiary sanctions; (2) that a subpoena issue to the San Diego Reference Lab ("SDRL") to obtain any testing protocol; (3) that all his failed drug tests since June 2016 be declared void and stricken from his prison records; and (4) terminating sanctions. *Id.* at 1, 2 n.2, 7.

Defendants' opposition argues that Plaintiff's motion is untimely,[3] fails to meet the standards for imposition of sanctions, and is simply a re-hashing of the prior motion to

---

[2] The declaration submitted on behalf of Defendants also explained that Plaintiff had been provided with supplemental responses that Plaintiff did not reference in his motion to compel. ECF No. 120 at 2.

[3] Defendant argues that Plaintiff's motion is untimely under the Chambers' rules, and a re-hashing of Plaintiff's previous motion to compel. The Court disagrees. Plaintiff's motion seeks redress for the documents Plaintiff contends should have been preserved that Defendants were unable to produce, despite the motion to compel. The motion properly follows the motion to compel.

compel. ECF No. 128 at 1. Defendants argue there was no duty to preserve the log books until this case was filed; any letters sent previously were insufficient to create a duty; and that there is no prejudice as a result of the loss of the log books because all the information that would be logged is also contained in the Rule Violation Reports ("RVR"). *Id.* Defendants also argue that much of Plaintiff's requested relief is not permitted by law. *Id.*

### III. LEGAL STANDARDS

At the outset, Plaintiff does not seek, nor could he establish, a basis for discovery sanctions under Rule 37(b), violation of a court order, because Defendants properly and timely submitted the declarations required by the Court's order, certifying that an additional search was conducted and no additional documents were located. ECF No. 120. Likewise, sanctions under Rule 37(e), failure to preserve electronic information, are unavailable because there is no argument that the records in question were electronically stored. Plaintiff relies only on the Court's inherent power to sanction and the precedent regarding spoliation of evidence.

Federal trial courts are vested with a wide range of inherent powers that allow them to govern their courtrooms and the litigation processes before them. *Chambers v. NASCO*, 501 U.S. 32, 43 (1991). Inherent powers must be used only "with restraint and discretion." *Id.* at 44. An example of these inherent powers is the discretionary power of a federal trial court to levy appropriate sanctions against a party which prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329-30 (9th Cir. 1993). Appropriate sanctions for spoliation, when found, range from outright dismissal, an adverse inference jury instruction with respect to the spoliated evidence, exclusion of a category of evidence, or monetary sanctions (including attorneys' fees). *See id.; Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958, 961 (9th Cir. 2006).

A party seeking sanctions for spoliation of evidence has the burden of establishing the following elements by a preponderance of the evidence: "(1) the party having control

over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence." *Conan v. City of Fontana*, EDCV 16-1261-KK, 2017 WL 3530350, at *3 (C.D. Cal. Aug. 16, 2017); *Erhart v. BofI Holding, Inc.*, 15-CV-02287-BAS (NLS), 2016 WL 5110453, at *5 (S.D. Cal. Sept. 21, 2016); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (same); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (same). "[T]he presence of bad faith automatically establishes relevance; however, when the destruction is negligent, relevance must be proven by the party seeking sanctions." *S.E.C. v. Mercury Interactive LLC*, 3:07-cv-02822-WHA (JSC), 2012 WL 3277165, at *10 (N.D. Cal. Aug. 9, 2012) (citation and internal quotation marks omitted).

To impose evidentiary sanctions for spoliation, the court need not find that the spoliating party acted in bad faith; willfulness or fault can suffice. *Glover*, 6 F.3d at 1329; *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992) (citation omitted). The court need only find that the offending party destroyed evidence with notice that the evidence was potentially relevant to the litigation. *Leon*, 464 F.3d at 959; *Glover*, 6 F.3d at 1329 (internal quotation marks omitted) ("Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation."); *cf. United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of business.").

In addition, "[t]he imposition of a harsh sanction … requires an analysis of the prejudice suffered by the non-spoliating party." *Moore v. Gilead Scis., Inc.*, C 07-03850 SI, 2012 WL 669531, at *5 (N.D. Cal. Feb. 29, 2012) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). "The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to

go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation omitted); *see also Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir. 1999) (citation omitted) ("To be actionable, the spoliation of evidence must damage the right of a party to bring an action.").

The most drastic sanction, dismissal, generally requires a finding that the conduct was "due to willfulness, bad faith or fault of the party." *In re Phenylpropanolamine (PPA) Products Liability Litig.,* 460 F.3d 1217, 1233 (9th Cir. 2006). This standard is met by "[d]isobedient conduct not shown to be outside the litigant's control." *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002); *Jorgensen v. Cassiday,* 320 F.3d 906 (9th Cir. 2003). Courts may only impose terminating sanctions when no lesser sanction is adequate to cure the prejudice from the offending conduct. *Lewis v. Ryan*, 261 F.R.D. 513, 519 (S.D. Cal. 2009) (citing *In re Napster, Inc. Copyright Litigation,* 462 F. Supp. 2d 1060, 1072 (N.D. Cal. 2006)).

## IV. DISCUSSION

### a. Duty to Preserve

"Federal courts have recognized a party's duty to preserve evidence when it knows or reasonably should know the evidence is relevant and when prejudice to an opposing party is foreseeable if the evidence is destroyed." *Lewis*, 261 F.R.D. at 518. A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Id. (citing Leon*, 464 F.3d at 959).

Plaintiff argues that the duty to preserve began during prior litigation, *Singleton v. Ballejos, et al.* ("*Ballejos")*, when he wrote a letter to counsel for the Defendants on February 11, 2015 that he was "concerned about a 'full-fledge[d]' retaliation campaign by defendant Hernandez and guard Martinez." ECF No. 123 at 6; *see also,* ECF No. 1-2 at 30. Plaintiff's letter specifically identified a "dirty u/a" as the source of his concern. ECF No. 1-2 at 30. Defendants respond that this letter is insufficient to trigger a duty to

preserve because the letter was for a different case that was dismissed, and it did not request any record preservation. ECF No. 128 at 12.

Plaintiff's letter may have triggered a duty to preserve in the *Ballejos* matter, but the dismissal of *Ballejos* in July of 2015 (*see* ECF No. 128-1 at 48, Judgment of Dismissal) also ended any duty to preserve that arose in that case. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 516 (S.D. W. Va. 2014) (noting that once a lawsuit resolved, it "eliminated the duty to segregate and preserve such things as emails and other informal documents"). Plaintiff's argument in this regard fails, but that does not conclude the analysis.

The next notice prompting a duty to preserve did not arise until the filing of the Plaintiff's complaint in January 2017. If the log book entries were in existence at that time, the complaint's allegations regarding retaliatory testing and tampering with results were sufficient to trigger a duty to preserve any log book entries related to Plaintiff's urinalysis testing, which was a central component of the complaint. *See* ECF No. 1; *see also Lewis*, 261 F.R.D. at 518 (finding that under the CDCR's document retention policy, "many of the documents would have been in Defendants' possession when Defendants were served with notice of the lawsuit and when Plaintiff propounded his first set of Requests for Production of Documents").

Here, neither party can state with certainty if, or when, the log book entries were lost or destroyed. Therefore, the Court must determine if Plaintiff has satisfied, to a preponderance of the evidence standard, that the January 2015 documents should have been in existence two years after the testing, in January 2017, such that filing of the lawsuit was sufficient notice to the CDCR to preserve documents. Plaintiff offers two arguments. First, Plaintiff states, without citation to authority, that the CDCR is required to maintain records for a period of five years. Second, Plaintiff cites to the DOM § 52010 as a source for requiring the CDCR to "maintain" urinalysis log books.

Review of the relevant section of the DOM reveals no part of § 52010 includes reference to the length of time the records are required to be retained. The DOM does

reference, in several places, a "Records Retention Schedule," but no schedule was put before the Court by either party to show either the timely destruction of the documents under the schedule or that the records were subject to a retention schedule that had not concluded at the time of Plaintiff's initial complaint or issuance of discovery requests. *See* DOM, Article 23 (referencing records retention schedules).

While Plaintiff fails to put before the Court any evidence, apart from his own assertion, to support a five year retention policy, Defendants offer no challenge to his statement as inaccurate. Assuming that it is accurate, the log books entries dated in 2015 related to Plaintiff should have been in existence and preserved by Defendants when Plaintiff filed his complaint, and should still be in existence to this day. This construction is tacitly supported by the Defendants, who submitted declaration of Lieutenant Hernandez in response to the Court's Order that indicates he searched the filing room and was unable to locate the records – he does not testify they were destroyed under the normal document retention schedule. ECF No. 120 at 11.

Where the standard is a preponderance of the evidence, Plaintiff's unchallenged statement that records were to be preserved for five years, coupled with Defendants' submissions that indicate the records should have been in the filing room that was searched, and no testimony that records were destroyed pursuant to normal business practices, it is more likely than not that Defendants had sufficient notice of the lawsuit to trigger the obligation to preserve the urinalysis logbooks.

### b. Culpable State of Mind

The "culpable state of mind" includes negligence. *Cottle-Banks v. Cox Commc'ns., Inc.*, 10CV2133-GPC WVG, 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013) (citing *Lewis*, 261 F.R.D. at 521; *see also Uribe v. McKesson,* 08cv1285-DMS (NLS), 2010 WL 4235863, at *3 (E.D. Cal. Oct. 21, 2010). A finding of "bad faith" is not a prerequisite. *Glover,* 6 F.3d at 1329.

It is Plaintiff's burden to show a culpable state of mind by a preponderance of evidence. Plaintiff first argues the destruction was in bad faith, but offers no evidence to

support bad faith action. Plaintiff also points to the absence of the requested log books that he contends should have been kept for five years. Defendants offer testimony that the document was searched for and was unable to be located in the "the filing room, the entire ISU office, and two storage containers maintained outside the ISU office." ECF No. 128 at 10; *see also* ECF No. 120 at 9.[4] At no point do Defendants argue the record was destroyed pursuant to normal business practices in accordance with the document retention policies of the CDCR. Plaintiff has satisfied the burden of showing a culpable state of mind through negligent loss of the documents. *Cottle-Banks*, 2013 WL 2244333, at *14.

### c. Relevance

Where records are negligently lost or destroyed, Plaintiff must establish the relevance of the documents in question before a sanction may issue. *Mercury Interactive LLC*, 2012 WL 3277165, at *10 ("when the destruction is negligent, relevance must be proven by the party seeking sanctions."). Defendants argue the information in the urinalysis log books is irrelevant and duplicative of information contained in the RVRs. In support of this argument, Defendants provide the urinalysis log book entry produced for April 25, 2016. ECF No. 128-1 at 130 (Ex. 17). The log book is titled "Richard J. Donovan Correctional Facility Mandatory / List Date 4/25/16" and contains 10 columns that provide the inmates' information in columns 1-6 (first and last name, CDC No., "SegNum," Facility and Bed), and 4 columns regarding the urinalysis: "Date UA collected," "UA collected by," "Refused Y/N," and "Reason UA not collected." *Id.* For the April 25 entry, all Plaintiff's information, and the information for other inmates on the list, in columns 1-6 is pre-populated. *Id.* In the remaining columns are the hand-printed date, "4/25/16," the name "A. Enano" (presumably printed by the person filling out the form), and "N" to indicate Plaintiff did not refuse to provide a sample. *Id.* The

---

[4] Defendants' MSJ submissions indicate that all the logs from this time period were "misplaced." ECF No. 138-3 at 3-4.

"Reason UA not collected" column is blank. *Id.* The same printed date and name appears in 5 of 15 rows, the remainder are blank. *Id.* In light of the information contained in the log book entries, the Court turns to relevance of the missing log book pages for January 21, 2015 and October 13, 2015.

The Plaintiff's complaint does not contain any allegations that reference October 13, 2015 urinalysis testing. There is a RVR dated October 13, 2015, however it indicates Plaintiff provided the offending sample on September 28, 2015. *See* ECF No. 142 at 5 ("Date collected: 09/28/2015"). Accordingly, the urinalysis logbook entry for October 13 is not relevant and Plaintiff can show no prejudice by its absence. Plaintiff's motion for sanctions related to spoliation of the October 13, 2015 urinalysis log book entry is **DENIED**.

The January 21, 2015 entry presents a different picture and requires further analysis. Plaintiff's complaint alleges:

> On or about January 21, 2015 … Plaintiff was told by Defendant Martinez to submit to a 'random' urinalysis. [FN 3: … A state civil case was pending … against Martinez and Hernandez…] … Plaintiff asked defendant Martinez who directed him to the task of performing the u/a testing, and he said it was defendant Hernandez. Plaintiff was suspicious of the u/a test because Martinez was not the regular u/a officer and the test day was not on the day u/a's are normally done. Plaintiff complied with the test. When the u/a testing was performed, Plaintiff gave his u/a sample to C/O Puerling, who was helping defendant Martinez conduct the u/a's.

ECF No. 32 at 6. The sample provided on January 21, 2015 came back with a positive result and Plaintiff was issued an RVR. Shortly thereafter, on February 11, 2015, Plaintiff wrote to counsel for the Defendants regarding his fear of retaliation.

Defendants Hernandez and Sanchez are the only defendants remaining in the case. The log book entry is not relevant to the case against defendant Sanchez, but is relevant to the case against defendant Hernandez. Had the log book been preserved and produced, the entry for January 21, 2015 could show whether or not Plaintiff's name was on the pre-populated list for mandatory testing and that the testing was ordered to be performed

on January 21, 2015. If Plaintiff's name did not appear at all among the pre-populated inmates for testing, or was added to the list by hand, that could support the Plaintiff's allegations that his testing was retaliatory.

Plaintiff also alleges Lieutenant Hernandez, as the Drug Testing Coordinator, was responsible for ensuring compliance with policies and procedures for urinalysis testing and the log books could show a breach in the chain of custody of his sample. ECF No. 133 at 3. The log book entry could offer support for Plaintiff's allegation that his samples were tampered with in retaliation if the document can demonstrate a violation in the chain of custody.

The logbook entry for January 21, 2015 is relevant to the claims against Lieutenant Hernandez.

### d. Prejudice

Defendants argue there is no prejudice because the information that would have been in the log book is duplicative of information included in the RVR issued relating to the incident. This argument is only partially accurate. Plaintiff's allegations are that the testing was ordered not because of a mandatory list generated in Sacramento but at the direction of Lieutenant Hernandez in retaliation, and that the sample he provided was subsequently tampered with in retaliation. The log book from January 21, 2015 would show, at a minimum, whether or not Plaintiff's name appears in the pre-populated portion of a testing list generated in Sacramento, or was added to the list by hand, or did not appear on the page at all. Defendants' pointing to purportedly duplicative information in an RVR does not preclude the possibility that Singleton was tested in retaliation on January 21 and not due to his name validly appearing on a mandatory testing list.

It is not clear whether Defendants have produced the Mandatory Testing List for January 21, 2015 in another form in response to this or other document requests or if the log book entry is the only record. Plaintiff would only be prejudiced if Defendants are allowed to offer testimony, without any other documentary support produced in discovery, that Plaintiff's name appeared on the pre-populated list for urinalysis testing

11

generated in Sacramento for January 21, 2015. In reviewing Defendants' MSJ, this is precisely what occurs. Defendants offer the declaration of Officer Martinez that Singleton's name appeared on the list and no other evidence. If the logbook entry is the only record that Plaintiff could use to show the January 21, 2015 testing was retaliatory, then the absence of this document is prejudicial to Plaintiff who is otherwise required to attempt to prove a negative: that his name did not appear on the list generated from Sacramento.

### e. Appropriate Sanction

Having shown by a preponderance of evidence that the January 21, 2015 log book should have been preserved, was negligently lost or destroyed, is relevant to the claims alleged, and that its absence is prejudicial to Plaintiff's case, the Court must determine what, if any, sanction is appropriate.

"A trial court's discretion regarding the form of a spoliation sanction is broad, and can range from minor sanctions, such as the awarding of attorneys' fees, to more serious sanctions, such as dismissal of claims or instructing the jury that it may draw an adverse inference." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012) ("*Apple I*"). "Any remedy applied to a spoliator 'should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been absent the wrongful destruction of evidence by the opposing party.' " *Id.* at 1136 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521, 534 (D. Md. 2010)). In considering what, if any, spoliation sanction to impose, "courts generally consider three factors: '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2015) (*"Apple II"*) (quoting *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008)).

Plaintiff requests terminating sanctions. "A finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper." *Id.* (quoting *Anheuser-Busch*, 69 F.3d at 348). In addition, the court "must consider 'less severe alternatives' than outright dismissal." *Id.* (quoting *Willtec Guam*, 857 F.2d at 604). The availability of less drastic sanctions, the lack of any evidence of bad faith, and the public policy favoring resolution on the merits weigh strongly against terminating sanctions. Further, the negligent loss of documents is not the type of spoliation that generally supports terminating sanctions, and lesser sanctions can remedy the spoliation. Plaintiff's request for terminating sanctions is **DENIED**.

In considering lesser sanctions, the Court must consider what remedy is available to counter the loss or destruction of the January 2015 log book entry, which left Plaintiff without evidence that may or may not have shown his name on the mandatory testing list. Monetary sanctions do nothing to remedy the loss at issue.

An adverse inference is an instruction to the trier of fact that "evidence made unavailable by a party was unfavorable to that party." *Lewis*, 261 F.R.D. at 521 (citing *Nursing Home Pension Fund,* 254 F.R.D. at 563). Under the circumstances, an evidentiary sanction in the form of an adverse inference instruction that permits the trier of fact to conclude the January 21, 2015 logbook entry contained unfavorable information is appropriate for summary judgment and trial. This will leave the credibility determination up to the jury to weigh testimony of Officer Martinez, as the declarant who saw the name on the list, against the fact that Defendants are unable to produce a document showing Plaintiff's name was among the pre-populated persons for testing. This remedy accounts for Defendants' inability to produce a relevant document, without precluding the possibility that a jury may find credible the testimony of Officer Martinez that Plaintiff's name appeared on the pre-populated portion of the list. This remedy directly accounts for the loss of the document, but, especially due to the apparently negligent nature of the loss, permits without requiring the trier of fact to conclude the lost

document contained unfavorable information. Plaintiff's motion for sanctions is therefore **GRANTED IN PART**.

### f. Other Requested Relief

Plaintiff's motion also requests a subpoena issue to the SDRL and that his urinalysis tests with positive result be stricken from his prison records. The Court does not have the authority or jurisdiction to alter Plaintiff's prison records, nor is this an appropriate remedy for alleged spoliation. This request is **DENIED**.

Plaintiff previously requested and was denied issuance of a subpoena to SDRL. The Court therefore construes this request as a motion for reconsideration of its prior Order (ECF No. 116). Plaintiff points to no new facts or circumstances that support the issuance of a subpoena. CivLR 7.1(i). Further, the Declaration of Compliance with the Court's Order on the motion to compel makes clear documents were produced, and "there are no other memorandums, directives and/or protocol procedures between RJ Donovan and San Diego Reference Laboratory." ECF No. 120 at 10-11. Plaintiff's request for a subpoena is **DENIED**.

## V. CONCLUSION

Plaintiff's motion for sanctions related to spoliation of the October 13, 2015 urinalysis logbook entry is **DENIED**.

Plaintiff's motion for sanctions related to spoliation of the January 21, 2015 urinalysis log book entry is **GRANTED IN PART**. Plaintiff is entitled to an adverse inference instruction regarding the content of the log book.

Plaintiff's requests for terminating or other sanctions are **DENIED**.

**IT IS SO ORDERED.**

Dated: November 1, 2018

Hon. Nita L. Stormes
United States Magistrate Judge