UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN SINGLETON,<br>CDCR#: H-86959,<br><br>                      Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>                    Defendants. | Case No.: 3:16-cv-2462-BAS-NLS<br><br>**REPORT AND RECOMMENDATION FOR ORDERS ON CROSS MOTIONS FOR SUMMARY JUDGMENT TO**<br><br>**(1) DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; and**<br><br>**(2) GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 131, 138]** |

Plaintiff Kelvin Singleton ("Plaintiff"), a prisoner proceeding pro se and *in forma pauperis* filed this civil rights action alleging retaliation and due process violations while incarcerated at R.J. Donovan Correctional Facility ("RJD"). ECF No. 32 (operative, First Amended Complaint, hereafter "Complaint"). In sum, Plaintiff alleges that he was subjected to retaliatory urinalysis testing and that the results of his urinalysis tests were tampered with, also in retaliation. He further alleges that he was denied witnesses necessary to show the tampering at subsequent rule violation hearings.

Both parties have filed motions for summary judgment. ECF Nos. 131, 138. Plaintiff filed his motion for summary judgment arguing, in sum, that there are no genuine issues of material fact in dispute because Defendants did not follow the proper protocols related to urinalysis testing and are unable to produce a urinalysis testing log. *See* ECF No. 131. Defendants' arguments in opposition to the Plaintiff's motion and their arguments in support of their own motion for summary judgment are largely the same. *Compare* ECF No. 131 *with* ECF No. 143. Defendants argue as to defendant Lt. Hernandez, that his actions were neither adverse nor in response to a protected activity and so, do not support a retaliation claim; as to defendant Lt. Sanchez, that his actions were not retaliatory because they were supported by legitimate penological purposes and do not violate due process because the Rule Violation hearings at issue included all the proper procedural protections.

For the reasons that follow, the Court **recommends** that the District Judge **deny** Plaintiff's motion for summary judgment and **grant in part and deny in part** Defendants' motion for summary judgment.

## I.     RELEVANT PROCEDURAL BACKGROUND

Following a motion for summary judgment for failure to exhaust administrative remedies and a motion to dismiss for failure to state a claim, this case proceeded on its allegations of retaliation and due process violations against defendant Lt. A. Sanchez, and retaliation against defendant Lt. G. Hernandez. During the discovery period, Plaintiff requested various documents, including urinalysis log books for many of the dates he alleges he was tested.

Defendants were unable to locate the log book for January 21, 2015 and October 13, 2015, but produced the pages for the other requested dates. Plaintiff filed a motion to compel further production of the documents on the basis that Defendants initially represented some documents were lost but subsequently produced the missing documents, and so the log book entries and other missing documents should be compelled. ECF No. 114. Defendants did not oppose the motion, and the Court granted

in part the motion to compel, ordering Defendants to conduct another diligent search based on the inconsistencies Plaintiff identified and produce any responsive documents. ECF No. 116. Defendants did so, and informed the Court that the inconsistency identified by Plaintiff had, in fact, been remedied by supplemental responses, but nonetheless Defendants were unable to locate the log book pages for January 21 and October 13, 2015. ECF No. 120.

Based on the inability to locate the logbook pages for urinalysis dates relevant to the claims alleged in the Complaint, Plaintiff moved for sanctions based on spoliation of evidence. ECF No. 123. Defendants opposed the motion, but also acknowledged the log book pages were not in the storage room when Defendants searched for them. ECF No. 128. Finding this loss negligent and the log book entry for only January 21, 2015 relevant to the allegations of the complaint, its loss was prejudicial to Plaintiff's ability to prove the allegations of his complaint. In the absence of any other documentary evidence regarding the testing for the date in question, this Court concluded an adverse inference instruction related to the content of the January 21, 2015 log book page at trial and for the purposes of summary judgment is a tailored and appropriate remedy for the loss of this document. ECF No. 151. Accordingly, this inference will be applicable to the analysis of Defendants' motion.

## II.    FACTUAL BACKGROUND

The Court and the parties are well versed in the factual background of this case, the relevant portions of which are recited here. However, to the extent necessary, additional facts on discrete issues are addressed only in the discussion section that follows.

### A. Preceding Events: Riot and State Court Lawsuit

The underlying incident that spawned the series of events culminating in the present litigation was a riot at RJD occurring in 2014. Plaintiff was issued a Rules Violation for participation in a riot, but alleges that the Rules Violation Report ("RVR") was inaccurate and that certain officers, including defendant Lt. Hernandez, withheld evidence and testimony during his Rule Violation hearing before Lt. Sanchez that would

have established Plaintiff was not an aggressor in the fight. Plaintiff alleges that Lt. Sanchez improperly denied Plaintiff witnesses who would offer testimony to support Plaintiff's version of events and prevent the issuance of the rule violation. The witnesses did not testify and Plaintiff was found guilty of participation in a riot. Plaintiff appealed the guilty finding, submitted grievances related to the conduct of the hearing, and ultimately a filed a civil action in state court which was dismissed on demurrer.[1] *See* ECF No. 138-6 (Request for Judicial Notice, hereafter, "RJN"), Exs. 6-7.[2]

The present litigation alleges that due to his filing of grievances and a lawsuit regarding the riot, Plaintiff was subjected to retaliatory urinalysis testing and tampering with the samples to produce false positive results, as well as due process violations in the hearings for Rule Violation Reports related to the positive urinalysis findings.

## B. Urinalysis Testing

Lt. Hernandez is the head of the investigative services unit ("ISU"), which among other investigative duties, supervises the drug testing program. Hernandez Decl. at ¶¶ 1, 3. In that capacity, he also acts as the drug testing coordinator ("DTC"). *Id*. The drug testing list is randomized and computer generated in Sacramento. RJN, Exs. 3, 4; Hernandez Decl. at ¶ 4. Lt. Hernandez is responsible for the oversight of the drug testing program but is not involved in the actual collection or transport of samples. Hernandez Decl. at ¶¶ 3-6. Lt. Hernandez designates officers to collect urine samples and the collecting officer will issue any RVR for a positive test result. RJN, Ex. 4; Hernandez Decl. at ¶¶ 4-5. The institution is required to maintain a log of all testing, and it is within Lt. Hernandez's duties as DTC to review the logs for accuracy and completeness. RJN, Ex. 4; ECF No. 138-1 at 11.[3]

---

[1] The events related to the riot were the subject of State court litigation and are not before this Court. The preceding events are included for the purposes of background and context only.

[2] Defendants Request for Judicial Notice is GRANTED.

[3] All page references are to the page numbers generated by the CM/ECF header; with the exception of reference to deposition transcript testimony.

On or about January 21, 2015, approximately two months after serving the state court defendants, including Lt. Hernandez, with the civil action related to the riot in state court,[4] Plaintiff was asked to, and did, provide a urine sample to Officers Martinez and Perling. *See* ECF No. 138-2, Ex. 1 (hereafter "Singleton Depo.") at 25:9-25. Plaintiff both alleges and testifies this testing was retaliatory and ordered by Lt. Hernandez. ECF Nos. 131 at 4, 8; 144 at 5-6; 21. Defendants offer the testimony of Officer Martinez that Plaintiff's name was on the randomized list, but are unable to produce a document showing Plaintiff's name was among those randomly generated in Sacramento. ECF Nos. 138-3 at ¶¶ 10-11; 138-4 at ¶ 3. The laboratory report related to the January 21st sample was positive, and a Rule Violation Report was issued by Officer Martinez. Plaintiff was ultimately found guilty of the violation, and as a result added to the weekly testing list. Singleton Depo. at 30:12-33:21; 51:23-25.

Plaintiff provided additional samples that tested positive on April 7, 2015 (Singleton Depo. at 33:22-36:17), September 28, 2015 (Singleton Depo. at 52:24-54:6), and either April 25 or May 3, 2016 (Singleton Depo. at 56:18-58:21).

**C. Rule Violation Hearings**

Lt. Sanchez acts as the Rule Violation hearing officer for inmates. ECF No. 138-2 ("Sanchez Decl.") at 1, ¶ 2. Lt. Sanchez was the hearing officer for Plaintiff's RVR related to the riot that occurred on February 8, 2014. ECF No. 138-2 at 9. Lt. Sanchez was not named as a Defendant in the state court lawsuit related to the riot. RJN at Exs. 6-

---

[4] The Court calculates the approximate timeline of service by calculation of the 30 days prior to the date the demurrer was filed. The notice of ruling for which Defendants' were granted judicial notice established the date the demurrer was filed as December 17, 2014. ECF No. 138-6 at 44 ("Causal Document/Date Filed: Demurrer, 12/17/ 2014"). Pursuant to California Code of Civil Procedure, § 430.40, "A person against whom a complaint or cross-complaint has been filed may, *within 30 days after service of the complaint* or cross-complaint, demur to the complaint or cross-complaint." (emphasis added).

7.[5]  Plaintiff would later appear twice more before Lt. Sanchez for positive urinalysis test results.[6]

After the hearing related to the riot, Plaintiff's next appearance before Lt. Sanchez occurred approximately 20 months later, at a November 16, 2015 RVR hearing concerning the positive urinalysis test result on the sample Plaintiff provided on September 28, 2015.  ECF No. 138-2 at 25-34.  Plaintiff was permitted to ask questions of Officer Hampton, the officer who collected the sample.  *Id.* at 28.  Lt. Sanchez denied Plaintiff's request to have Dr. Saidro testify as a witness because he was not present during the collection and took no part in the testing so he could not offer relevant information to exonerate Plaintiff.  *Id.*  Plaintiff presented information that his medications may cause a false positive for amphetamines.  *Id.*  Lt. Sanchez explained Plaintiff was charged based on the finding of methamphetamines.  *Id.* at 28-29.  Plaintiff admitted he had no prescriptions for methamphetamines.  *Id.* at 29.  Lt. Sanchez found Plaintiff guilty of the violation.  *Id.*

Following that hearing, Plaintiff next appeared before Lt. Sanchez for an RVR hearing on June 5, 2016 for a positive urinalysis test result related to the sample provided on either April 25 or May 3, 2016.  *Compare* Singleton Depo. at 57:20-58:5 (testifying he provided sample on May 3, 2016) *with* ECF No. 138-3 at 6 (testing log for 4/25/16) *and* ECF No. 138-2 at 36, 50 (RVR reflecting 4/25 as sample collection date; lab report with 4/25 as hand-written date of collection).  The toxicology report reflecting the sample was positive for methamphetamines, morphine, and codeine also states, "Label partially damaged.  Some info is missing or illegible."  ECF No. 138-2 at 49.

At the hearing, Plaintiff called and questioned Officer Enano, but was denied his request to present three other witnesses:  Officer Rivera, Inmate Kelley, and Inmate

---

[5] Defendants in the underlying lawsuit are: Ballejos, Dickerson, Seibel, George, Martinez, Juarez Hernandez and Matthews.  ECF No. 138-6 at 42, 44.

[6] The detailed specifics of which are addressed in greater detail in § 5(D).

Garcia. ECF No. 138-2 at 42. The hearing notes reflect that Lt. Sanchez informed Plaintiff that the witnesses were denied on the grounds that they "would have no relevant or additional information which would exonerate [Plaintiff]." ECF No. 138-2 at 42. Lt. Sanchez also found the "missing information" on the label to be the last two letters of Singleton's name. ECF No. 138-2 at 45; *compare* ECF No. 138-2 at 49 (name appears as "Singlet" and collector ID left blank) *with* ECF No. 138-2 at 32 (Singleton's full name appears and collector ID is "M6192"). Lt. Sanchez also corrected the RVR which originally listed the positive results as methamphetamines, morphine, amphetamines instead of methamphetamines, morphine, and codeine, and provided a revised hearing notice to Plaintiff more than 24 hours before the hearing. *Id.*

Plaintiff was very frustrated with the explanations provided by Lt. Sanchez regarding the toxicology report and RVR. Singleton Depo. 59:17-66:18; ECF No. 138-2 at 49 (lab report). Plaintiff testifies the sample was provided on May 3 rather than April 25 and he was not satisfied with the explanation provided by Lt. Sanchez that the lab must have inadvertently entered the date the lab received the sample as the test date. *Id.* Nor did Plaintiff appreciate the failure of Lt. Sanchez to acknowledge the lack of "collector ID" number on the lab report. *Id.* Plaintiff raised concerns with the time notations at his deposition, specifically that the lab report states, "date reported: 05/04/2016 10:52" but the report also has a hand-stamp "received" of May 4, 2016 with the handwritten notation beneath, "0959 hrs." Singleton Depo. at 65:12-66:11. The time notations do not appear to have been raised at the hearing beyond Plaintiff's general objection to the errors in the RVR. *See* ECF No. 138-2 at 43.

Lt. Sanchez ultimately found Plaintiff guilty of the rule violation. ECF No. 138-2 at 43. After and due to the Plaintiff's frustrations with the June 5 hearing, Plaintiff alleges he requested an internal affairs review of Lt. Sanchez. ECF No. 32 at 17.

///

///

///

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex. Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

Here, there are cross motions for summary judgment.  Plaintiff and Defendants each move for summary judgment and the standards for each are similar, but distinct.  As the party with the burden of proof, Plaintiff must establish each element of the claims at issue to be granted summary judgment. *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) ("the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case").  Once established, the burden shifts to the opposing party to present probative evidence of a claim or defense.  *Id.*

Defendants, who do not bear the burden of proof, must establish an absence of a genuine issue of material fact by (1) presenting evidence that negates an essential element of the non-moving party's case; or (2) demonstrating that the nonmoving party failed to establish an essential element of that party's case.  *Celotex*, 477 U.S. at 322-323.  The moving party must identify the pleadings, depositions, affidavits or other evidence that the party "believes demonstrates the absence of a genuine issue of material fact."  *Id.* at 323.  If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).  If the moving party meets its burden, the non-moving party must "go beyond the pleadings and by his own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 US. 253, 289 (1968)). In making this determination, the court must view the underlying facts in the light most favorable to the party opposing the motion. *Id.*

The court should not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff fails to meet the initial burden of establishing the elements of his claims. Plaintiff's motion relies almost entirely on "missing evidence" and argues that in the absence of documentary evidence showing protocol was followed in the conduct of his urinalysis testing and RVRs, that he is entitled to judgment as a matter of law.[7] ECF No. 131. Plaintiff fails to establish the elements supporting either a retaliation or a due process claim.

As discussed at length in the prior order on Plaintiff's motion for sanctions, there is a single urinalysis log book entry for January 21, 2015 that is relevant to Plaintiff's claim that Defendants were unable to produce. ECF No. 151. A single lost log book entry does not meet the initial burden of establishing each element of a retaliation claim.[8] Moreover, Defendants offer other evidence to establish much of the information that would otherwise have been contained in the lost log book entry, such as testimony, testing

---

[7] Plaintiff's motion for summary judgment largely points to and requests the same relief as sought in his motion for sanctions. *Compare* ECF No. 123 *with* ECF No. 131.

[8] Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005).

results, RVRs, and hearing records. *See* ECF Nos. 138, 143. This evidence is required to be construed in the light most favorable to the Defendants as the non-moving party. Plaintiff has identified no other lost or unproduced information, and was granted an adverse inference instruction to cure the inability of Defendants to produce the log book for January 21, 2015. The missing log book page is relevant to the claim that the testing was ordered in retaliation, but does not establish each element. There are disputed facts surrounding the intent, motive, and source of Plaintiff's urinalysis testing, including whether it was random or targeted retaliation.

Plaintiff also argues there are no facts in dispute regarding Defendant Sanchez's denial of witnesses and documentary evidence to challenge the chain of custody at RVR hearings, and that he has established a due process violation. Again, Plaintiff fails to meet his initial burden of establishing the elements of a due process claim, presenting no evidence that the procedural protections associated with Rule Violation hearings as set forth in *Wolff*[9] were not followed, and failing to establish a liberty interest that was affected. For instance, Plaintiff's primary complaint is that he was subjected to ongoing urinalysis testing as a result of the guilty findings, but Plaintiff fails to show that the testing presented an atypical or significant hardship. *See Chappell v. Reed*, CIV S-02-1706 GEB JFM P, 2002 US Dist LEXIS 28890 (E.D. Cal. Dec. 10, 2002) ("one year of random urinalysis, twice a month… does not constitute 'atypical or significant hardship' within the meaning of *Sandin*"). Plaintiff also argues the guilty findings increased his classification score and ultimately resulted in transfer. However, Plaintiff has no liberty

---

[9] As discussed in greater detail in Section V (D), an inmate subject to disciplinary sanctions that include the loss of good time credits must receive (1) twenty-four-hour advanced written notice of the charges against him, (2) a written statement by the fact finder as to the evidence relied on and the reasons for the action, (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," (4) assistance at the hearing if he is illiterate or if the matter is complex and (5) a sufficiently impartial fact finder. *Wolff v. McDonnell*, 418 U.S. 539, 563-566, 570 (1974).

interest in staying in a particular institution. *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Neither … does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). While it is not disputed that Lt. Sanchez denied Plaintiff witnesses during the hearings, reasons for the denials were provided as required, as discussed in greater detail below.

In sum, Plaintiff fails to meet the initial burden of establishing the elements of his claims. The undersigned **recommends** Plaintiff's motion for summary judgment be **denied**.

## V.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Retaliation Claim against Lt. Hernandez

Summary judgment must be guided by both the allegations of the complaint and the evidence presented. Failure to address the allegations, and bring forth facts to refute the claims or an essential element, cannot result in judgment as a matter of law.

Defendants do not address the allegation that Lt. Hernandez added Plaintiff to the testing list in retaliation shortly after the Plaintiff's initiation of a state civil lawsuit – within approximately two months of being served. *See* § II(B), n.4. While there is an accepted penological purpose for random drug testing, there is no such legitimate purpose for abuse of the testing procedure in retaliation for filing a civil complaint. *See Bruce v. Ylst,* 351 F.3d 1283, 1289 (9th Cir. 2003) ("But, if, in fact, the defendants abused the gang validation procedure as a cover or a ruse to silence and punish [plaintiff] because he filed grievances, they cannot assert that [plaintiff's] validation served a valid penological purpose, even though he may have *arguably* ended up where he belonged."). Defendants argue the testing list was computer generated and that Plaintiff failed to produce evidence of a dispute, without addressing their own failure to produce the only evidence that Plaintiff could use to show a dispute, and never mentioning the timing of the civil complaint in relation to the addition to the testing list. In the absence of (lost)

3:16-cv-2462-BAS-NLS

documentary evidence to show that Plaintiff's name was included in the random testing list generated in Sacramento and not targeted for retaliation, summary judgment on the retaliation claim against Lt. Hernandez is **denied**. To hold otherwise would require the Court to impermissibly "engage in credibility determinations [and] weighing of evidence." *Anderson*, 477 U.S. at 255.

## B. Retaliation Claim against Lt. Sanchez

Lt. Sanchez was the Senior Hearing Officer ("SHO") for three of the RVR hearings identified in Plaintiff's complaint. The first was at the hearing for participation in the riot on February 25, 2014, which was litigated in state court and is referenced only for context. The next hearing for which Lt. Sanchez was the SHO occurred twenty months later on November 16, 2015, for Plaintiff's second positive urinalysis testing result.[10] ECF No. 32 at 8. Lt. Sanchez was also the SHO for the third positive urinalysis test result, at a hearing occurring related to the RVR dated May 15, 2016.

Defendants argue there is no adverse action because of a protected activity, and further that Lt. Sanchez's decisions were supported by valid penological purposes. The Court agrees, and Plaintiff fails to point to any evidence to establish a genuine issue of material fact. In the context of this case, presiding as a hearing officer for a rules violation hearing, and making a determination on the RVR, is not the type of adverse action that can support a retaliation claim; it was simply part of Lt. Sanchez's duties as the hearing officer. With the passage of twenty months between the hearing related to the riot and the next hearing overseen by Lt. Sanchez with respect to the positive urinalysis,

---

[10] Plaintiff's first positive test result was from the January 21, 2015 test and is only relevant to Lt. Hernandez's retaliation claim because the RVR hearing related to that test was not in front of Lt. Sanchez. ECF No. 32 at 6; Singleton Depo at 30:12-24 (identifying Officer Spence as the SHO). Plaintiff's deposition identifies some confusion as to the total number of positive urinalysis tests. *See,* Singleton Depo at 43:23-51:18. The total number is ultimately irrelevant, and the Court refers to this as the "second" violation only in terms of the second violation that will be addressed in the context of this motion.

the timing does not support that a guilty finding was retaliatory.  *See Pratt v. Rowland,* 65 F.3d at 808-09 (permitting timing to be considered in assessing retaliation claims).

In his opposition, Plaintiff expounds upon the failures of Lt. Sanchez in the conduct of the hearing related to the riot.  ECF No. 144 at 12.  But timing precludes this argument, as Plaintiff alleges the riot hearing was the trigger for his later grievances and lawsuit, which then caused retaliatory actions such as being added to the weekly urinalysis testing list.  The hearing that is alleged to have started the chain of events and adverse actions cannot also be the adverse action.

Finally, Plaintiff's opposition and deposition testimony identifies "falsifying documents" as an adverse action attributed to Lt. Sanchez.  ECF No. 138-5 at 68 (deposition testimony); ECF No. 144 at 16 (opposition).  Specifically, Plaintiff argues that Lt. Sanchez "knowingly falsified the u/a lab report and redacted the collector's I.D. number."  ECF No. 144 at 16.

The Court acknowledges, and has previously pointed out, the irregularities in the lab report dated May 4, 2016.  *See,* ECF No. 85 at 29; ECF No. 138-2 at 49.  But Plaintiff does not provide any evidence that Lt. Sanchez was involved in the alleged falsification of the document, or point to a protected activity that may have motivated Lt. Sanchez to make changes in retaliation for protected activity.  Plaintiff acknowledges Lt. Sanchez was not involved in the collection or testing of his urine, testifying only that he "has access to the reports."  ECF No. 138-5 at 69.  To the extent there are disputed facts about the contents of the lab report, none of them are material to the elements of a retaliation claim because Plaintiff points to no protected conduct that happened within an amount of time for which Lt. Sanchez's changes to the lab report could be considered an adverse action.  For example, regardless of whether the sample was collected on April 25 or May 3 of 2016 (which is disputed), there is no evidence to show that Lt. Sanchez's changing the date was an adverse action *because of protected conduct*.  Nor is there any evidence that Lt. Sanchez's finding Officer Enano collected the sample (which Plaintiff does not dispute), but that Officer Enano's ID number was missing from the lab report, was an

adverse action because of protected conduct.  Finally, changes to ensure the RVR report findings matched the toxicology findings of the lab report do not appear connected to protected activity.

Plaintiff's allegations of protected conduct have to do with grievances and the civil lawsuit related to the riot.  By the time of this urinalysis hearing, the hearing related to the riot had occurred more than two years prior—February 25, 2014 to June 5, 2016.  *See* ECF No. 138-2 at 9 (Riot hearing date 02-08-14) and 138-2 at 27 (urinalysis RVR hearing on 11/16/15).  And the civil lawsuit (which did <u>not</u> name Lt. Sanchez as a defendant), had concluded almost a year prior to this hearing.  *See* RJN, ECF No. 138-6 at 48 (Judgment of Dismissal, dated July 16, 2015 and listing defendants).  Plaintiff's own complaint alleges that it was not until after the final hearing before Lt. Sanchez that he requested an internal affairs review, so not even that could have been a motivating factor at the time of the hearing.  ECF No. 32 at 17 ("After the June 5, 2016 RVR hearing with defendant Sanchez, Plaintiff had forwarded a complaint to an attorney…regarding the events of said hearing.  It was asked that the complaint be reviewed and forwarded to internal affairs.").  There is no evidence of protected activity that may have caused Lt. Sanchez to retaliate.

In the absence of any adverse action because of protected activity, summary judgment is appropriate.  The undersigned **recommends** Defendants' motion for summary judgment be **granted** as to the retaliation claim against Lt. Sanchez.

### C. Due Process Claim against Lt. Hernandez

Plaintiff fails to state a cognizable due process claim against Lt. Hernandez.  Lt. Hernandez is in charge of the Investigative Services Unit ("ISU") and the Drug Testing Coordinator at RJD.  Plaintiff alleges that Lt. Hernandez is responsible for ensuring that all protocol is followed during drug testing, and also that one of Lt. Hernandez's staff generated a confidential memorandum that was placed in Plaintiff's c-file accusing Plaintiff of being a gang member who transports drugs via contact visits.  ECF No. 32.  Plaintiff alleges he never received notice of this memorandum as required by regulations,

and that drug testing protocol was broken on multiple occasions in various ways. He alleges that as the head of ISU, Lt. Hernandez is responsible for these violations. He also broadly alleges that "Defendants" took actions to raise his classification score resulting in his transfer to a higher security institution.

As to the memorandum, Plaintiff fails to allege personal participation of Lt. Hernandez in the drafting, and Defendant submits undisputed facts showing Lt. Hernandez was on vacation when the memorandum was drafted. ECF No. 138-3 at ¶ 8. Nor is there any indication or evidence to show that a liberty interest was affected in any way by the addition of the memorandum to Plaintiff's c-file. Plaintiff was not disciplined or segregated. Plaintiff concedes no action was taken as a result of the memorandum in arguing he remained entirely unaware of its existence until mentioned by an Officer at Sacramento. Even if the memorandum is inaccurate, Plaintiff has no liberty interest in the contents of his c-file or in staying at a particular institution. *Meachum v. Fano*, 427 U.S. at 225 (holding there is no liberty interest in avoiding transfer); *Dunaway v. California Dept. of Corrections and Rehab.*, 1:14-CV-1718-BAM, 2015 WL 3992554, at *5 (E.D. Cal. June 30, 2015) ("A prisoner 'has no constitutionally guaranteed immunity from being falsely or wrongly accused.'") (*quoting Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986)); *Johnson v. Felker*, 2:12-CV-02719 GEB, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983."); *Saffold v. Harltey*, 1:08 CV 01370 DLB HC, 2008 WL 4534293, at *1 (E.D. Cal. Oct. 7, 2008) (prisoner failed to state cognizable due process claim based on prison's failure to remove a CDC–128B chrono from his central file indicating he is gang member; even though prisoner generally asserted that he was in fear for his life, prisoner had no protected liberty interest in his central file).

To the extent Plaintiff argues due process violations arising from the failures in adherence to drug testing protocol and maintenance of the chain of custody, there is no federal constitutional liberty interest in compliance with state prison regulations.

*Solomon v. Felker*, 2:08-CV-02544 JFM P, 2013 WL 5375538, at *12 (E.D. Cal. Sept. 24, 2013) ("Plaintiff's allegation that the defendants failed to adhere to the prison's own institutional policies and procedures does not, by itself, give rise to the level of a violation of plaintiff's due process rights."); *Sandin v. Conner,* 515 U.S. 472, 481–82, (1995) (stating that prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); *Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); *see also Armstrong v. Warden of USP Atwater,* No. 1:10–CV–173 DLB HC, 2011 WL 2553266, at *8 (E.D. Cal. June 24, 2011) (citing same).

There is no evidence that a liberty interest is implicated, there are no allegations that Lt. Hernandez personally participated in the drug testing protocol or procedure (beyond the allegation already accounted for in the retaliation claim) and *respondeat superior* liability is not available for a 1983 claim. There are no genuine disputed facts regarding this claim. The undersigned **recommends** the motion for summary judgment as to the due process claim against Lt. Hernandez be **granted**.

### D. Due Process Claim against Lt. Sanchez

Plaintiff's due process claims against Lt. Sanchez focus entirely on the conduct of his rule violation hearings, and specifically the denial of witnesses as part of a pattern and practice to arbitrarily exclude testimony. ECF No. 32 at 5-6, 9-10. Defendants argue Plaintiff has no liberty interest affected by the outcome of his RVR hearings, and also Plaintiff received all appropriate due process in the conduct of the hearings. ECF No. 138-1 at 26-32. Plaintiff argues that Lt. Sanchez's "pattern of denying witness testimony

in Plaintiff's RVR's and forging documents was retaliatory[11] and done for the purpose of transferring Plaintiff adversely and to cause problems at his parole board hearing." ECF No 144 at 18-19.[12] *Id.*

It is well established that an inmate subject to disciplinary sanctions that include the loss of good time credits[13] must receive the following due process: (1) twenty-four-hour advanced written notice of the charges against him, *Wolff*, 418 U.S. at 563-64; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the action, *id.* at 564-65; (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," *id.* at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, *id.* at 570; and (5) a sufficiently impartial fact finder, *id.* at 570-71. A finding of guilt must also be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Although prison officials have discretion to refuse to call witnesses requested by a prisoner at a disciplinary hearing, they must explain their reasons why the witnesses were not allowed to testify, either at the disciplinary hearing or later in court. *See Wolff*, 418 U.S. at 566; *Ponte v. Real*, 471 U.S. 491, 497 (1985); *see also Bostic*, 884 F.2d at 1273

---

[11]  Plaintiff's use of the word retaliatory in addressing the due process claims does not alter the prior analysis that he points to no protected activity that caused an adverse action.

[12]  Plaintiff also argues that the reports being supported by "some evidence" is insufficient when the reports are alleged to be retaliatory, citing to *Hines v. Gomez*. Plaintiff is incorrect. *Hines* held that the some evidence standard is not applicable to "a prison guard's initial accusation of a rule violation where the guard's accusation itself allegedly is false and retaliatory" but held that the deferential "some evidence" standard remains applicable to the "findings of the disciplinary board." *Hines v. Gomez*, 108 F.3d 265, 268, 270 (9th Cir. 1997). Put another way, had Plaintiff's complaint alleged Officer Enano filed a false report, Officer Enano would have to come forward with more than some evidence. (Neither Officer Enano nor Officer Rivera were ever identified as defendants.) However Officer Sanchez is a member of the disciplinary board equivalent to Officer Smaciarz in *Hines,* to whom the Ninth Circuit expressly found the "some evidence" standard was properly used. *Id.* at 270. To the extent necessary, the Court will apply the "some evidence" standard.

[13]  The Court declines to address Defendants' argument that Plaintiff's indeterminate sentence significantly affects the well-established procedure for conducting an RVR hearing.

("Prison officials may not arbitrarily deny an inmate's request to present witnesses or documentary evidence." (citation omitted)).

The reports of the hearings reflect more than 24 hours' notice of the charges, a written statement by the fact finder as to the evidence relied on and the reasons for the action, an opportunity to call witnesses and present documentary evidence, and a sufficiently impartial fact finder for the hearings conducted by Lt. Sanchez. ECF No. 138-2, Exs. 2-3. Lt. Sanchez found Plaintiff spoke English, "was able to understand and effectively articulate both the nature of the charge(s) and the disciplinary process" and that neither a staff assistant nor an investigative employee was required under the applicable regulations. ECF No. 138-2 at 27; *see also, id* at 39-40.

Plaintiff's argues he was improperly denied witnesses at each hearing but fails to point to material facts that establish a due process violation by Lt. Sanchez. To establish a genuine issue of material fact, Plaintiff must point to facts that, in the light most favorable to him, show that no reason was given or that the reasons were arbitrary. Plaintiff points to no material dispute that presents a genuine issue for trial for a due process violation based on denial of witnesses at his disciplinary proceedings as arbitrary.

1. November 16, 2015 Hearing  (RVR dated 10/13/15; Sample date 9/28/15)

This hearing addressed a urinalysis report that was positive for the presence of amphetamines, methamphetamines, and codeine. ECF No. 138-2 at 32. Plaintiff requested and was granted Officer Hampton as a witness. *Id.* at 28. Officer Hampton collected the sample and issued the RVR. *Id.* Plaintiff also requested and was denied Dr. Saidro as a witness. The record reflects that Lt. Sanchez provided a reason to Plaintiff at the time he denied Dr. Saidro as a witness, specifically, "Dr. Saidro was not present during the urine sample collection and has not [sic] part in the testing of the sample" and so his testimony was deemed irrelevant. *Id.* Plaintiff was permitted to present additional information regarding the possibility of a false positive for amphetamines due to a medication he was prescribed. When asked, Plaintiff admitted he was not prescribed

methamphetamines. *Id.* at 29. The RVR continues to find Plaintiff guilty for the presence of methamphetamines only, with no further mention of amphetamines. *Id.* ("Inmate SINGLETON is found **GUILTY** of violating CCR 3016(a) for the specific act of Positive Urinalysis for Methamphetamines, a Division 'D' offense.") (emphasis and capitalization in original).

Lt. Sanchez provided at the time of the hearing and included in the record of the hearing his reason for denying Dr. Saidro as a witness: he was not part of the collection or testing process. This assessment did not change once Plaintiff presented information on the possibility of a false positive accounting for the presence of amphetamines because Plaintiff admitted that he was not prescribed methamphetamines. Even if admitted, Dr. Saidro's testimony on the possibility of a false positive for amphetamines remains irrelevant to the positive finding of methamphetamines. Lt. Sanchez complied with due process by providing an explanation for the denial of witnesses at the hearing, and the reason for the denial was not arbitrary.

2. June 5, 2016 Hearing  (RVR dated 5/10/16; Sample date 4/25/16 or 5/3/16)

The toxicology report associated with this RVR and hearing has been discussed previously due to the notation that states, "Label partially damaged. Some info is missing or illegible." ECF No. 138-2 at 49. Specifically, Lt. Sanchez found the "missing information" on the label to be the last two letters of Singleton's name and not the blank space normally filled with a number corresponding to the collector ID. ECF No. 138-2 at 45.

At the hearing, Plaintiff called and questioned Officer Enano, who collected the sample. ECF No. 138-2 at 42 ("Singleton requested Officer A. Enano, Officer Rivera, Inmate Kelley [], Inmate Garcia…"). There is evidence in the record to support that Officer Enano collected a sample from Plaintiff on April 25, 2016. *See* ECF No. 138-3 at 6 (mandatory testing list produced by Defendants for April 25, 2016). Likewise, at the hearing Plaintiff at least tacitly confirmed that Officer Enano collected the sample, as he

was among the witnesses requested and the questioning indicates Plaintiff gave his sample to Officer Enano. *See* ECF No. 138-2 at 42 (Plaintiff's question: "Is there any reason the label was damaged … on the u/a I gave you"). Plaintiff was allowed this witness as requested.

Plaintiff was denied his three other requested witnesses: Officer Rivera, Inmate Kelley, and Inmate Garcia. According to the allegations of his complaint, Officer Rivera was the officer assisting Officer Enano in the urinalysis testing. ECF No. 32 at 9 ("Plaintiff requested two prisoner witnesses and the officer who was helping the regular officer perform u/as."). Lt. Sanchez denied each of the three other witnesses after reviewing the questions submitted by Plaintiff on the grounds that the witnesses "would have not relevant or additional information which would exonerate [Plaintiff]." ECF No. 138-2 at 42. Plaintiff was provided with a reason for the denial of his witnesses.

The Court finds the denial of Officer Rivera's testimony was not arbitrary. Plaintiff admits Officer Rivera was "helping" (ECF No. 32 at 9) making it was reasonable for Lt. Sanchez to assume the assisting officer's testimony would be duplicative of Officer Enano's. Likewise, under the circumstances testimony from other inmates was irrelevant to the positive finding of the urinalysis result. Plaintiff does not present argument in his opposition as to what the inmates would have testified to, but argued in his original complaint that they would testify that the u/a samples were handled by both officers in violation of the u/a protocol. ECF No. 1, 9:17-18. Plaintiff has many times throughout this litigation grieved the failure to adhere to protocol, but a protocol violation in the collection process does not equate to a due process violation at the hearing.[14] Inmate (or officer) testimony that protocol was not followed in the collection

---

[14] Notably, Lt. Sanchez made a finding that Officer Enano was "within policy" in the "collection of the u/a specimen." ECF No. 138-2 at 45. Even if there was a protocol violation, as previously discussed, failure to comply with urinalysis protocol is not a deprivation of constitutional due process. *See* §V.C; *Solomon v. Felker*, 2013 WL 5375538, at *12 (failure to adhere to "institutional policies and procedures does not, by itself, give rise to the level of a violation of plaintiff's due process rights."); *Sandin*

does not change the positive result of the urinalysis sample that was provided by Plaintiff. To the extent there is dispute, it is regarding the possible integrity or tampering with the sample. However, it is well established that there is no constitutional right to error-free decision making, and no due process violation is created by the error. *Solomon v. Meyer*, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing *Chavira v. Rankin*, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.")). Plaintiff was indisputably provided reasons for the denial of witnesses, the denial was not arbitrary under the circumstances, and the conviction was supported by some evidence.

The undisputed facts show that Plaintiff received appropriate process in his RVR hearings and was provided all the requisite protections. The undersigned **recommends** summary judgment be **granted** as to the due process claim alleged against Lt. Sanchez.

## VI. RECOMMENDATION

Consistent with the analysis set forth above, the undersigned **recommends**:

1. Plaintiff's motion for summary judgment be **denied;**

2. Defendants' motion for summary judgment be granted in part and denied in part:

    a. Partial summary judgment on the retaliation claim against Lt. Hernandez be **denied**;

    b. Partial summary judgment on the retaliation claim against Lt. Sanchez be **granted**;

    c. Partial summary judgment on the due process claim against Lt. Hernandez be **granted**; and

---

*v. Conner,* 515 U.S. at 481–82 (stating that prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates").

d. Partial summary judgment on the due process claim against Lt. Sanchez be **granted**.

## VII. CONCLUSION

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**It is ordered** that no later than <u>**January 25, 2019**</u>, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**It is further ordered** that any reply to the objections must be filed and served on all parties no later than <u>**February 8, 2019.**</u>

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 8, 2019

Hon. Nita L. Stormes
United States Magistrate Judge