# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

KELVIN X. SINGLETON,

                    Plaintiff,

        v.

G. HERNANDEZ, A. SANCHEZ[1],

                    Defendants.

Case No. 16-cv-02462-BAS-NLS

**ORDER:**

**(1) OVERRULING PLAINTIFF'S OBJECTION**

   **[ECF No 155];**

**(2) APPROVING AND ADOPTING REPORT AND RECOMMENDATION**

   **[ECF No. 154];**

**(3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

   **[ECF No. 131];**

   **AND**

**(4) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

   **[ECF No. 138]**

---

[1] The Court updates the caption to reflect the Defendants who remain in this case. The parties shall refrain from using a case caption which reflects former Defendants who have been dismissed. As a result of this order, the case caption shall reflect only Defendant G. Hernandez.

– 1 –

# OVERVIEW

Plaintiff Kelvin Singleton is a California state prisoner who, proceeding *pro se* and *in forma pauperis*, filed this Section 1983 action to challenge the alleged violation of his federal constitutional rights based on the alleged conduct of certain prison officials during his incarceration at the R.J. Donovan Correctional Facility ("RJD").

Singleton alleges that he "was free from RVRs"—Rules Violation Reports ("RVR")—during his time at RJD until after he sought to expose alleged misconduct by certain prison officers who responded to a January 2, 2014 prison riot. Singleton was in the "general area" where the riot broke out, but contends he did not participate. Former defendant Martinez, however, issued Singleton an RVR shortly after the riot charging Singleton with participation, which Singleton avers was "falsified." Defendant Sanchez, the hearing officer for the riot RVR hearing in which Singleton was found guilty of participation and lost good-time credits, allegedly denied Singleton witnesses that would have "exonerated" Singleton. These witnesses were officers who Singleton contends withheld exculpatory information that would prove his innocence. Singleton pursued grievances related to the alleged prison officer misconduct in handling the riot and alleged due process violations in the investigation and hearing. In August 2014, Singleton filed a related state court lawsuit against various prison officials, including Defendant Hernandez. Sanchez was not a named defendant.

Singleton alleges that between January 2015 and June 2016, prison officials retaliated against him because of his grievances and state court lawsuit. The alleged retaliation consisted of urinalysis drug tests outside of his regular testing through the Substance Abuse Program ("SAP"). The samples for these additional tests were allegedly tampered with and their positive results were the basis for additional RVRs

issued against him. Singleton claims that at the urinalysis RVR hearings for these tests, he was denied supporting witnesses for his defense. Because Singleton was found guilty at these RVR hearings, he lost good-time credits and was subjected to mandatory urinalysis testing, which increased in frequency with each RVR guilt finding. Singleton further contends that prison officials retaliated against him by placing a confidential memorandum into his prison file, which allegedly falsely accused him of being a gang member who transported drugs into the prison through visits with his brother. Finally, Singleton contends that the multiple RVR guilt findings based on the urinalysis tests caused him to be transferred from RJD to the maximum security "violent" prison where he currently resides, all of which was also part of the alleged retaliation.

Before the Court are cross-motions for summary judgment concerning the only claims which remain in this suit—First Amendment retaliation claims and Fourteenth Amendment denial of due process claims against Defendants Hernandez and Sanchez. (ECF No. 131, 138.) Magistrate Judge Nita Stormes issued a Report and Recommendation ("R&R") on the cross-motions. (ECF No. 154.) The R&R recommends that the Court deny Singleton's motion. (*Id*. at 9–11, 21.) More importantly for the purposes of the present order, the R&R recommends that the Court grant in part and deny in part Defendants' motion. The R&R concludes summary judgment (1) is appropriate on Singleton's retaliation claim against Sanchez and on the due process claims against both Defendants and (2) is inappropriate on Singleton's retaliation claim against Hernandez. (*Id*. at 11–22.) Objections to the R&R were due by January 25, 2019. (*Id*. at 22.) Defendants have not filed any objection. Singleton, however, has filed a timely Objection, which objects to all partial summary judgment recommendations. (ECF No. 155.) Replies to any objections were due by February 8, 2019. (ECF No. 154 at 22.) Defendants have not replied to Singleton's Objection.

For the reasons herein, the Court (1) overrules Singleton's Objections, (2) approves and adopts the R&R in its entirety, (3) denies in full Singleton's motion for summary judgment, (4) grants in part and denies in part Defendants' motion for summary judgment, and (5) dismisses with prejudice the remaining claims against Sanchez and the due process claim against Hernandez.

## BACKGROUND[2]

Singleton has been incarcerated since 2001. (ECF No. 32, First Amended Compl. (*hereinafter* "FAC") at 2; ECF No. 138-6 (Request for Judicial Notice ("RFJN") Ex. 1 (abstract of judgment for Singleton's underlying conviction).) In October 2012, Singleton transferred to RJD. (FAC at 2.) During the relevant time period at RJD, Singleton was subject to randomized drug testing as part of the Substance Abuse Program ("SAP") independently of the urinalysis testing he challenges in this lawsuit. (ECF No. 144, Kelvin X. Singleton Decl. (*hereinafter* "Singleton Decl.") ¶ 1.)[3]

---

[2] Although the R&R sets forth a factual background (ECF No. 154 at 3–7), the Court independently sets forth the relevant background, which draws in part on portions of the R&R and provides additional facts that provide relevant context for the Court's analysis. The Court primarily draws on the parties' summary judgment submissions. (ECF Nos. 131, 138, 143, 144.) Magistrate Judge Stormes granted Defendants' request for judicial notice of various items, to which no party has objected. (ECF No. 154 at 4 n.2.) Thus, these materials are also part of the Court's background and considered in this order. In addition, the Court draws on: (1) the record from the previous summary judgment submissions on exhaustion of administrative remedies, which contains information regarding Singleton's appeals of the guilt findings at relevant RVR hearings, and (2) several exhibits attached to the original complaint, which the Defendants have previously treated as incorporated into the FAC and to which Singleton alludes in his Objection to the R&R. (*See* ECF No. 1-2 (exhibits to original complaint); ECF No. 51-4 Self Decl. (appeals information).)

[3] Singleton submitted a declaration in opposition to Defendants' motion for summary judgment. (ECF No. 144 at 21–28.) The Court notes that the declaration is not filed as a separate document on the docket, but rather as part of a single continuous document. The Court's references to paragraphs in Singleton's declaration concern only the range of the document which comprises his declaration.

– 4 –

During the relevant period, Defendant Hernandez served as the head of the Investigative Services Unit ("ISU") at RJD, which required him to supervise RJD's drug testing program as the Drug Testing Coordinator ("DTC"). (ECF No. 138-4 G. Hernandez Decl. (*hereinafter* "Hernandez Decl.") ¶¶ 1, 3–4.) Although Hernandez was responsible for oversight of the drug testing program, he was not involved in the actual collection or transport of urine samples. (*Id.* ¶¶ 3–6.) Hernandez designated officers to collect samples and the collecting officer issued an RVR for any positive test result. (*Id.* at ¶¶ 4–5.) As DTC, Hernandez had to review all RJD's drug testing logs for accuracy and completeness. (*Id.* ¶ 3.)

Defendant Sanchez acted as a Rule Violation hearing officer for inmates in disciplinary proceedings at RJD, including during the relevant period. (ECF No. 138-2, A. Sanchez Decl. (*hereinafter* "Sanchez Decl.") ¶ 2.) In the five years preceding September 2018, Sanchez had served as the hearing officer in 600 to 700 inmate disciplinary hearings. (*Id.*)

***The Prison Riot and Riot RVR Hearing.*** The underlying incident that spawned the events culminating in the present litigation was a January 2, 2014 riot at RJD between Mexican and Black prisoners. (FAC at 2–3.) Singleton was in "the general area" where the riot broke out, but avers that he was not an aggressor. (*Id.*) Singleton was identified as a participant in the riot and placed into administrative segregation pending a hearing. (*Id.*; Sanchez Decl. Ex. 1 at 7.) Former defendant Officer Martinez, an officer who was on the yard at the time of the riot, issued Singleton an RVR, charging Singleton with "participation in a riot." (Singleton Decl. ¶ 5; Sanchez Decl. ¶ 7, Ex. 1 at 7 (RVR Log # FA-01-14-035).)

On January 9, 2014, after the issuance of the RVR, Singleton filed a California Department of Corrections and Rehabilitation ("CDCR") Form 22 "[a]ddressing the

negligence of staff and how [officer] N. Matthews told defendant Hernandez he witnessed the Mexicans attack the Blacks." (Singleton Decl. ¶ 4, Ex. 2.) An RJD officer compiled an investigative report on January 24, 2014, and took down Singleton's statement regarding the riot. (Sanchez Decl. Ex. 1 at 13–14.) The officer also recorded responses by officers who Singleton identified as "staff witnesses" he wanted to call at the RVR hearing, including former defendant Officers Matthews, Hernandez, and Hurm, but they generally refused to provide substantive comments. (*Id*.) Officer Martinez responded to several of Singleton's written questions. (*Id*.)

At some point, Singleton completed another Form 22 as a "disposition statement (prior to hearing)," which Officer Juarez, another RJD officer, received on January 26, 2014. (Singleton Decl. Ex. 12.) Singleton stated that he was not "guilty" of participation in the riot and "I am unable to adequately prepare my defense due to the yard officers on duty failing to provide reports[.]" (*Id*.) After Juarez responded on January 30, 2014, that the form was not the proper procedure to complain about the outcome of an RVR, Singleton responded on February 12, 2014, after his RVR hearing. (*Id*.) Singleton asserted that he was providing a copy of "what I gave the SHO" "because I know/knew that 'inappropriate' results to come" and "I had to notify the appropriate staff the above is my statement on the RVR should SHO Sanchez decide to [sic] something otherwise." (*Id*.) Singleton was informed that he should follow the appeals process for any RVR concerns. (*Id*.)

On February 8, 2014[4], Sanchez presided over a "two-minute" RVR hearing concerning Singleton's alleged participation in the riot. (Singleton Decl. ¶ 6;

---

[4] The R&R refers to the riot RVR hearing date as occurring both on "February 8, 2014," (ECF No. 154 at 5), and "February 25, 2014," (*id*. at 12). The Court clarifies that the underlying hearing occurred on February 8, 2014 and corrects the R&R to that effect. (*See* ECF No. 1-2 Ex. A at 9–10 (appeal decision of Log # FA-01-14-035); Sanchez Decl. Ex. 2 at 9 ("SINGLETON . . . appeared before the Senior Hearing Officer Lt. A. Sanchez, on 02-08-14, . . . for adjudication of the specific charge of: 'Participation in a Riot.'").)

Sanchez Decl. ¶ 7.)  Singleton apparently gave Sanchez "a written copy of [his] pleading at the RVR hearing," which Singleton identifies as the Form 22 he sent to Juarez before the hearing.  (Singleton Decl. ¶ 19.)  Sanchez denied Singleton's request to call Hernandez, Matthews, and Hurm as witnesses because "they did not have any more pertinent information" on the riot.  (Singleton Dec. ¶ 8; Sanchez Decl. Ex. 1 at 9.)  Sanchez permitted Singleton to call Martinez.  Although Singleton avers that Sanchez "refused to question Martinez at the RVR hearing," the RVR record shows that Sanchez dismissed Martinez because Singleton had no questions for him. (Sanchez Decl. ¶ 7, Ex. 1 at 9; Singleton Dec. ¶ 18.)  Sanchez found Singleton guilty and assessed Singleton 90-days loss of behavior credits.  (Sanchez Decl. ¶ 7, Ex. 1 at 10.)  At the end of the hearing, Singleton told Sanchez, "Fuck that, I'll see you on the yard."  (Sanchez Decl. Ex. 1 at 11; Singleton Dep. at. 19:16–18.)

Singleton appealed his guilt finding for participation in the riot on February 25, 2015, and requested "no reprisals" for his appeal.  (ECF No. 1-2 Ex A at 11–12 (February 25, 2014 appeal form).)  The appeal was denied through all levels of review by June 30, 2014.  (Singleton Dep. 22:13–14, 23:7–13; ECF No. 1-2 Ex. A at 9–10 (June 30, 2014 appeal denial).)

***Singleton's State Court Lawsuit***.  On August 8, 2014, Singleton filed a lawsuit in California Superior Court challenging the alleged negligence of prison officers in handling the January 2014 riot, expressly alleging claims of negligence and intentional torts (civil rights/falsifying documents).[5]  (ECF No. 138-5 Ex. 1 Deposition of Kelvin Singleton (*hereinafter* "Singleton Dep.") at 24:10–14; RFJN Ex. 2 (Singleton's objection to demurrer referring to procedural history); RFJN Ex.

---

[5] The underlying lawsuit was *Singleton v. Ballejos*, No. 37-2014-00026600-CL-CR-CTL. (RFJN 6.)  The named defendants were: Ballejos, Dickerson, Seibel, George, Martinez, Juarez, Hernandez, and Matthews.  (*Id.*)

6 at 44.) Singleton named Hernandez as a defendant, but he did not name Sanchez. The state court lawsuit defendants filed a demurrer to Singleton's complaint, to which Singleton objected on January 30, 2015 and request leave to file a supplemental complaint. (RFJN Ex. 2.) Singleton's proposed supplemental complaint sought to add a retaliation claim against Hernandez and Martinez for "conspir[ing] to subject him to additional random urinalyses" for which "he was issued a violation for having codeine[.]" (*Id.* at 68.) The proposed supplemental complaint did not name Sanchez or allege retaliation on his part. (*Id.*) On July 15, 2015, the trial court dismissed Singleton's original complaint and denied Singleton leave to amend. (Singleton Dep. 24:15–16, 24:19–20; RFJN Ex. 6 (copy of June 19, 2015 tentative ruling dismissing case and July 10, 2015 trial court dismissal); Ex. 7 (July 16, 2015 judgment of dismissal).) On March 25, 2016, the ruling was upheld unanimously on appeal on the ground that the defendants were immune from suit pursuant to California state law and Singleton otherwise failed to establish he had a viable claim or had exhausted remedies. (RFJN Ex. 8 at 51–52.)

**The Confidential Memorandum**. On August 3, 2014, Officer D. Velava, an ISU officer and one of Hernandez's subordinates, drafted a confidential memorandum and placed it in Singleton's central file ("c-file"). (Singleton Dep. at 67:1–7.) The memorandum apparently stated that Singleton was a gang member who was transporting drugs into RJD through contact visits with his brother. (FAC at 20.) Singleton contends that because Hernandez's post orders require confidential information to go through him, Hernandez must have been involved in drafting the memorandum. (Singleton Dep. at 67:8–18.) Hernandez, however, was on vacation from July 21, 2014 through August 11, 2014 and he was not involved in the memorandum. (Hernandez Decl. ¶ 8.)

**First Challenged U/A and RVR Hearing.** Around January 21, 2015, Officers

Martinez and Perling asked Singleton to provide a urine sample for urinalysis, which Singleton did. (ECF No. 138-4, C. Martinez Decl. (*hereinafter* "Martinez Decl.") ¶¶ 2–3; Singleton Dep. at 29:2–30:11.) The lab report for this sample was positive for codeine, for which Officer Martinez issued Singleton an RVR for "3016(a) controlled sub" "specific acts: positive U/A results (codeine)." (Martinez Decl. ¶ 6; ECF No. 138-5 Christopher H. Findley Decl. (*hereinafter* "Findley Decl.") Ex. 3 at 95 (Log No. FA-01-15-051).) The RVR hearing officer found Singleton guilty of a rule violation. (Singleton Dep. at 30:12–31:2.) This guilt finding was overturned on appeal. (Singleton Dep. at 31:2–5.) Yet, after a re-hearing, the senior hearing officer found Singleton guilty again. (Singleton Dep. at 32: 9–23; 51:23–25.) Singleton appealed the second guilt finding. (ECF No. 51-4, B. Self Decl. (hereinafter "Self Decl.") Ex. C at 33.) His appeal expressly asserted "challenge of U/A for chain-of-custody breach" and also raised the issue that his medication may have caused a "false positive." (*Id.*) This appeal was denied. (*Id.* at 31–32.) Sanchez was not the hearing officer in either the original hearing or the re-hearing. (Singleton Dep. at 30:22–24, 32:12–14; Findley Decl. Ex. 3.) Singleton received one-year mandatory drug testing and had to provide a minimum of two random drug tests per month. (Findley Decl. Ex. 3 at 102.)

***Unchallenged Positive U/A and RVR.*** Singleton tested positive on April 7, 2015 for morphine. (Singleton Dep. at 34:2–15; 35:24–6; Findley Decl. Ex. 4 at 104.) Singleton was issued an RVR for "3016(a) controlled sub" "specific acts: positive U/A results (morphine)" and found guilty by a senior hearing officer at the ensuing May 22, 2015 RVR hearing. (Findley Decl. Ex. 4 at 106; Singleton Dep. at 36:15–19.) Officer Arguilez presided. (Findley Decl. Ex. 4 at 106; Singleton Dep. at 36:7–14.) As a result of a third offense, Singleton was required to undergo one-year mandatory drug testing and provide a minimum of four random drug tests per month. (Singleton Dep. at 43:12-22, 51:23–52:2; Findley Decl. Ex. 4 at 112.)

***Second Challenged U/A and RVR Hearing.*** Singleton provided a urine sample on September 28, 2015 to Officer Hampton. (Singleton Dep. at 53:2–10; Findley Decl. Ex. 5 at 114.) The lab report for Singleton's sample showed positive results for amphetamine, codeine, and methamphetamine. (Findley Decl. Ex. 5 at 117.) Thereafter, Officer Hampton issued Singleton an RVR for violation of Section 3016(a) for use of a controlled substance based on the positive result for "methamphetamine." (Findley Decl. Ex. 5 at 114 (Log No. FA-10-15-016).)

After not presiding over any hearings for Singleton since February 2014, Sanchez presided over the November 16, 2015 RVR hearing. (Sanchez Dec. ¶ 8; Sanchez Decl. Ex. 2[6] at 27.) Sanchez permitted Singleton to examine Officer Hampton, who Singleton had requested. (*Id*.) But Sanchez denied Singleton's request to call Dr. Saidro, Singleton's physician at RJD, as a witness on the ground that Dr. Saidro could not offer relevant information because he was not present during collection of the sample. (*Id*.[7]; Singleton Decl. ¶ 8.) At the hearing, Singleton attempted to exculpate himself by claiming that his prescribed medication could cause a false positive for "amphetamines." (Sanchez Decl. Ex. 2 at 28.) Sanchez explained that the charge against Singleton concerned methamphetamines and Singleton's medical profile did not show Singleton was prescribed methamphetamines. (Sanchez Decl. ¶ 9, Ex. 2 at 28–29.) Singleton admitted he had

---

[6] Exhibit 2 of Sanchez's declaration is duplicative of Exhibit 5 to Findley's declaration. (*Compare* Sanchez Decl. Ex 2 *with* Findley Decl. Ex. 5.) Exhibit 3 of Sanchez's declaration is also duplicative of Exhibit 6 to Findley's declaration. (*Compare* Sanchez Decl. Ex 3 *with* Findley Decl. Ex. 6.) The Court will generally refer to Sanchez's declaration.

[7] Sanchez expressly invoked Section 3315(e)(1)(B) of the applicable prison regulations. (Sanchez Decl. Ex. 2.) The provision governs witnesses on whom an inmate may rely at a hearing and indicates that "[r]equested witnesses shall be called unless the official conducting the hearing denies the request for one of the following reasons: . . . (B) [t]he official determines that the witness has no relevant or additional information." 15 Cal. Code Regs. § 3315(e)(1)(B).

no such prescription. (Sanchez Decl. Ex. 2 at 29.) Sanchez found Singleton guilty of the charge. (Sanchez Decl. ¶ 9; Sanchez Decl. Ex. 2 at 27.) He imposed various penalties, including loss of credit. (Sanchez Decl. Ex. 2 at 29.) Singleton appealed the guilt determination. (ECF No. 51-4, Self Decl. Ex. C at 2.) In his appeal, Singleton requested "no reprisals for the filing of this appeal." (*Id.*)

***Third Challenged U/A and RVR Hearing.*** In 2016, Singleton provided another urine sample which served as the basis for the third urinalysis and RVR he challenges. Officer Enano collected the sample with the assistance of Officer Rivera. (Sanchez Decl. Ex. 3 at 36.) There is some dispute about when Singleton provided the sample. Although the collecting officer reported the collection date as April 25, 2016 in the RVR and the RJD testing log shows Singleton was subject to testing on that day, Singleton has testified that he provided the sample to Enano on May 3, 2016. (*Contrast* Singleton Dep. at 57:20–58:5 (Singleton testifies that he provided a sample on May 3, 2016) *with* Hernandez Decl. Ex. 1 at 6 (testing log for "04/25/2016") *and* Sanchez Decl. Ex. 3 at 36, 49 (RVR reflecting "4-25-16" as sample collection date; lab report with "4/25/16" hand-written as the date of collection).) Regardless of when the sample was taken, the lab report showed the sample was positive for methamphetamines, morphine and codeine. (Sanchez Decl. Ex. 3 at 49.) The report also noted without further explanation: "[l]abel partially damaged. Some info is missing or illegible." (*Id.*)

Officer Enano issued Singleton an RVR on May 4, 2016 for use of a controlled substance based on a positive test result. (Sanchez Decl. Ex. 3 at 36–37 (RVR Log No. 25348).) The RVR stated that Singleton had tested positive for "Methamphetamine/Morphine/Amphetamine." (*Id*. at 36.) Despite taking issue with the collection date of his urine sample, Singleton testified that this RVR concerned the sample he provided to Enano. (Singleton Dep. at 58:13–15.)

On June 5, 2016, Singleton appeared before Sanchez for the RVR hearing. (Sanchez Decl. ¶ 9 Ex. 3.) During the hearing, Sanchez crossed out "amphetamine" on the RVR and replaced it with "codeine," an alteration he noted in writing when he provided Singleton with a revised RVR before the hearing. (Sanchez Decl. ¶ 9 Ex. 3; Singleton Dep. at 62:23–25.) Sanchez found that Officer Enano had collected the sample. (Sanchez Decl. Ex. 3 at 45.) He permitted Singleton to call Officer Enano, but denied Singleton's requests to call Officer Rivera, Inmate Kelley, and Inmate Garcia. (*Id.* at 42.) Invoking Section 3315(e)(1)(B), Sanchez denied Singleton's requests for these individuals because they "would have no relevant or additional information which would exonerate [Plaintiff]." (*Id.*) In the RVR hearing record, Sanchez noted that the name and CDCR# on the report "correlates with the [sic] [Singleton's] information on the label verified by [Singleton] during the day the specimen was collected." (*Id.* at 45.) When Singleton inquired about the label's "missing information," Sanchez determined that the "missing information" was the last two letters of Singleton's name. (*Id.*; *also compare id.* at 49 (name appears as "Singlet" and collector ID left blank) *with id.* at 32 (Singleton's full name appears and collector ID is "M6192").

During the hearing, Singleton took issue with Sanchez's explanations regarding the lab report and RVR. (Singleton Dep. 59:17–66:18; Sanchez Decl. Ex. 3 at 49 (lab report).) First, Singleton did not agree with Sanchez's explanation that the "missing information" referred to the fact that Singleton's name did not fit on the label. (Singleton Dep. at 62:25–63:7.) Whereas no other lab report stated there was missing information despite the length of his name, this was only one that did. (*Id.* at 63:9–15.) Second, Singleton contested that Sanchez did not view as meaningful the absence of a "collector ID" number on the lab report because all his other reports had collector IDs. (Singleton Dep. at 64:4–14.) Third, Singleton contested

Sanchez's explanation regarding the collection date, claiming that the April 25, 2016 date written into the lab report was "forged." (*Id.* at 64:15–65:10.) Embroiled with frustration, Singleton said "Fuck this, I am out of here." (Singleton Dep. 60:13–19.) Sanchez told Singleton "to sit his black ass down." Sanchez found Singleton guilty. (Sanchez Decl. Ex. 3 at 43.) After the hearing, Singleton requested an internal affairs review of Sanchez. (FAC at 17.) Singleton also appealed the guilt determination, which was denied at all levels of review. (Self Decl. Ex. D.)

***Singleton's 2016 Transfer to Cal-Sac.*** Singleton alleges that the numerous RVRs he received for positive urinalysis results caused him to be transferred from RJD to California State Prison-Sacramento ("Cal-Sac") in August 2016. (FAC at 13; Singleton Dep. at 8:13–16; 72:22–25; ECF No. 138-1 at 8.) Singleton alleges that unlike RJD, Cal-Sac is a "super-max violent prison" and "violent maximum secured level IV (180) design prison." (FAC at 2, 17–18; ECF No. 144 at 14.) And he contends that "the defendants knew by issuing the falsified RVR[s] to him and finding Plaintiff guilty would increase Plaintiff's classification score to a level IV maximum secure prison, thereby transferring Plaintiff" to Cal-Sac. (FAC at 13.)

***Procedural History.*** Singleton originally filed suit on September 29, 2016, against remaining Defendants G. Hernandez and A. Sanchez, as well as former defendants Officers C. Martinez, K. Hurm, N. Beduhi; CDCR Director Scott Kernan; E. Garza, an RJD facility captain; J. Ortiz, a correctional counselor; and T. Boerum, a classification services representative. (ECF No. 1.) The Court determined that the original complaint survived the "low threshold" of the mandatory screening applicable to complaints filed by litigants who obtain *in forma pauperis* status. (ECF No. 5 at 4); 28 U.S.C. §§ 1915(e)(2), 1915A(b).

On May 19, 2017, Singleton filed the First Amended Complaint, which

remains the operative pleading. (ECF No. 32.)[8] The FAC added the San Diego Reference Laboratory as a defendant, which Singleton claimed had conspired to retaliate against him through its testing of the urine samples for the urinalysis and RVRs he challenges as retaliatory. (*Id*. at 12–13.) The FAC requests various forms of injunctive relief and damages. (*Id.* at 21.)

Prior to the present motions, various former defendants moved for summary judgment on the ground that Singleton failed to exhaust administrative remedies. (ECF Nos. 36, 51.) Several defendants also moved to dismiss the Eighth Amendment claim, the conspiracy claim against the lab, and several defendants on various grounds. (ECF No. 34.) Judge Stormes issued an extensive R&R, which this Court approved and adopted over Singleton's objection. (ECF Nos. 85, 89.) This Court dismissed former defendants Kernan, Martinez, Hurm, Beduhi, Ortiz, and Garza for Singleton's failure to exhaust administrative remedies. (ECF No. 89.) The Court dismissed with prejudice the San Diego Reference Laboratory and Singleton's Eighth Amendment claim. (*Id*.) As a result, only Singleton's claims against Hernandez and Sanchez for retaliation and due process violations remain. (*Id*.)

The Court now turns to the motions, Judge Stormes's R&R, and Singleton's Objection. (ECF Nos. 131, 138, 154, 155.)

---

[8] Although Singleton named T. Boerum as a defendant in the original complaint (ECF No. 1), Singleton did not name Boerum in the FAC and the FAC contains no factual allegations against him (ECF No. 32). Defendants not named and any claims not re-alleged in an amended complaint are waived. *See* S.D. Cal. Civ. L.R. 15.1; *Lacey v. Maricopa Cty*., 693 F.3d 896, 927 (9th Cir. 2012) (en banc) ("[A]n amended complaint supersedes the original complaint and renders it without legal effect."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."). Accordingly, it is appropriate for the Court to exercise its inherent power to terminate T. Boerum as a defendant.

– 14 –

**LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper on "each claim" "or the part of each claim" on which summary judgment is sought when "there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a factual dispute is "genuine" concerns whether it can "reasonably be resolved in favor of either" and whether the dispute is "material" concerns whether resolution of the factual dispute would affect the outcome of the claim based on the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

The moving party has the initial burden of demonstrating the absence of a genuine factual dispute, which it may satisfy either by affirmatively negating the nonmoving party's claim, or by demonstrating that the nonmoving party is unable to prove an essential element of that claim. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jones v. Williams*, 791 F.3d 1023, 1030 (9th Cir. 2015); *see also* J. Friedenthal, M. Kane, & A. Miller, Civil Procedure § 9.3, p. 457, n.81 (5th ed. 2015). Only if the moving party meets its initial burden must the nonmoving party go beyond its pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Anderson*, 477 U.S. 242 at 252 (a "scintilla of evidence" in support of the nonmoving party is insufficient, rather "there must be evidence on which the jury could reasonably find for the [nonmoving

party].").[9]

Because the parties' summary judgment motions come to this Court through an R&R by Magistrate Judge Stormes, the Court's review is also filtered through the standard applicable to an R&R. The Court reviews *de novo* those portions of an R&R to which objections are made. 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* "The statute makes it clear," however, "that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Reyna-Tapia*, 328 F.3d at 1121. This legal rule is well-established in the Ninth Circuit and this District. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005) ("Of course, de novo review of a[n] R & R is only required when an objection is made to the R & R."); *Nelson v. Giurbino*, 395 F. Supp. 2d 946, 949 (S.D. Cal. 2005) (Lorenz, J.) (adopting report in its entirety without review because

---

[9] In his Objection, Singleton requests that the Court "hold his pleadings to a less standard than that of an attorney" in reviewing Magistrate Judge's summary judgment recommendations and the summary judgment issues. (ECF No. 154 at 12.) The Court has an obligation to liberally construe motion papers and pleadings of *pro se* litigants. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("Courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest"). Nevertheless, this liberal application must be undertaken within the overall summary judgment inquiry: whether there is a genuine dispute of material fact for trial. Just as the Court cannot supply a *pro se* plaintiff with the missing elements of a claim, *see Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982), the Court cannot supply a *pro se* plaintiff with the missing facts necessary to survive summary judgment.

neither party filed objections to the report despite the opportunity to do so); *see also Nichols v. Logan*, 355 F. Supp. 2d 1155, 1157 (S.D. Cal. 2004) (Benitez, J.).

## DISCUSSION

As an initial matter, the Court observes that neither Singleton, nor Defendants have challenged two of the R&R's summary judgment recommendations. First, no party objects to the recommendation to deny in full Singleton's motion for summary judgment. (*Compare* ECF No. 154 at 9–11 *with* ECF No. 155.)[10] Second, no party objects to the recommendation to deny summary judgment for Hernandez on Singleton's retaliation claim. (*Compare* ECF No. 154 at 11–12 *with* ECF No. 155.) Because no party objects to these recommendations, the Court may adopt these recommendations without further analysis. *Reyna-Tapia*, 328 F.3d at 1121.

The nature of Singleton's Objection limits the Court's review to the recommendations to grant partial summary judgment (1) for Sanchez on Singleton's retaliation claim and (2) for both Sanchez and Hernandez on Singleton's due process claims. Conducting a *de novo* review of these claims, the summary judgment papers and submissions, and the R&R, the Court overrules Singleton's Objection in full and approves and adopts the R&R's recommendations.

## A. The First Amendment Retaliation Claim Against Sanchez Fails

The elements of a First Amendment retaliation claim asserted by a prisoner have been described as five-fold: (1) a defendant state actor took an adverse action against the plaintiff, (2) because of (*i.e.* caused by), (3) the plaintiff's protected

---

[10] The Court, however, makes clear that it approves the recommendation to deny Singleton's motion for summary judgment in full. (ECF No. 154 at 9–11.) Singleton's motion fails to identify and address the elements of his retaliation and due process claims or to show that the undisputed facts warrant summary judgment in his favor. (*See* ECF No. 131.) Thus, Singleton has failed to meet his initial summary judgment burden. Fed. R. Civ. P. 56.

conduct, (4) the defendant's action chilled the plaintiff's exercise of his First Amendment rights, and (5) the defendant's action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995) (plaintiff must show that there were "no legitimate correctional purposes" motivating the actions he challenges as retaliatory); *Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir. 1994) (per curiam) (a prisoner must additionally allege and prove that "the retaliatory action does not advance legitimate penological goals[.]"); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (inmate plaintiff must allege and show both "that the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity.").

Causation is the linchpin of a viable First Amendment retaliation claim. *See Hartman v. Moore*, 547 U.S. 250, 259 (2006) (explaining that a section 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action"). An inmate plaintiff must show that his protected conduct was the substantial or motivating factor underlying the defendant's adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).[11] The plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to the [defendant's] intent" in undertaking the retaliatory act. *Id*. (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

---

[11] In his Objection, Singleton appears to suggest that Sanchez's retaliatory motive can be inferred given Judge Stormes's recommendation to deny summary judgment for Hernandez on Singleton's retaliation claim. (ECF No. 155 at 6.) Singleton states that Sanchez was "the common denominator" for the hearings on the urinalysis RVRs. (*Id*.) The Court rejects Singleton's argument. Because the retaliatory intent inquiry focuses on the intent of *a particular defendant*, the plaintiff may not impute to one defendant a retaliatory motive based on a showing that *another defendant* may have possessed a retaliatory motive.

– 18 –

The evidence of retaliatory motive a plaintiff must offer to survive summary judgment must be "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002). When a plaintiff fails to offer direct evidence, he must provide circumstantial evidence of: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *Id.*; *see also McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011), *superseded by statute on other grounds*. Mere speculation that a defendant acted in retaliation is insufficient at the summary judgment stage. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (affirming grant of summary judgment when there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

"Retaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted). Thus, retaliation claims asserted by prisoners against prison officials must "be 'regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'" *Canell v. Multnomah Cty.*, 141 F. Supp. 2d 1046, 1059 (D. Or. 2001) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Magistrate Judge Stormes recommended that this Court grant summary judgment for Defendant Sanchez on the ground that Singleton has failed to produce evidence that Sanchez retaliated against him *because of* a protected activity. (ECF No. 154 at 12–14.) Specifically, Judge Stormes concluded that the twenty-month lapse between the riot-related RVR hearing and the November 16, 2015 hearing over

which Sanchez presided was insufficient to show that Sanchez retaliated against Singleton. (*Id.*)

In his Objection[12], Singleton avers that the "totality of the evidence" shows Sanchez's retaliation. Singleton notes that "'a chronology of events from which retaliation may plausibly be inferred' can also establish retaliation." (ECF No. 155 at 4 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).) Singleton then outlines a "chronology of events." (ECF No. 155 at 2, 4–5.)[13] Singleton first points out that during the February 8, 2014 riot RVR hearing, Sanchez denied Singleton witnesses and noted for the record Singleton's remark to him during the hearing, "Fuck you! I will see you on the yard." (ECF No. 155 at 2, 5–6.) Second, Singleton contends that the "first opportunity" Sanchez had to retaliate against him was the November 16, 2015 urinalysis RVR hearing. (*Id.*) Finally, Singleton contends that Sanchez's retaliation can be inferred because Singleton filed grievances and a state court lawsuit after the riot RVR hearing. The Court concludes that these grounds are individually insufficient to show retaliatory motive and they fare no better taken together.

### 1. Sanchez's Conduct During the Riot RVR Hearing Is Insufficient

As an initial matter, the conduct that occurred during the riot RVR hearing is inapposite to the First Amendment retaliation claim against Sanchez *in this case*. As Magistrate Judge Stormes expressly noted, Singleton's retaliation claim concerns

---

[12] Singleton's Objection commingles his retaliation and due process arguments. (ECF No. 155.) The Court construes Singleton's arguments in view of his First Amendment claim and the applicable standard for the purpose of the present analysis.

[13] Singleton also argues that the "missing urinalysis logs" for all three RVRs which triggered the RVR hearings over which Sanchez presided shows his retaliatory motive. (ECF No. 155 at 3–4, 6.) These logs are inapposite to the retaliation claim against Sanchez. Unlike Hernandez, there is no evidence whatsoever that Sanchez was ever involved in or had any role—directly or indirectly—with respect to the maintenance of the urinalysis logs.

retaliation that allegedly resulted from Singleton's "later grievances and lawsuit" *following the riot RVR hearing*. (ECF No. 154 at 13.) As Judge Stormes properly concluded, "the hearing that is alleged to have started the chain of events and adverse actions cannot also be the adverse action." (ECF No. 154 at 13.)

But even if the Court considers Sanchez's conduct during the RVR hearing— *i.e.* Sanchez's decision not to permit Singleton to call certain officers as witnesses and "failing to write down any of Plaintiff's statement[s]" (ECF No. 155 at 5–6, 11)—Singleton fails to provide evidence of any protected activity *prior to the riot RVR hearing for which Sanchez* would have had a motive to retaliate against Singleton. Singleton filed a January 6, 2014 grievance before the riot RVR hearing concerning alleged mishandling of the riot by certain officers. (Singleton Decl. Ex. 2 (CDCR Form 22).) Singleton argues in part that this grievance "was enough to retaliate, including defendant Sanchez." (ECF No. 155 at 2, 5 n.5, 10; Singleton Decl. ¶ 2.) The form, however, does not refer to Sanchez, nor any conduct attributable to Sanchez. Without more, this grievance cannot give rise to an inference that Sanchez sought to retaliate against Singleton at the riot RVR hearing.

### 2. The Circumstantial Evidence of Timing is Insufficient

Focusing on the riot RVR hearing, Singleton contends that "[i]t is clear a confrontation" occurred between him and Sanchez for which Sanchez sought to retaliate—*i.e.,* Singleton used profanity toward Sanchez because of Singleton's frustration with the hearing. (ECF No. 155 at 3.) Singleton acknowledges the 20-month lapse between the February 8, 2014 riot and the November 16, 2015 urinalysis RVR hearing, yet contends that "regardless of timing" the latter hearing was simply the "first opportunity" Sanchez had to retaliate against him. (*Id.*) He contends that a jury "can decide whether defendant Sanchez retaliated twenty months later by denying witnesses, falsifying documents[.]" (*Id.* at 5.) Even assuming that Singleton

engaged in a protected activity at the riot RVR hearing[14], Singleton fails to overcome the pitfalls of relying on timing as circumstantial evidence.

A plaintiff may of course rely on a "chronology of events" to show retaliatory intent because a plaintiff is unlikely to have direct evidence of such an intent. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal."); *Cain*, 857 F.2d at 1143 n.6 ("[T]he prisoner must allege a chronology of events from which retaliation may plausibly be inferred . . . . Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline.") (citations omitted). A plaintiff may a rely on evidence of a chronology of events at the summary judgment stage. *See Knox v. Castaneda*, No. 13cv2985-WQH(RBB), 2018 WL 6649457, at *4 (S.D. Cal. Dec. 18, 2018) (considering chronology of events at summary judgment stage); *LeBlanc v. Tabak*, No. CV 16-03270-JLS (AFM), 2018 WL 4846658, at *8–9 (C.D. Cal. Aug. 2, 2018) (same), *approved and adopted by*, 2018 WL 4846577 (C.D. Cal. Oct. 2, 2018); *see also Koch v. Lewis*, No. 93-17250, 62 F.3d 1424, 1995 WL 453247, at *11 (9th Cir. Aug. 1, 1995) (unpublished).

Timing alone, however, is insufficient. Even when there is close proximity, a plaintiff must provide additional evidence to support an inference of retaliatory motive or intent. *Pratt*, 65 F.3d at 808; *Stone v. Becerra*, No. 10-138 RMP, 2011 U.S. Dist. LEXIS 44433, 2011 WL 1565299, *3 (E.D. Wash. April 25, 2011) (timing of cell search, without more, was insufficient to allege that search was retaliatory), *aff'd by*, 520 Fed. App'x 542 (9th Cir. 2013) (unpublished). Without additional

---

[14] Prison officials may not retaliate against an inmate for exercising his First Amendment rights, which includes the use of profanity, even if the officials' actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).

evidence, extended lapses in time between the alleged protected activity and the adverse action are plainly insufficient to give rise to an inference of retaliatory intent. *See Vasquez v. Cty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2004) (suggesting that a 13-month lapse is too long); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (insufficient chronology of events presented when alleged retaliatory action occurred five months after prisoner instituted a lawsuit); *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1126 (N.D. Cal. 2015) (lapse over one year was too long). As Magistrate Judge Stormes concluded, a twenty-month lapse between the riot RVR hearing and November 11, 2015 urinalysis RVR hearing is simply insufficient to give rise to an inference of retaliatory intent. Singleton identifies no other evidence that contravenes the soundness of this conclusion.

As a final matter, the Court addresses one other issue that Judge Stormes did not consider: whether Singleton's appeal of his November 16, 2015 guilt finding could serve as the basis for retaliation against Singleton in the June 2016 urinalysis RVR hearing over which Sanchez presided. On November 26, 2015, Singleton appealed the guilt determination and requested "no reprisals for the filing of this appeal." (ECF No. 51-4, Self Decl. Ex. C at 2.) In his Objection, Singleton alludes to the fact that when he filed grievances, he requested no reprisals. Singleton's retaliation claim against Sanchez, however, also fails with respect to the June 2016 hearing for lack of evidence showing retaliatory intent.

The lapse in timing between Singleton's filing of the appeal and the subsequent hearing is seven months. This is not the close proximity in time from which retaliatory motive may be inferred. In order to establish a causal link sufficient to survive summary judgment based solely on temporal proximity, the protected activity and the adverse action must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (citing cases finding periods of three and four

months too long); *Quiroz*, 85 F. Supp. 3d at 1127 (noting that six-month proximity was not enough to show retaliatory intent).  Accordingly, the Court finds that the timing between the two events cannot show a triable issue regarding whether Sanchez possessed a retaliatory motive against Singleton in the June 2016 hearing.

### 3.    The Grievances and State Court Lawsuit Are Insufficient

Finally, Singleton argues that Sanchez's retaliatory motive can be inferred from his filing of other grievances and his state law complaint regarding how certain prison officers handled the January 2014 riot.  (ECF No. 155 at 2, 10; Singleton Decl. ¶ 2.)  Singleton contends that he "was still actively pursuing [his] appeal on the civil matter in the state court" at the time of his first urinalysis RVR hearing before Sanchez and thus "a protected activity was still on-going."  (ECF No. 155 at 12, 17.)

The Court acknowledges that filing a grievance is a protected action under the First Amendment. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). So is the pursuit of a civil rights legal action. *Rizzo v. Dawson*, 778 F.2d 527, 530–32 (9th Cir. 1985).  The issue, however, is not whether Singleton engaged in a protected activity at some point, but whether he has provided evidence from which a reasonable jury could infer a *causal connection* between that protected activity and Sanchez's conduct.  The fact a defendant's alleged adverse action happens after some action by the plaintiff is not sufficient to give rise a causal inference. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on "the logical fallacy of *post hoc*, *ergo propter hoc*, literally, "after this, therefore because of this.").  The grievances and state law complaint fail to give rise to a reasonable inference here.

### a.    Grievances

Singleton's Objection specifically points only to February 23, 2014 and

February 11, 2015 letters he wrote to certain prison officials and which he included as part of his opposition to Defendants' motion for summary judgment. (ECF No. 155 at 10 (citing ECF No. 144 Singleton Decl. Exs. 13–14.) Neither of these letters names Sanchez or concerns conduct attributable to Sanchez. (Singleton Decl. Exs. 13–14.) Thus, without more, they too do not give rise to an inference of retaliatory motive by Sanchez at the time of Singleton's first urinalysis RVR hearing before Sanchez in November 2015.

Out of an abundance of caution, the Court has reviewed the entire record to determine whether Singleton filed any grievance regarding the riot RVR hearing after the hearing. Singleton appealed his guilt finding for participation in the riot on February 25, 2014, specifically requesting "no reprisals as a result of appellant's pursuit of" the appeal. (ECF No. 1-2 Ex A at 11.) To the extent Singleton seeks to rely on the timing of this appeal relative to the November 2015 hearing as circumstantial evidence of retaliatory motive, the evidence is insufficient. The appeal was denied through all levels of review by June 30, 2014. (ECF No. 1-2 Ex. A at 9–10 (June 30, 2014 appeal denial).) The 16-month lapse between the close of the appeal and the November 2015 hearing is too long to give rise to a reasonable inference of retaliatory motive.

### b. State Court Lawsuit and Related Appeal

With respect to his state court lawsuit and appeal argument, Singleton requests judicial notice of (1) a notice of appeal form dated August 10, 2015, for his appeal of the California Superior Court's dismissal of his lawsuit against certain officers and (2) a related notice dated September 10, 2015 with a proof of service dated September 11, 2015, by which he designated the record on appeal. (ECF No. 157 Exs. 1–2.) Singleton did not submit this evidence as part of the summary judgment record which forms the basis of Magistrate Judge Stormes's recommendation to grant summary

judgment for Sanchez.  (ECF No. 155 at 17; ECF No. 157 (Singleton's RFJN).)  This evidence was presumably available to Singleton before he opposed Defendants' motion for summary judgment because the documents are from 2015.  Nevertheless, a court may receive further evidence in reviewing a magistrate judge's finding and recommendations.  28 U.S.C. § 636(b)(1).  Thus, the Court considers Singleton's appeals evidence now.

Singleton's appeals evidence does not preclude summary judgment.  As Magistrate Judge Stormes underscored, Sanchez was *not* a defendant in the state court action.  (ECF No. 154 at 14.)  Nor did Singleton seek to name Sanchez as a defendant in his proposed supplemental complaint.  (RFJN Ex. 2.)  Without more, it makes no difference to Singleton's retaliation claim against Sanchez that Singleton's appeal was pending at the time of the first urinalysis RVR hearing before Sanchez.  Singleton fails to provide any other *evidence*—as opposed to his mere speculation— from which a reasonable jury could infer any retaliatory motive connecting Singleton's state court lawsuit with Sanchez's conduct.  The appeal and its pendency is also insufficient evidence of retaliatory intent.

\*    \*    \*

Having conducted a *de novo* review, the Court concludes that Singleton has failed to show a triable issue regarding Sanchez's motive to retaliate.  Accordingly, the Court overrules Singleton's objection to Judge Stormes's recommendation to grant summary judgment for Sanchez on this claim and grants summary judgment for Sanchez.

**B.    The Fourteenth Amendment Due Process Claims Fail**

The Fourteenth Amendment's Due Process Clause guarantees procedural due process when a constitutionally protected liberty or property interest is at stake.  *See*

*Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents v. Roth,* 408 U.S. 564, 569 (1972). "Prisoners do not check all of their constitutional rights at the jailhouse gate. Indeed, they 'may . . . claim the protections of the Due Process Clause [, and they] may not be deprived of life, liberty or property without due process of law.'" *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). Those who seek to invoke the procedural protections of the Due Process Clause, including prisoners, "must establish that one of these [protected] interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Analysis of a claim of a procedural due process claim involves a two-step inquiry: (1) whether the state interfered with an inmate's protected liberty or property interest, and (2) whether procedural safeguards were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (applying the two-step due process inquiry and holding that Kentucky state regulations did not provide inmates a constitutionally-protected liberty interest in receiving visitors); *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (applying two-step inquiry).

As an initial matter, Defendants contend that "Singleton did not allege a violation of due process in either his original Complaint or his First Amended Complaint," and instead "raise[d] due process concerns in his own Motion for Summary Judgment." (ECF No 138–1 at 16.) The Court acknowledges that Singleton's operative pleadings use the phrase "due process" sparingly. (FAC at 5, 9.) But given his *pro se* status and the FAC's factual allegations regarding alleged failures of prison officials to follow procedure and denials of Singleton's requests for witnesses during disciplinary hearings, the Court finds that—independently of whether the FAC actually stated plausible due process claims—the operative

pleadings provided adequate notice to Defendants of possible due process claims on which they may seek summary judgment.[15] *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988) ("In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."); *Yeiser Res. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1037 (S.D. Cal. 2017) ("[T]he focus of the Federal Rules is on whether the factual allegations of the Complaint—not the precise pleading of a specific statute or law—provide [defendants] with fair notice of the claims asserted against it."). This Court also recognized that Singleton's operative pleadings sound in due process when it issued its order regarding the claims that remain against Hernandez and Sanchez. (ECF No. 89.)

Defendants do not dwell at length on their pleadings-based argument. Instead, they argue on the merits that each alleged form of misconduct does not violate the Due Process Clause either because Singleton lacks a liberty interest that triggers due process protections or, even if such an interest exists, Singleton received all the process he was constitutionally due. (ECF No. 138–1 at 16–24.) The Court addresses these issues with respect to each Defendant.

### 1.      Defendant Sanchez

Singleton's due process claims against Sanchez concern alleged denials of due process during the three RVR hearings over which Sanchez presided. (FAC at 5–6, 9–10.) Any other hearings over which Sanchez did not preside are not at issue with respect to claims against Sanchez. The Court considers both whether a liberty interest exists and, even if an interest exists, whether Singleton received all the process he

---

[15] Singleton's appeals of at least his urinalysis RVR hearings before Sanchez also raised the issue of due process violations in contravention of *Wolff*. (*See* ECF No. 51-4, Self Decl. Ex. C at 4 (appeal of November 2015 urinalysis RVR hearing guilt finding), *id*. Ex. D at 4 (appeal of June 2016 urinalysis hearing).)

1 was constitutionally due.

2

3 ### a. Singleton Lacks an Identifiable Liberty Interest

4 As an initial matter, the Court must consider whether a liberty interest is

5 implicated that triggers any constitutional procedural safeguards for the RVR

6 hearings. *See Kentucky Dep't of Corr*, 490 U.S. at 460. Defendants recognize that

7 Singleton lost good-time credits in each RVR hearing over which Sanchez presided.

8 (ECF No. 138-1 at 18; Sanchez Decl. Exs. 1, 2, 3.) They argue, however, that

9 Singleton lacks a liberty interest in the loss of good-time credits because the losses

10 do not affect his sentence of an indeterminate term of 35 years to life. (ECF No. 138-

11 1 a 19; RJFN Ex. 1 at 2, Ex. at 2.) Magistrate Judge Stormes expressly declined to

12 consider this argument and instead treated loss of good-time credits as a liberty

13 interest. (ECF No. 154 at 17 n.13.) This Court, however, will consider the liberty

14 interest issue because it determines whether Singleton was entitled to any due process

15 protections during the prison disciplinary proceedings he challenges. If there is no

16 liberty interest, then there is an independent and dispositive ground for granting

17 Defendants' motion on Singleton's due process claims against Sanchez.

18

19 "A liberty interest may arise from the Constitution itself, by reason of

20 guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or

21 interest created by state laws or policies[.]" *Wilkinson*, 545 U.S. at 221 (citing *Vitek*

22 *v. Jones*, 445 U.S. 480, 493–94 (1980) (recognizing a liberty interest in avoiding

23 involuntary psychiatric treatment and transfer to a mental institution pursuant to the

24 Due Process Clause), and *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974)

25 (recognizing a liberty interest in avoiding withdrawal of state-created system of

26 good-time credits)).

27

28 In this prison context, loss of good-time credits through a prison disciplinary

proceedings *may* implicate a liberty interest, as a matter of state law, which triggers certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). But not all loss of good-time credits implicates a liberty interest. The dispositive question is whether the loss will have some effect on the length of confinement. *See Sandin v. Conner*, 515 U.S. 472, 481–84 (1995) (a liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (when conducting the *Sandin* inquiry, a court should examine whether the sanctions will affect the length of the prisoner's sentence); *Montue v. Stainer*, No. 1:14-cv-01009-LJO-JLT, 2014 WL 6901853, at *9 (E.D. Cal. Sept. 5, 2014) ("After *Sandin*, in order to demonstrate a liberty interest, an inmate must show a disciplinary conviction will inevitably lengthen the duration of the inmate's incarceration."). When the loss of good-time credits does not affect the length of confinement, or the plaintiff fails to show that it will, there is no identifiable liberty interest.

Defendants analyze why the loss of good-time credits in this case will not affect Singleton's length of confinement. (ECF No. 138 at 19.) It is not necessary for the Court to recount the analysis here. The absence of a liberty interest based on lost good-time credits is apparent from Singleton's pleadings and arguments. There are no factual allegations in the FAC that the length of Singleton's prison sentence is or will be affected in some way by his loss of good time credits at the RVR hearings, nor does Singleton raise any claims challenging the loss of credits on this basis. (*See* FAC.) Singleton also offers no arguments or facts either in his motion for summary judgment, his opposition to Defendants' motion, or in his Objection which show that the loss of good-time credits has an impact on the length of his confinement. (*See* ECF Nos. 131, 144, 155.) Thus, Singleton has failed to identify the basis by which a liberty interest for lost good time credits may arise.

The pleadings and the record, however, show that the core of Singleton's challenge is that the RVRs and multiple guilt findings against him cumulatively resulted in his transfer from RJD to the "super-max violent prison" and "violent maximum secured level IV (180) design prison" where he currently resides. (FAC at 2, 13, 17–18; ECF No. 144 at 14.)[16] This cannot serve as the liberty interest that triggers the procedural protections necessary to resolve his due process claims.

"Neither . . . does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner did not have liberty interest in residing at a level III prison as opposed to a level IV prison); *Germain v. Janam*, No. 2:18-cv-3041-DB-P, 2019 WL 79011, at *9 (E.D. Cal. Jan. 2, 2019) ("Plaintiff is also not entitled to a transfer to any particular prison or prison program."); *Springfield v. Craig*, No. 2:17-cv-2144-DB-P, 2018 WL 5980138, at *3 (E.D. Cal. Nov. 14, 2018)

---

[16] Singleton lost visitation rights, yard activities, and phone privileges as a result of his guilt findings at the RVR hearings. (Sanchez Decl. Exs. 2, 3.) None of these losses gives rise to a liberty interest protected by the Due Process Clause, whether as a matter of the Due Process Clause itself or because of the operation of state law. *See Allen v. Kernan*, No.: 3:16-cv-01923-CAB-JMA, 2017 WL 4518489, at *5 (S.D. Cal. Oct. 10, 2017) ("[T]he loss of privileges like yard time, phone access, and visitation are 'within the range of confinement to normally expected for one serving [the underlying sentence]', and therefore are not 'atypical.'" (quoting *Sandin*, 515 U.S. at 487)); *Higdon v. Ryan*, No. CV 13-0475-PHX-DGC, 2014 WL 1827156, at *5 (D. Ariz. May 8, 2014) (noting that the "loss of contact visitation cannot form the basis for an independent due process violation," and dismissing claims that the denial of contact visitation was a "significant and atypical hardship" under *Sandin*); *Medina v. Dickinson*, No. 2:10-cv-0502 LKK AC P, 2013 WL 268710, at *10 (E.D. Cal. Jan. 23, 2013) (the "loss of visiting privileges and removal from educational and vocational programs . . . are not atypical and significant hardships when compared to the burdens of ordinary prison life" and thus there is no liberty interest). Thus, to the extent Singleton sought to premise a liberty interest based on these rescinded privileges as a result of the RVR hearings, Defendants are entitled to summary judgment.

("Plaintiff's allegations that he was held in a more restrictive institution does not implicate a liberty interest entitling him to due process protections. An inmate has no right to a particular prison."). Thus, Singleton's transfer does not implicate a protected liberty interest for which he can press due process claims against either Sanchez or Hernandez, against whom Singleton also attributes the additional drug tests and allegedly falsified RVRs leading to his transfer to Cal-Sac.

In recommending denial of Singleton's motion for summary judgment, Judge Stormes properly recognized that Singleton has no protected liberty interest with respect to his transfer. (ECF No. 154 at 11.) This proposition applies equally to assessing the merits of Defendants' argument in their motion that Singleton lacks a protected liberty interest. Singleton's complaint regarding his transfer to another prison is not a protected liberty interest and Singleton fails to identify any other interest. Both Defendants are entitled to summary judgment on Singleton's due process claims on this basis.

### b. The Procedural Due Process Requirements Were Satisfied

Notwithstanding the foregoing, the Court will assume that Singleton possesses some liberty interest based on the loss of good-time credits resulting from the guilt findings at the RVR hearings. The Court's next inquiry focuses on the sufficiency of the process Singleton received. *See Kentucky Dep't of Corr.*, 490 U.S. at 460.

When a liberty interest exists, the constitutional due process a prisoner must receive encompasses: (1) 24-hour advanced written notice of the charges against him, (2) a written statement from the factfinder which identifies the evidence relied on and the reasons for the action taken, (3) an opportunity "to call witnesses and present documentary evidence in his defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals," (4) assistance at the hearing if he is

illiterate or the matter is complex, and (5) a "sufficiently impartial" factfinder.  *Wolff*, 418 U.S. at 563–66, 570–71.

If the *Wolff* requirements are satisfied, the successive inquiry is whether the guilt finding reached during the disciplinary proceeding is supported by "some evidence."  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  Because "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances," the "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  *Id*. at 455–56.  Rather, the "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the factfinder.  *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455–56); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) ("[T]he standard is 'minimally stringent' only requiring 'any evidence in the record that *could* support the conclusion reached by the disciplinary board.'" (emphasis in original)).

Magistrate Judge Stormes properly identified both the process which Singleton was due during his RVR hearings, assuming that a liberty interest exists, and the standard by which the Court assesses Singleton's guilt findings.  (ECF No. 154 at 17.)  Analyzing the facts pertaining to Singleton's November 2015 and June 2016 hearings, Judge Stormes concluded that "[t]he reports of the hearings reflect more than 24 hours' notice of the charges, a written statement by the fact finder as to the evidence relied on and the reasons for the action, an opportunity to call witnesses and present documentary evidence, and a sufficiently impartial fact finder for the hearings conducted by Lt. Sanchez" and "Sanchez found Plaintiff spoke English, 'was able to understand and effectively articulate both the nature of the charge(s) and

the disciplinary process[.]'" (*Id*. at 18 (citing Sanchez Decl. Exs. 2–3).) Furthermore, Judge Stormes analyzed each urinalysis RVR hearing over which Sanchez presided on an individual basis, including Singleton's opportunities to call witnesses and provide evidence, the reasons why Sanchez declined some of Singleton's requests to call certain individuals as witnesses, and the sufficiency of the documented reasons for why Sanchez determined Singleton was guilty. (*Id*. at 18–19 (November 2015 hearing); *id*. at 19–21 (June 2016 hearing).) Judge Stormes concluded that Sanchez had "complied with due process" at both hearings and Sanchez's June 2016 guilt finding was supported by some evidence. (*Id*.)

In his Objection, Singleton touches on two of the *Wolff* due process requirements. First, Singleton avers that although he "argued in each RVR the challenge of the chain-of-custody" issue, he was denied due process at the RVR hearings because Sanchez denied him "potentially exculpatory witnesses[.]" (ECF No. 155 at 3–6, 10–11.) He contends that he "is entitled to witnesses and documentary evidence to challenge a [sic] RVR [he] contends to be falsely written." (ECF No. 155 at 4 (citing *Wolff*, 418 U.S. at 566; *Serrano*, 345 F.3d at 1079).) Second, Singleton argues that Sanchez was not an impartial factfinder. (*Id*. at 7–9.) Singleton's impartiality objection is based not only on Sanchez's alleged denial of witnesses and evidence starting with the riot RVR hearing, but on Singleton's contention that "a[n] impartial [officer] who conducted the U/A RVR hearings would have found Plaintiff not guilty if no records exist to establish a chain-of-custody." (*Id*. at 9.) In addition to these *Wolff*-based objections, Singleton takes issue with Judge Stormes's determination that Sanchez's guilt findings in the two urinalysis RVR hearings over which Sanchez presided were supported by "some evidence." (*Id*. at 4.) Singleton argues that "[t]he most important evidence" regarding his guilt was the urinalysis log book that would provide evidence of the "chain-of-custody issue," but which Defendants failed to produce in this case and which "are missing

from all 3 U/A RVR's, two (2) U/A's that Sanchez held hearings on." (*Id.* at 3–4, 6.)

Singleton does not object to several of Judge Stormes's findings regarding due process at his RVR hearings before Sanchez, specifically that: (1) he received 24-hour advance notice prior to each hearing, (2) Singleton understood the disciplinary proceedings against him and did not require assistance, and (3) Sanchez provided written statements to Singleton regarding the evidence on which Sanchez relied during the hearings to support the guilt findings. (*Compare* ECF No. 154 at 18–19 *with* ECF No. 155.) The Court finds these conclusions are not clearly erroneous based on the record. *See Afrah v. Sidhu*, No. 14-CV-02303-BAS-NLS, 2015 WL 8759131, at *1 (S.D. Cal. Dec. 14, 2015) ("In the absence of a specific objection, the clear weight of authority indicates that the court need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation.") (citing Fed. R. Civ. P. 72(b) Advisory Comm. Notes (1983) (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974)); *Turner v. Tilton*, No. 07-CV-2036, 2008 WL 5273526, at *1 (S.D. Cal. Dec. 18, 2008) (Sammartino, J.) ("[H]is objections do not address the substance of the R & R's findings. Instead, the objections discuss at length the claims made . . . . Thus, the Court finds that Petitioner has not made an objection to a[] specific portion of the report. Therefore, the Court need only satisfy itself that the R & R is not clearly erroneous.").

As Judge Stormes did, the Court will address Singleton's objections in the separate context of each urinalysis RVR hearing over which Sanchez presided.

### i.    November 16, 2015 Urinalysis RVR Hearing

The November 16, 2015 urinalysis RVR hearing against Singleton concerned

a urine sample collected on September 28, 2015 by Officer Hampton, for which Singleton was charged with violation of Section 3016(a) for use of a controlled substance, specifically methamphetamine. (Sanchez Decl. Ex. 2 at 25.)

*Impartiality.* Due process requires only that the decision-maker in a prison disciplinary proceeding be "sufficiently impartial." *Wolff*, 418 U.S. at 571. To show a biased adjudicator, a plaintiff must "overcome a presumption of honesty and integrity in those serving as adjudicators." *See Withrow v. Larkin*, 421 U.S. 35, 47, (1975). Generally, "[d]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff*, 418 U.S. at 592 (Marshall, J. concurring in part and dissenting in part). Sanchez did not participate in the collection or testing of Singleton's urine sample, he did not issue the RVR which formed the basis for the hearing, and there is no evidence that he was otherwise involved in the matter other than as a hearing officer. Thus, the Court finds that Sanchez was sufficiently impartial. *See McCauley v. Shartle*, No. CV-15-0045-TUC-RCC (BGM), 2017 WL 2222379, at *6 (D. Ariz. Apr. 26, 2017) (finding hearing officer impartial for purposes of *Wolff* analysis based on these reasons), *approved and adopted by*, 2017 WL 2222379 (D. Ariz. May 19, 2017).

To the extent Singleton contends that Sanchez was not "sufficiently impartial" because Sanchez previously rejected witnesses at the February 2014 riot RVR hearing, the Court rejects this contention. "Judicial rulings alone almost never constitute a valid basis for a bias or partiality" challenge. *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp*., 384 U.S. 563, 583 (1966)). This proposition is equally applicable to rulings by prison disciplinary hearing officers and thus such rulings cannot serve as evidence of bias. *See McCloud*

*v. Lake*, No. 1:18-cv-01072-JLT (HC), 2019 WL 283709, at *4 (E.D. Cal. Jan. 22, 2019).

**Witnesses.**  A prisoner in a disciplinary proceeding has a due process right to call witnesses "when it will not be unduly hazardous to institutional safety or correctional goals[.]"  *Wolff*, 418 U.S. at 566.  This recognized right is subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution[.]"  *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (citing *Wolff*, 418 U.S. at 556).  As a constitutional minimum, prison officials cannot issue a blanket denial of permission for an inmate to call witnesses.  *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003); *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1997) ("[A] blanket denial of permission for an inmate to have witnesses physically present during disciplinary hearings is impermissible, even where jail authorities provide for interviewing of witnesses outside the disciplinary procedure.")  But Sanchez did not issue a blanket denial.  As Judge Stormes recognized, Singleton requested and Sanchez granted him permission to call Officer Hampton—the officer who collected the urine sample from Singleton and issued the RVR—as a witness.  (Sanchez Decl. Ex. 2 at 32.)  Thus, Singleton was not placed in the position in which only his testimony was the basis on which he could challenge the charge.

As for Sanchez's rejection of Dr. Saidro as a witness, the record does not show that Sanchez's denial violated Singleton's due process rights as a matter of law. Singleton asserts that Sanchez refused to call Dr. Saidro as a witness and that this itself constitutes a due process violation.  (ECF No. 155 at 3.)  Both *Wolff* and *Serrano*, however, make clear that "[j]ail officials need not provide inmates an unfettered right to call witnesses," but rather "must make the decision . . . on a case-by-case basis." *Serrano*, 345 F.3d at 1079.

The relevant issue for Sanchez's denial of Singleton's request to call Dr. Saidro is whether the decision was arbitrary. "Prison officials may not *arbitrarily* deny an inmate's request to present witnesses or documentary evidence." *Graham v. Baughman*, 772 F.2d 441, 444 (8th Cir. 1985) (citing *Ponte v. Real*, 471 U.S. 491 (1985) (emphasis added). A prison official must either provide an explanation as part of the administrative record in the disciplinary proceeding or present testimony in court if the claimed defect in the hearing is alleged to have caused the deprivation of a liberty interest. *Ponte*, 471 U.S. at 497. As Judge Stormes properly identified, "[t]o establish a genuine issue of material fact, Plaintiff must point to facts that, in the light most favorable to him, show that no reason was given or that the reasons were arbitrary." (ECF No. 154 at 18.) Singleton failed to do so in his opposition to Defendants' motion for summary judgment and he fails to do so in his Objection.

At the hearing, Singleton sought to offer Dr. Saidro as a witness who could address false positives for *amphetamines* based on his prescribed medication—not methamphetamines. (Sanchez Decl. Ex. 2 at 28.) The record shows that Sanchez refused Singleton's request because "Dr. Saidro was not present during the urine sample collection and has not [sic] part in the testing of the sample" and thus his testimony was irrelevant. (*Id.*) Sanchez expressly alerted Singleton that although the lab report tested positive for codeine, amphetamines, and methamphetamine, the charge against him concerned use of only the latter. (*Id.*) And "[w]hen asked, Plaintiff admitted he was not prescribed methamphetamines." (ECF No. 154 at 18–19 (citing Sanchez Decl. Ex. 2 at 29).) Based on this undisputed record, Sanchez's denial of Dr. Saidro was not arbitrary. *See Hardy v. Sisson*, No. 2:13-cv-2514-GEB-CMK-P, 2017 WL 2909807, at *7 (E.D. Cal. July 7, 2017) (finding that request for witness was not arbitrarily denied because the record showed the questions were irrelevant).

Notwithstanding this record, Singleton objects that "the Magistrate did not address factual evidence Plaintiff submitted," specifically, "a[n] exhibit from a non-party SHO [senior hearing officer] stating that CDCR does administer medication that shows up positive for methamphetamine. (see Pl's Decl[.] filed Sept. 30, 2018, para. 26.)." (ECF No. 155 at 3.) Paragraph 26 of Singleton's declaration refers to "Ex. 15 [] a true copy of a RVR disposition I had at CSP-Sacramento." (Singleton Decl. ¶ 26.) There is no Exhibit 15 attached to Singleton's declaration. (*See id.* (attaching Exhibits 1 through 14).) Paragraph 8 of the declaration, however, also concerns Sanchez's denial of Dr. Saidro and refers to Exhibit 5. (*Id.* ¶ 8.) Exhibit 5 is a single, undated page ("page 5 of 10") for what appears to be a urinalysis RVR hearing report issued to Singleton at Cal-Sac and for which Singleton raised a false-positive defense, yet was found guilty of the offense charged. (*Id.* at 40.) Assuming Singleton is referring to Exhibit 5, it fails to raise a triable issue regarding whether Sanchez's denial of Dr. Saidro in the November 16, 2015 hearing violated Singleton's due process rights. The single page from the Cal-Sac report does not refer to Dr. Saidro and there is no indication that Singleton tried to rely on testimony from any other physician regarding false-positives for Singleton's medication.[17] Accordingly, the Court overrules Singleton's objection.

***"Some Evidence" for Guilt Finding***. The final issue is whether there is "some

---

[17] The exhibit also does not support Singleton's argument. The single page indicates that Singleton attempted to argue that "medication that CDCR provides, in particular Ranitidine, that can cause a false positive for Meth/amphetamines" and submitted literature from a 2010 study. (Singleton Decl. Ex. 5.) The report indicates that Singleton was "prescribed RANITIDINE for the past year," which was verified through "C Facility medical staff." (*Id.*) The hearing officer rejected Singleton's argument because (1) the actual test on which the literature was based occurred in 1991 and did not use a testing method employed by the San Diego Reference Lab and (2) training provided by CDCR officers "indicated that the only medication issued by CDCR that can indicate a false-positive is DESOXYN," a medication that was not then stocked. (*Id.*) Singleton was not on that medication. Singleton was found guilty *despite his false-positive defense.* (*Id.*)

evidence" to support the November 2015 guilt finding. Judge Stormes did not expressly address this point, but Singleton assumes that Judge Stormes implicitly found that there was some evidence. (*See* ECF No. 154 at 18–19.) Considering the issue now, the Court rejects Singleton's objection and affirms the November 2015 guilt finding was supported by some evidence.

Singleton challenges the sufficiency of the evidence for his November 2015 guilt finding by contending now, in this litigation, that he "argued in each RVR the challenge of the chain-of-custody" issue. (ECF No. 155 at 3–6, 10–11; *see also* Singleton Dep. 55:22–56:5.) Analysis of the due process requirements for chain-of-custody issues is not relevant to the November 2015 hearing because the record does not reflect that Singleton raised the issue at the time of the hearing or in his prison appeal of the finding.

First, the RVR hearing report does not reference that Singleton raised a chain-of-custody objection or defense. (*See* Sanchez Decl. Ex. 2.) Second, Singleton testified that he did not question Officer Hampton—the officer to whom Singleton gave his urine sample—about chain-of-custody. (Singleton Dep. at 56:6–8.) The only other witness Singleton sought to call was Dr. Saidro, but Singleton has never contended that he sought to rely on Dr. Saidro to show there were issues with the chain-of-custody. Dr. Saidro would have been an irrelevant witness if Singleton had actually believed the positive results came from a tampered with sample, rather than as a false positive for medication he was prescribed from his physician. Finally, Singleton's appeal of the November 2015 RVR hearing guilt determination does not reference chain-of-custody at all. (*See* ECF No. 51-4, Self Decl. Ex. C at 4–5.) Rather, Singleton reiterated his concerns about a false positive for medication he was taking and a protocol he believed was not followed "to see if his medication caused the false-positive[.]" (*Id.* at 5.) This is in contrast to a different appeal Singleton

filed for the January 21, 2015 positive urine result, in which Singleton expressly claimed a "chain-of-custody breach." (*See* ECF No. 51-4, Self Decl. Ex. C at 33.)

Reviewing the record, the Court concludes there is "some evidence" to support the November 2015 guilt finding. Despite Singleton's contention that there is no proof "when and who placed the U/A samples in the secured lock box," (ECF No. 144 at 14), the RVR expressly indicates that Officer Hampton requested a sample from Singleton, observed Singleton provide the sample, Singleton confirmed the identifying information on the sealed cup, maintained sole possession of the sample and placed it into the urinalysis refrigerator pursuant to procedure. (Sanchez Decl. Ex. 2 at 25.) The lab report for the sample came back positive. (*Id.* at 29.) Because the sample was positive for use of a controlled substance, there was some evidence to support the guilt finding. *See Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989); *see also Jones-Heim v. Reed*, 241 Fed. App'x 359, 361 n.2 (9th Cir. 2007) (unpublished).

\* \* \*

Accordingly, the Court overrules Singleton's objections regarding alleged due process violations at the November 2015 urinalysis hearing. Singleton has failed to show that there are triable issues regarding Sanchez's conduct at the hearing.

### ii. June 5, 2016 Urinalysis RVR Hearing

The June 5, 2016 urinalysis RVR hearing concerned a urine sample which Officer Enano collected from Singleton on, according to the RVR, April 25, 2016. (Sanchez Decl. Ex. 3 at 36.) On May 4, 2016, the lab report for the sample that was tested came back positive for methamphetamine, morphine, and codeine. (*Id.* at 36, 49.) Officer Enano issued the underlying RVR on the same day, for violation of "3016(a)"—"specific act: use of a controlled substance based solely on a positive

test result." (*Id.* at 36.)[18]

**Impartiality.** Sanchez did not participate in the collection or testing of Singleton's urine sample at issue in this RVR hearing, he did not issue the RVR which formed the basis for the hearing, and there is no evidence that he was otherwise involved in the matter other than as a hearing officer. Thus, the Court finds that Sanchez was sufficiently impartial for the June 2016 hearing. *See Wolff*, 418 U.S. at 592; *McCauley*, 2017 WL 2222379, at *6.

**Witnesses.** As in the November 2015 urinalysis RVR hearing, Sanchez did not issue a blanket denial of the witnesses Singleton requested for this hearing. Singleton requested and was permitted to call as a witness Officer Enano. (Sanchez Decl. Ex. 3.) Singleton's allegations of due process violations thus turn on whether Sanchez arbitrarily denied Singleton's requests to call three other witnesses: Officer

---

[18] The RVR hearing record erroneously refers to the rule violation as "3016(a)-20." (Sanchez Decl. Ex. 3 at 38.) In his declaration submitted in opposition to Defendants' summary judgment, Singleton avers that "[t]he California Code of Regulations that was given to me from RJ Donovan prison does not have a section CCR § 3016(a)-20 and to this day I do not know what it is. I was not fully advised of the charge, nor given a correct copy of the RVR." (Singleton Decl. ¶ 28.) Singleton also argued this point in his opposition brief to Defendants' motion. (ECF No. 144 at 12.) To the extent Singleton is raising a new *Wolff* objection, the Court rejects it.

*First*, the record does not show that Singleton claimed at the RVR hearing that he did not understand the charge against him or the ramifications of a guilt finding, but rather he confirmed he understood the charge. (Sanchez Decl. Ex. 3 at 39.) *Second*, it is clear that Singleton was charged with violation of Section 3016(a) for use of a controlled substance, a provision for which Singleton had been charged with violating on multiple prior occasions and for which he had received explanations of the charge. (*See, e.g.*, Sanchez Decl. Ex. 2.) *Third*, the record of Singleton's appeal of his guilt finding at the June 2016 RVR hearing expressly refers to violation of "Section 3016(a)" without reference to any subsection. (ECF No. 51-4, Self Decl. Ex. D at 10.) Thus, even if the RVR hearing record cited an erroneous subsection, Singleton was in fact advised of the charge against him in the full course of the proceedings. *Fourth*, Singleton's own conduct makes clear he understood and still understands that the charge concerned his use of a "controlled substance." Singleton's ability—as a *pro se* plaintiff—to raise arguments challenging the chain-of-custody for a positive urinalysis result necessarily presupposes an understanding that the charge against him concerned use of a controlled substance.

Rivera, Inmate Kelley and Inmate Garcia.

Judge Stormes recognized that the record of the RVR hearing shows that "Sanchez denied each of the three other witnesses after reviewing the questions submitted by Plaintiff on the grounds that the witnesses 'would have not relevant or additional information which would exonerate [Plaintiff].'" (ECF No. 154 at 20 (citing Sanchez Decl. Ex. 3 at 42).) Judge Stormes determined that it was not arbitrary for Sanchez to deny Officer Rivera as a witness because Singleton admitted that Rivera was "helping" Enano with the urine collection and thus Sanchez could reasonably view Rivera's testimony as duplicative. (*Id*.) Judge Stormes also determined that although Singleton sought to rely on Kelley and Garcia to testify regarding Officers Enano and Rivera's alleged failures to follow urinalysis protocol, their testimony "was irrelevant to the positive finding of the urinalysis result." (*Id*.)

In his Objection, Singleton does not directly take issue with these conclusions, nor does he offer new evidence that would undermine them, but instead generally asserts that there is a genuine issue of material fact regarding whether Sanchez denied these witnesses "to protect the interest of staff." (ECF No. 155 at 11.) This objection fails to address the substance of Judge Stormes's conclusions regarding Sanchez's denial of these witnesses. Thus, the Court need only satisfy itself that the conclusions are not clearly erroneous. *See Afrah*, 2015 WL 8759131, at *1; *Turner*, 2008 WL 5273526, at *1. Having reviewed the record, the Court finds that it was not clearly erroneous for Judge Stormes to conclude that, based on the undisputed record, Sanchez's refusals to call Rivera, Kelley and Garcia were not arbitrary.

"***Some Evidence*" for Guilt Finding.** The final issue is whether "some evidence" supports Singleton's guilt finding for the June 2016 RVR hearing. Judge Stormes expressly determined that some evidence did support the finding. (ECF No.

154 at 21.)  Specifically, Judge Stormes identified that there was evidence in the record showing that Officer Enano collected a sample from Singleton on April 25, 2016 and that Singleton tacitly acknowledged that he provided a sample to Enano. (*Id*. at 19–20 (citing Martinez Decl. Ex. 1 (mandatory testing log for April 25, 2016), Sanchez Decl. Ex. 3 at 42 (Plaintiff's question to Enano at RVR hearing: "Is there any reason the label was damaged . . . on the u/a I gave you").)  Judge Stormes further opined that "[t]o the extent there is dispute, it is regarding the possible integrity or tampering with the sample," but "there is no constitutional right to error-free decision-making and no due process violation is created by the error."  (*Id*. at 21.) Thus, Judge Stormes concluded there was no due process violation resulting from the guilt finding.

Singleton's Objection regarding whether "some evidence" supported the June 2016 guilt finding takes issue with "multiple errors" with the RVR.  (ECF No. 155 at 8.)  Singleton does not identify these errors with specificity in his Objection.  The record and the R&R, however, reveal the "errors" to be the collection date on the lab report, the RVR's initial reference to "amphetamine" as opposed to "codeine," and the lab report's comment "label partially damaged. Some info is missing or illegible." (FAC at 10; Sanchez Decl. Ex. 3; Singleton Dep. at 59:17–66:18.)

To the extent Singleton's "some evidence" objection is based on these errors, he fails to identify a due process violation with the guilt finding.  As Judge Stormes properly recognized, the Due Process Clause "simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979); *Chavira v. Rankin*, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.").  Thus, errors in the process by which Singleton was found guilty at the June 2016 RVR hearing do

not give rise to a due process violation. *See Ricker v. Leapley*, 25 F.3d 1406, 1410 (8th Cir. 1994); *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983).

Singleton also takes issue with Judge Stormes's factual recitation in the R&R regarding Sanchez's alteration to an error in the RVR. Specifically, Singleton objects that "the Magistrate should not favorably assume the defendant made corrections of the RVR[.]" (ECF No. 155 at 7, 8 (citing ECF No. 154 at 7).) Singleton argues that Sanchez "tailor[ed] the RVR to fit his liking on June 5, 2016" and "knowingly falsified the U/A lab report and redacted the collector's I.D. number from the report." (*Id.* at 4–5; ECF No. 144 at 13.) Whether Sanchez took any of these actions is inapposite.

Inmates do not have a due process right to be free from false accusations or false reports by prison officials. *See Solomon v. Meyer*, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges."); *Johnson v. Felker*, No. 1:12-cv-02719 GEB KJN P, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983."); *Muhammad v. Rubia*, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), *aff'd by*, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (internal citation omitted). Regardless of alleged falsity, "[t]he only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by 'some

facts.'" *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural protections . . . are provided."); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims."); *Ellis v. Foulk*, No. 14-cv-0802 AC P, 2014 WL 4676530, at *3 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirement[] . . . .'") (quoting *Hanrahan*, 747 F.2d at 1140). Thus, Singleton's falsity allegation circles the Court back to the *Hill* "some evidence" inquiry.

On this point, Singleton takes issue with what he claims is the "most important" evidence pertaining to his guilt: the absence of evidence regarding chain-of-custody. (ECF No. 155 at 4.) Singleton contends that without this evidence, "[t]he 'some evidence' standard must fail" and, instead, his due process claims must prevail. (*Id*. at 10.) This objection fails in part based on the parameters of the *Hill* inquiry. In reviewing the guilt finding at the June 2016 hearing, the Court's inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses or weighing of the evidence. *See id*. By arguing about what he believes to be the "most important" evidence for the guilt finding, Singleton imposes a level of review that *Hill* forecloses.

Singleton's chain-of-custody argument runs into other problems. In his Objection, Singleton points to three decisions to argue that the urinalysis RVR hearings violated his due process rights by not accounting for chain-of-custody. *See*

*Meeks v. McBride*, 81 F.3d 717, 718, 721–22 (7th Cir. 1996) (state prisoner's habeas challenge to disciplinary action by a disciplinary board); *Bourgeois v. Murphy*, 809 P.2d 472, 473, 481 (Idaho 1991) (state prisoner's suit against state for guilt finding at a disciplinary hearing that other prison officials had affirmed); *Soto v. Lord*, 693 F. Supp. 8, 11, 17–20 (S.D.N.Y. 1988) (Section 1983 suit against the hearing officer) (stating that "minimum due process required a prison disciplinary body to establish a reasonably reliable chain of custody as a foundation for introducing the results of urinalysis tests."). None of these decisions is controlling on this Court and Singleton does not identify Ninth Circuit precedent which applies them. Nor do the decisions constitute a judicial consensus on whether chain-of-custody evidence is necessary to satisfy the "some evidence" standard. *See Thomas v. McBride*, 3 F. Supp. 2d 989, 993 (N.D. Ind. 1998) (explaining the varying positions taken by federal courts on the chain-of-custody issue).[19]

More pointedly, there is precedent which provides a basis for this Court to summarily reject Singleton's chain-of-custody argument given the record. In *Thompson v. Owens*, the Third Circuit held that "[p]ositive urinalysis results based on samples *that officials claim to be* [*the plaintiff's*] constitute some evidence of [the plaintiff's] drug use. A chain of custody requirement would be nothing more or less than an 'independent assessment' into the reliability of the evidence, and *Hill* tells

---

[19] The *Thomas* court outlined the varying judicial positions: First, "some courts have held that establishing a chain of custody in prison drug testing cases is not necessary to meet the 'some evidence' standard requirement." 3 F. Supp. 2d at 993 (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Second, "at least one court went to the opposite extreme, holding that New Jersey Department of Corrections officials could not rely on test results where the sample's chain of custody failed to comply with very specific guidelines established in a consent decree, and imposed civil sanctions for the failure to comply with those guidelines." *Thomas*, 3 F. Supp. 2d at 993 (citing *Elkin v. Fauver*, 969 F.2d 48, 50–51 (3d Cir. 1992), *cert. denied*, 506 U.S. 977 (1992)). Finally, other courts have "steered a middle course, holding that prison officials must connect the prisoner with the sample that tested positive by establishing a chain of custody, but giving considerable leeway to prison officials on how the chain of custody may be proven." *Thomas*, 3 F. Supp. 2d at 993 (relying on *Wykoff*).

us, explicitly, that such a 'credibility' determination is not required." *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) (emphasis added); *see also Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[T]he relevant inquiry . . . is whether there was sufficient evidence in the record, *regardless of* [*the alleged chain-of-custody*] *inconsistencies or violations*, to find [Plaintiff] guilty of drug use at his disciplinary hearing." (alternations in original)).  Tellingly, the Ninth Circuit has relied on *Thompson* in two unpublished decisions to reject chain-of-custody challenges like the one Singleton raises.  *See Jones-Heim v. Reed*, 241 Fed. App'x 359, 361 n.2 (9th Cir. 2007) (citing *Thompson* approvingly and rejecting chain-of-custody due process challenge) (unpublished); *White v. Croswell*, No. 91-15659, 1992 U.S. App. LEXIS 13367, at *3 (9th Cir. May 14, 1992) ("White claims that the chain of custody of his urine sample was broken.  Even if this is true, however, it is insufficient to support a section 1983 action because a break in the chain of custody would not violate White's right to due process . . . .  An examination of the chain of custody would simply be an independent assessment of the reliability of the evidence.  A positive urinalysis test provides some evidence of intoxication regardless of the chain of custody.") (unpublished).  Although these unpublished decisions are not controlling precedent, they suggest that an independent chain-of-custody requirement is inconsistent with the review this Court should conduct pursuant to *Hill*.

Applying the *Thompson* standard vitiates Singleton's objection.  The record shows that RJD prison officials claimed the sample tested was Singleton's and believed it to be so at every level of review, from the collecting officer who issued the RVR, to the hearing officer, to the various officials who reviewed the evidence for Singleton's guilt finding on appeal.  (Sanchez Decl. Ex. 3 at 36, 43; Self Decl. Ex. D at 2–3.)  The sample tested positive for various controlled substances. (Sanchez Decl. Ex. 3 at 49.)  The positive test results, coupled with the belief of the prison officials that the sample tested was Singleton's, is "some evidence" for

Singleton's guilt finding. *See Thompson*, 889 F.2d at 502; *Tinsley v. Fox*, No. 2:16-cv-1647 TLN AC P, 2016 WL 6582588, at *12 (E.D. Cal. Nov. 7, 2016) (finding some evidence for guilt finding because "the underlying lab result . . . was positive for morphine").

The Court acknowledges that the *Thompson* approach may be less than satisfactory in light of evolving views about what due process requires and what level of deference should be afforded to prison officials. Some courts have determined that pursuant to "the species of due process which applies to [prison disciplinary] proceedings, as announced in *Wolff*[]" "[a]n inmate has a legitimate liberty interest . . . and has a right to expect minimal due process safeguards to insure that [urine] samples are not mishandled by correctional officers[.]" *Wykoff v. Resig*, 613 F. Supp. 1504, 1512–13 (N.D. Ind. 1985). Without requiring scientific exactitude or error-free evidence, these courts have treated chain-of-custody evidence as an independent due process requirement for sustaining guilt finding. *See Johnson v. Goord*, 487 F. Supp. 2d 377, 385 (S.D.N.Y. 2007) ("Due process requires that the evidence used against a prisoner in a disciplinary hearing has a 'sufficient foundation.'").

Yet in undertaking this additional due process inquiry into chain-of-custody evidence, unless there are "glaring deficiencies" or there is an "affirmative indication of a mistake," some evidence of chain-of-custody will typically be sufficient. *See See Webb v. Anderson*, 224 F.3d 649, 652–53 (7th Cir. 1999) ("Absent some affirmative indication that a mistake may have been made, *see, e.g., Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996) (prisoner number on toxicology report did not match petitioner's number, another prisoner had same name as petitioner, and the two prisoners had been confused [with one another] before), we cannot say that the toxicology report and chain of custody report fail to qualify as 'some evidence' from which prison officials could conclude that Webb had used marijuana."); *McCormack*

*v. Cheers*, 818 F. Supp. 584, 590 (S.D.N.Y 1993) (finding that deficiencies in chain-of-custody evidence were "not merely 'possible discrepancies as to the time[] the specimen was removed from the refrigerator and the time[] the test[] was performed,'" but similar to the "glaring deficiencies" in *Soto* and thus there was a genuine issue for trial); *Shlomo Tal v. McGann*, No. 88 Civ. 7678 (JSM), 1991 WL 113776, at *2 (S.D.N.Y. June 17, 1991) ("When money damages are sought plaintiff must show that the chain of custody form is so untrustworthy that its use violated the due process clause."); *Soto*, 693 F. Supp. at 18 (observing that there were "glaring deficiencies in the documentation" such that the evidence offered was not worthy of credence). Even pursuant to this standard, "some imperfections in documentation" will not undermine a guilt finding. *See Thompson v. Milusnic*, No. ED-CV-14-0080-ODW(RZ), 2014 WL 502651, at *3 (C.D. Cal. Feb. 7, 2014) (noting that "gaps in documentation that could have been filled" will not undermine sufficiency of the evidence).

The Court finds that there is some evidence for June 2016 guilt finding under this standard. The fundamental question is whether the prisoner "is properly connected with th[e] particular positive sample." *Thomas*, 3 F. Supp. 2d at 993. The record shows that both Officer Enano and Singleton agreed that Enano took a urine sample from Singleton which formed the basis for the RVR at issue in the June 2016 hearing. (Sanchez Decl. Ex. 3 at 41–42; Singleton Dep. at 58:13–15.) Enano recounted his collection of the sample from Singleton and affirmed that he maintained sole possession of the sample and placed it into the urinalysis refrigerator per institutional procedure. (Sanchez Decl. Ex 3 at 36.) The RVR hearing record indicates that Officer Enano testified that he collected the urine sample from Singleton, who asked various questions regarding the issue of "missing information" on the sample and how Enano knew the sample belonged to Singleton. (*Id.* at 41–42.) Enano answered three times to various questions that the sample had Singleton's

CDCR#. (*Id.*) Like the RVR, Enano further indicated that Singleton had reviewed the sample and confirmed it was Singleton's. (*Id.* at 42.) After hearing this evidence, Sanchez determined that Enano was "within policy" in the "collection of the u/a specimen" and Sanchez noted that lab report indicated that the sample tested was Singleton's. (*Id.* at 43, 45.) The lab report contains Singleton's CDCR#. (*Id.* at 49.) All of this evidence constitutes "some evidence" which connects Singleton with the sample that tested positive.

Although Singleton objects strenuously to "errors" in the lab report and the RVR, none of the errors are "glaring deficiencies" that sever him from the sample which returned a positive test result or an "affirmative indication" that a mistake was made. The absence of the "collector ID" does not undermine that the lab actually analyzed the sample from Singleton. *See Webb v. Anderson*, 224 F.3d 649 (7th Cir. 1999) ("Notwithstanding the omission of the name of the technician who tested Webb's specimen, there is no reason to doubt that the laboratory actually analyzed the sample; the toxicology report lays out the various substances for which Webb's urine was screened and the results for each [substance]."). And even if the Court discounts the codeine/amphetamine discrepancy between the lab report and the initial RVR issued to Singleton, it would not change the fact that the sample tested positive for two other controlled substances. Accordingly, the Court overrules Singleton's objection and affirms Judge Stormes's conclusion that "the conviction was supported by some evidence." (ECF No. 154 at 21.)

### iii. February 8, 2014 Riot RVR Hearing

As a final matter, the Court addresses alleged due process violations Sanchez committed during the February 8, 2014 riot RVR hearing. Judge Stormes did not address the hearing, including with respect to the due process claims against Sanchez, on the ground that "[t]he events related to the riot were the subject to the State court

litigation and are not before this Court," but rather are "referenced only for context." (ECF No. 154 at 4 n.1, 12.) In his Objection, much like the FAC and his opposition to Defendants' motion for summary judgment, Singleton repeatedly contends that his due process rights were violated at the February 8, 2014 riot RVR hearing because Sanchez denied him certain witnesses. (*See* FAC at 4–5; ECF Nos. 144, 155.)

Based on a review of the submissions regarding Singleton's state court lawsuit, it is not clear to the Court that the lawsuit addressed Singleton's due process claims against Sanchez pertaining to the riot RVR hearing. As the Court has recognized, Sanchez was not a named defendant in the state court action. Defendants' motion for summary judgment also expressly addresses due process with respect to the riot RVR hearing. (ECF No. 138-1 at 18 (arguing the Singleton lacks a protected liberty interest), *id.* at 22–23 (arguing that Singleton received all process due, including at the riot RVR hearing); Sanchez Decl. Ex. 1 (attaching as a summary judgment submission the RVR and related record for participation in a riot charge).) Under these circumstances, the Court will consider whether Singleton's February 8, 2014 riot RVR hearing complied with constitutional due process pursuant to *Wolff* and *Hill*.

**_Wolff_ Requirements.** The Court easily finds that the riot RVR hearing complied with the *Wolff* procedural due process requirements. Singleton's primary arguments concern Sanchez's alleged denial of witnesses at this hearing. Sanchez did not issue a blanket denial of witnesses, but rather permitted Singleton to call Officer Martinez, the officer who issued the RVR. (Sanchez Decl. Ex. 1 at 9.) Although Sanchez denied Singleton's requests to call Officers Hernandez, Matthews, and Hurm, Sanchez's denial was not arbitrary. Sanchez expressly documented that these witnesses "did not have any more pertinent information in regards to this incident. (*Id.*) This reason is supported by other evidence in the RVR and

Singleton's own acknowledgment that these witnesses refused to provide substantive statements to the investigative employee—an issue noted in the RVR.

Singleton's due process contention regarding the denied witnesses fundamentally comes down to his belief that he has the right to question the officers who he believes withheld information that would exculpate him from the charge for participation in the riot. Contrary to his belief, Singleton has no due process right to cross-examine or confront witnesses in a prison disciplinary proceeding. *See Wolff*, 418 U.S. at 567; *Van Buren v. Waddle*, No. 1:14-cv-01894-DAD-MJS (PC), 2016 WL 4474601, at *9 (E.D. Cal. Aug. 24, 2016) ("Under *Wolff*, an inmate does not have the right to cross-examine and confront witnesses."). Accordingly, the Court concludes that Sanchez's proffered reason was not arbitrary.

Singleton has not raised to this Court other *Wolff*-based challenges regarding the riot RVR hearing. However, having reviewed the record, it is clear that the other *Wolff* protections were provided. Singleton received: notice of the hearing more than 24 hours in advance, a written statement from Sanchez regarding the evidence relied on and reason for the action, and a sufficiently impartial fact finder. (Sanchez Decl. Ex. 1 at 9–12.) Sanchez also confirmed that Singleton was able to read and explain the charges against him. (*Id*. at 9.) *Wolff* is satisfied.

**"Some Evidence" of Guilt.** The *Hill* "some evidence" standard is also satisfied with respect to the Singleton's guilt determination. The charge for which Singleton was found guilty was "participation in a riot" in violation of Section 3005(d)(3), 15 Cal. Code Regs. § 3005(d)(3). (Sanchez Decl. Ex. 1 at 7–10.) Section 3005(d)(3) states in full: "[i]nmates shall not participate in a riot, rout, or unlawful assembly." 15 Cal. Code Regs. § 3005(d)(3). The record shows that Sanchez relied on Officer Martinez's statement that he identified Singleton "as being involved in the

riot" and evidence of "a scratch on [Singleton's] left knee. . . consistent with participating in a riot due to his injuries." (Sanchez Decl. Ex. 1 at 10.) Singleton acknowledges that he was in the "general area" of the riot. (FAC at 3.) Regardless of Singleton's assertion that the underlying charges are false, this evidence, coupled with the procedural due process he received, satisfies the "modicum" of evidence necessary to uphold Singleton's guilt finding. *See Hill*, 472 U.S. at 455; *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010) (in reviewing disciplinary records, courts must defer to prison officials' expert judgments in their "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security.").

\*     \*     \*

Accordingly, the Court overrules Singleton's objections regarding alleged due process violations by Sanchez during the RVR hearings. Singleton has failed to show that there are triable issues regarding Sanchez's conduct and Sanchez is entitled to summary judgment.

## 2.     Defendant Hernandez

At this point, many of Singleton's due process claims concerning Hernandez are not viable because Singleton lacks a protected liberty interest for various harms he attributes to Hernandez. The R&R, however, further identifies as the grounds for alleged due process violations by Hernandez (1) his failures to follow drug testing protocol and properly maintain the chain-of-custody for Singleton's urine samples and (2) the confidential memorandum drafted by one of Hernandez's subordinates for placement into Singleton's c-file and which allegedly falsely accused Singleton of being a gang member who was transporting drugs into RJD. (ECF No. 154 at 15.) On both issues, Judge Stormes determined that Singleton has failed to identify a federal constitutional liberty interest of which he was deprived. (*Id.* at 15–16.)

Singleton's Objection addresses only the R&R's determination regarding compliance with prison regulations concerning chain-of-custody of urine samples. (ECF No. 155 at 9–10.) Thus, only the R&R's determination regarding Hernandez's alleged failure to comply with drug testing protocol and chain-of-custody procedure is properly subject to *de novo* review.

As Judge Stormes properly recognized, a prisoner does not have a federal constitutional liberty interest in compliance by prison officials with state prison regulations. *Sandin*, 515 U.S. at 481–82 (prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). Thus, Singleton cannot premise a due process violation on the mere possibility that prison officers—including Hernandez—did not comply with state prison procedures regarding drug testing protocol or chain-of-custody procedure. This is sufficient to find that Hernandez is entitled to summary judgment on Singleton's due process claim.

The Court recognizes that Singleton has repeatedly contended that the due process violations during the RVR hearings resulted from Hernandez's alleged purpose to retaliate against Singleton through false accusations and failure to follow procedures. Although Singleton lacks a protected liberty interest for these harms, the harms remain cognizable in a First Amendment retaliation claim. *See Rhodes*, 408 F.3d at 567–68 ("Even where conditions of confinement do not implicate a prisoner's due process rights, inmates 'retain other protection from arbitrary state action . . . within the expected conditions of confinement. They may invoke the First . . .

Amendment[] . . . where appropriate[].”); *Vandervall v. Feltner*, No. CIV S-09-1576 DAD P, 2010 WL 2843425, at *8 (E.D. Cal. July 19, 2010) (“The thrust of plaintiff’s allegations is that defendants have made false accusations against him in retaliation for his filing of grievances and complaints regarding the abuse of EOP inmates. Such a claim fall[s] squarely within the protections of the First Amendment.”); *Helm v. Hughes*, No. C09-5381 RJB/KLS, 2010 U.S. Dist. LEXIS 13226, at *13 (W.D. Wash. Jan. 25, 2010) (“[A plaintiff] may base his retaliation claims on harms that would not raise due process concerns.”), *approved and adopted by*, 2010 WL 597431 (W.D. Wash. Feb. 16, 2010). Singleton’s First Amendment retaliation claim against Hernandez remains in this case. Accordingly, the Court overrules Singleton’s objection to the R&R’s recommendation to grant summary judgment for Hernandez on Singleton’s due process claim.

## CONCLUSION & ORDER

For the foregoing reasons, the Court: (1) **OVERRULES** Plaintiff’s Objection, (ECF No. 155); (2) **APPROVES AND ADOPTS** the R&R, (ECF No. 154); (3) **DENIES IN FULL** Plaintiff’s motion for summary judgment, (ECF No. 131); and (4) **GRANTS IN PART AND DENIES IN PART** Defendants’ motion for summary judgment, (ECF No. 138).

Based on the foregoing, the Court **DISMISSES WITH PREJUDICE** Defendant A. Sanchez. The Court **DISMISSES WITH PREJUDICE** Singleton’s due process claim against Defendant Hernandez. The only claim which remains is Singleton’s First Amendment retaliation claim against Hernandez. In addition, the Clerk of the Court **SHALL TERMINATE** Defendant T. Boerum as a defendant.

**IT IS SO ORDERED.**

**DATED: February 15, 2019**

Hon. Cynthia Bashant
United States District Judge

– 56 –

16cv2462